No. 19-2779

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

ADAM SPRENGER,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois
Case No. 18-CR-105
The Honorable Judge John J. Tharp, Jr.

**BRIEF AND REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT, ADAM SPRENGER**

FEDERAL PUBLIC DEFENDER            THOMAS W. PATTON
CENTRAL DISTRICT OF ILLINOIS       Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois 61602             JOHANNA M. CHRISTIANSEN
Telephone:   (309) 671-7891        Assistant Federal Public Defender
Fax:         (309) 671-7898
Email:  Johanna_Christiansen@fd.org


                                   Attorneys for Defendant-Appellant,
                                   ADAM SPRENGER

**ORAL ARGUMENT REQUESTED**

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __19-2779__

Short Caption: __United States v. Sprenger__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Adam Sprenger

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Johanna M. Christiansen and Thomas W. Patton of the Federal Public Defender's Office for the Central District of Illinois;

Andrew Gable; Thomas Brandstrader; and Michael Hohenadel.

(3) If the party, amicus or intervener is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:

        N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: _s/ Johanna M. Christiansen_    Date: __September 21, 2020__

Attorney's Printed Name: __Johanna M. Christiansen__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☒  **No** ☐

Address: __401 Main Street, Suite 1500__

    __Peoria, Illinois 61602__

Phone Number: __(309) 671-7891__    Fax Number: __(309) 671-7898__

E-Mail Address: __Johanna_Christiansen@fd.org__

# TABLE OF CONTENTS

**PAGE**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ......................................................ii

TABLE OF AUTHORITIES ..............................................................................v

    CASES ...........................................................................................v

    STATUTES ...................................................................................vi

    OTHER AUTHORITIES.............................................................. vii

JURISDICTIONAL STATEMENT ..................................................................1

ISSUE PRESENTED FOR REVIEW ..............................................................2

    I.     Whether Mr. Sprenger's guilty plea was knowing and
voluntary where he pled guilty to one count and stipulated to
another count of production of child pornography under 18
U.S.C. § 2251(a) but the facts in his case fail  to establish his
guilt of either offense because he did not "use" or "employ" a
minor to engage in sexually explicit conduct to produce
images containing child pornography?............................................2

STATEMENT OF THE CASE............................................................................3

    I.     Factual Background and Preliminary Proceedings .........................3

    II.    Plea Agreement and Change of Plea Hearing...................................8

    III.   Presentence Investigation Report, Supplemental Reports, and
Sentencing Memoranda ....................................................................11

          A.     The Presentence Investigation Report .................................11

          B.     The Supplemental Presentence Investigation Reports.......15

          C.     The Parties' Sentencing Memoranda ...................................16

    IV.   The Sentencing Hearing and Judgment in a Criminal Case.........18

SUMMARY OF ARGUMENT.........................................................................21

ARGUMENT ....................................................................................................23

I.     Mr. Sprenger's guilty plea was not knowing and voluntary where he pled guilty to one count and stipulated to another count of production of child pornography under 18 U.S.C. § 2251(a) but the facts in his case fail to establish his guilt of either offense because he did not "use" or "employ" a minor to engage in sexually explicit conduct to produce images containing child pornography ............................................................ 23

     A.    Standard of Review ................................................................ 23

     B.    Section 2251(a) as interpreted by this Court's recent *Howard* case .................................................................... 24

     C.    The factual basis to support Mr. Sprenger's guilty pleas and stipulation failed to state violations of 18 U.S.C. § 2251(a) ................................................................................ 27

          1.    The facts of *Howard* are indistinguishable from this case and, as a result, Mr. Sprenger's § 2251(a) conviction in Count One lacks a factual basis for guilt ................................................................ 30

          2.    Mr. Sprenger's stipulated offense conduct to the charge in Count Two, also involving a § 2251(a) offense, lacks a factual basis ........................................ 31

          3.    Although no direct challenge can be made to Mr. Sprenger's conviction for possession of child pornography, it too was tainted by conduct allegedly in violation of § 2251(a) .............................. 33

          4.    As a result, Mr. Sprenger's guilty plea was not knowing and voluntary and it must be vacated and this case remanded for redetermination of the surviving counts of the indictment ..................... 34

     E.    Mr. Sprenger can easily meet the plain error standards in this case .............................................................................. 35

CONCLUSION ............................................................................................ 39

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(C) ................ 40

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Puckett v. United States,* 556 U.S. 129 (2009) ................................................. 23

*United States v. Al-Awadi,* 873 F.3d 592 (7th Cir. 2017) .............................. 24

*United States v. Barnes,* 83 F.3d 934 (7th Cir. 1996) ............................... 34, 35

*United States v. Bowlin,* 534 F.3d 654 (7th Cir. 2008) ................................... 28

*United States v. Bradley,* 381 F.3d 641 (7th Cir. 2004) ...................... 29, 34, 36

*United States v. Fernandez,* 205 F.3d 1020 (7th Cir. 2000) .......................... 29

*United States v. Garcia,* 35 F.3d 1125 (7th Cir. 1994) ................................... 23

*United States v. Howard,* 2020 U.S. App. LEXIS 24360 (7th Cir. Aug. 2, 2020) . 25, 26, 27, 28, 30, 31, 32, 33, 34, 36

*United States v. LeDonne,* 21 F.3d 1418 (7th Cir. 1994) ................................ 29

*United States v. Maez,* 960 F.3d 949 (7th Cir. 2020) ..................................... 36

*United States v. Matthew Howard,* Case Number 19-1005 .......................... 25

*United States v. Mitchell,* 58 F.3d 1221 (7th Cir. 1995) ................................ 23

*United States v. Musa,* 946 F.2d 1297 (7th Cir. 1991) ................................... 29

*United States v. Olano,* 507 U.S. 725 (1993) ................................................. 36

*United States v. Patterson,* 576 F.3d 431 (7th Cir. 2009) ............................. 24

*United States v. Peterson,* 268 F.3d 533 (7th Cir. 2001) ............................... 35

*United States v. Sura,* 511 F.3d 654 (7th Cir. 2007) ...................................... 37

*United States v. Taylor,* 9009 F.3d 889 (7th Cir. 2018) ................................. 36

# STATUTES

18 U.S.C. § 2251(a) .................................... 1, 2, 7, 9, 21-28, 30, 31, 32, 33, 34, 35, 36, 37

18 U.S.C. § 2252(a) ................................................................................ 22, 34

18 U.S.C. § 2252A(a)(1)....................................................................... 1, 7, 28

18 U.S.C. § 2252A(a)(5)(B)......................................... 1, 7, 22, 28, 33, 34, 35

18 U.S.C. § 2259 ............................................................................................ 8

18 U.S.C. § 3231 ............................................................................................ 1

18 U.S.C. § 3553(a) ..................................................................................... 19

18 U.S.C. § 3663A .......................................................................................... 8

18 U.S.C. § 3663(a)(5) ................................................................................... 9

18 U.S.C. § 3664 ............................................................................................ 9

18 U.S.C. § 3742 ............................................................................................ 1

28 U.S.C. § 1291 ............................................................................................ 1

# OTHER AUTHORITIES

Federal Rule of Criminal Procedure 11 ................................................. 23, 29

U.S.S.G. § 2G1.1(b)(1)(B) ........................................................................... 13

U.S.S.G. § 2G2.(b)(1)(B) ............................................................................. 14

U.S.S.G. § 2G2.1(a) ................................................................................ 13, 14

U.S.S.G. § 2G2.1(b)(2)(A) ........................................................................... 14

U.S.S.G. § 2G2.1(b)(3) ................................................................................ 14

U.S.S.G. § 2G2.1(b)(5) ........................................................................... 13, 14

U.S.S.G. § 2G2.2(a)(1) ........................................................................... 13, 37

U.S.S.G. § 2G2.2(b)(2) ........................................................................... 13, 37

U.S.S.G. § 2G2.2(b)(3)(F) ....................................................................... 13, 37

U.S.S.G. § 2G2.2(b)(4) ...........................................................14, 37

U.S.S.G. § 2G2.2(b)(5) ...........................................................14, 37

U.S.S.G. § 2G2.2(b)(6) ...............................................................37

U.S.S.G. § 2G2.2(b)(7)(D) .....................................................14, 37

U.S.S.G. § 3D1.4(a) .....................................................................15

U.S.S.G. § 4B1.5(b)(1) ................................................................15

# JURISDICTIONAL STATEMENT

1.      The jurisdiction of the United States District Court for the Northern District of Illinois, was founded upon 18 U.S.C. § 3231.  A grand jury sitting in the aforementioned district charged ADAM SPRENGER by indictment with two counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a); one count of transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1); and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

2.      The jurisdiction of the United States Court of Appeals for the Seventh Circuit is founded upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and is based upon the following particulars:

    i.      Date of entry sought to be reviewed:  Sentence imposed on August 29, 2019; Judgment in a Criminal Case entered on September 6, 2019.

    ii.     Filing date of motion for a new trial:  n/a;

    iii.    Disposition of motion and date of entry:  n/a;

    iv.     Filing date of notice of appeal: September 11, 2019.

## ISSUE PRESENTED FOR REVIEW

I.     Whether Mr. Sprenger's guilty plea was knowing and voluntary
where he pled guilty to one count and stipulated to another count of production
of child pornography under 18 U.S.C. § 2251(a) but the facts in his case fail to
establish his guilt of either offense because he did not "use" or "employ" a minor
to engage in sexually explicit conduct to produce images containing child
pornography?

## STATEMENT OF THE CASE[1]

### I.    Factual Background and Preliminary Proceedings.

During the relevant time period, Defendant-Appellant Adam Sprenger dated and resided with Individual A, a single mother who had four minor children.  (R. at 41, p. 5.)  Two of her children, called "Victim A" and "Victim B" in the record, were involved in the acts described below.  (R. at 41, p. 5.)

On March 21, 2015, Mr. Sprenger travelled with Individual A and her four children from Illinois to a hotel in Lake Geneva, Wisconsin.  (App. at 3.)  Victim A was 14 years old during this trip.  (App. at 3.)  On March 22, 2015, Mr. Sprenger used his cell phone to take at least seven photographs of Victim A and himself while he engaged in sexually explicit conduct while she was sleeping. (App. at 3.)  Specifically, Mr. Sprenger photographed his naked, erect penis next to Victim A's face and photographed his own face, with his tongue sticking out, next to Victim A's clothed groin.  (App. at 3.)  Mr. Sprenger, Individual A, and her children stayed in the hotel in Wisconsin until March 23, 2015, and then returned to Illinois.  (App. at 33.)  When he was back in Illinois, Mr. Sprenger downloaded the photographs he took of Victim A and stored the images on a USB drive.  (App. at 3.)  He stored the USB drive at his residence in Illinois.

---

[1] The following abbreviations are used herein: Record on appeal: "R. at __;" and Appendix: "App. at __."

(App. at 3.)

On April 7, 2017, Mr. Sprenger took four videos of Victim B while she was sleeping during a time when he lived with Victim B and her mother, Individual A.  (App. at 6.)  Victim B was 13 years old at the time.  (App. at 6.)  In one video, Mr. Sprenger pulled back the blanket covering Victim B while she slept and focused the camera on her clothed buttocks and vagina.  (App. at 6.)  Mr. Sprenger's erect penis was visible as he masturbated over Victim B in the video.  (App. at 6.)  In the second video, Mr. Sprenger made physical contact with Victim B's clothed vagina with his hand.  (App. at 6.)  In the third video, Mr. Sprenger made physical contact with her clothed vagina and buttocks.  (App. at 6.)  In the fourth video, he ejaculated onto Victim B's clothed buttocks.  (App. at 7.)

On November 14, 2017, Mr. Sprenger communicated over Kik Messenger with an individual who, unbeknownst to him, was an undercover law enforcement officer ("UC.")  (App. at 7.)  During that Kik conversation, the UC stated, "Hey, saw you on [a website] & wondered if you were hands on with any yung toys like me? Ime only lookin to swap new homemade stuff, not old shit."  (App. at 7.)  Mr. Sprenger responded, "How did you get the password btw?"  (App. at 7.)  The UC replied, "i didnt use a password to get in wtf? soz mate, looks like your albums are lock now, but I dont know your pass, but I do

4

comment on a lot of pics, so cant remember what the fuk I did." (App. at 7.) Mr. Sprenger replied, "Well, it's always been locked. I don't get it either. No worries. I get along with other perverts. Haha." (App. at 7.) The UC stated, "oh fuk yeah ime a real pervert alright! Actually ime a downright sik fukka that needs serious help." (App. at 7.) Mr. Sprenger replied, "Even better." (App. at 7.)

Mr. Sprenger asked the UC, "How olds yours?" and the UC responded, "she's 11 goin on 12 I just met her mother online, so ime only just kickin offthings. yours?" (App. at 7.) Mr. Sprenger replied, "Yummy! 10 and 14 I only date women with beautiful girls. Or if they are ultra petite." (App. at 7.) The UC stated, "fukin awesome man! two on tap? yeah that's funny cos I only look for women online that are single mums ive got this act goin on with them where ime the most carin person in the world with their daughters i telt them they can go out clubbin with their girlfriends & I will stay home and care for their beatiful little grrls." (App. at 7.) Mr. Sprenger responded, "until you are feeding them your cum in their breakfast." (App. at 7.) The UC asked, "how far have you got with your two? or aren't you touchin them?" Mr. Sprenger responded, "Just rubbed my cock on their face and hands while their sleeping." (App. at 7.) The UC stated, "fuk yeah! thats great. did you get pics of your cok on their pretty faces? where did you blow?" (App. at 8.) Mr. Sprenger replied, "Yes. And on

5

the bed or floor next to them." (App. at 8.) After additional conversation, Mr. Sprenger sent the fourth video he took of Victim B to the UC. (App. at 8.)

Law enforcement officers searched Mr. Sprenger's residence on February 14, 2018. (R. at 41, p. 5.) During the search, they found two HP laptop computers, a Samsung Galaxy cellular phone, a micro SD card, and a USB drive, all which contained images of child pornography. (App. at 4.) Some of the images involved prepubescent minors and minors who had not yet obtained 12 years of age. (App. at 4.) Specifically, Mr. Sprenger possessed 64 images of child pornography on the USB hard drive, including the image of Victim A with Mr. Sprenger's naked, erect penis and the image of him with his tongue sticking out near Victim A's clothed groin. (App. at 4.)

The micro SD card contained 66 images and 387 videos of child pornography including four videos taken on April 7, 2017, in which Mr. Sprenger filmed himself masturbating over Victim B as she slept, making contact with her clothed vagina and buttocks, and ejaculating onto Victim B's clothed buttocks. (App. at 5.) The SD card also contained the video in which Mr. Sprenger filmed himself and his friend Sean McCarthy in Victim C's bedroom. (App. at 5.) Victim C was McCarthy's stepdaughter. (App. at 6.) Victim C was sleeping on a bed and Mr. Sprenger stood over her as he masturbated. (App. at 5.) When Mr. Sprenger ejaculated, McCarthy pinched some of the ejaculate off of

6

Mr. Sprenger's penis and flicked toward Victim C's face.  (App. at 5.)  This video was taken on January 6, 2017, when Victim C was 14 years old.  (App. at 5.)

Mr. Sprenger possessed 64 images of child pornography on one of his laptops and 914 images and three videos of child pornography on the other laptop.  (App. at 5.)  The images on these devices included images and videos of many children, some as young as toddlers, being forced to engage in oral, vaginal, and anal intercourse, as well as sadomasochistic images and lascivious exhibition of minors' genitals.  (App. at 5.)

As a result of the investigation, Mr. Sprenger was charged by indictment with two counts of production of child pornography in violation of 18 U.S.C. § 2251(a) (Counts 1 and 2); one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) (Count 3); and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 4).  (R. at 19.) Count 1 was as a result of the conduct with Victim A in the hotel room in Wisconsin in March of 2015.  (R. at 19.)  Count 2 was as a result of the conduct in with Victim B in April and November of 2017.  (R. at 19.)  Count 3 was based on the sending of the video of Victim B to the undercover officer in November of 2017.  (R. at 19.)  Count 4 was based on the possession of images and videos of child pornography on laptops, a cell phone, a micro SD card, and a USB drive in February of 2018.  (R. at 19.)

7

## II.     Plea Agreement and Change of Plea Hearing.

Mr. Sprenger entered into a written plea agreement with the government on February 15, 2019.  (App. at 1-26.)  He agreed to plead guilty to Count 1 (production of child pornography with Victim A) and Count 4 (possession of child pornography).  (App. at 2.)  He also stipulated to having committed the offense charged in Count 2 (production of child pornography with Victim B).  (App. at 6.)  As part of the plea agreement, Mr. Sprenger agreed to all of the facts stated in the preceding section of this brief.  (App. at 2-8.)  He agreed to forfeiture of the laptops, cell phone, micro SD card, and USB drive.  (App. at 2, 18.)  The parties agreed to the guidelines calculations detailed in the plea agreement[2] which resulted in a total offense level of 43, a criminal history category of I, and a guidelines range of 600 months.  (App. at 10-15.)

Pursuant to the plea agreement, both parties were allowed to recommend any available sentence they deemed appropriate.  (App. at 16.)  Mr. Sprenger agreed restitution would be ordered under 18 U.S.C. § 2259 and the amount of restitution would be determined by the district court at sentencing.  (App. at 17.)  He also agreed that in addition to the restitution under § 2259, he was liable for restitution pursuant to 18 U.S.C. § 3663A.  (App. at 17.)  He also agreed "to pay

---

[2] These calculations were ultimately identical to the guidelines calculations used by the probation officer and are discussed in detail below.

additional restitution arising from the stipulated offense conduct, pursuant to 18

U.S.C. § § 3663(a)(5) and 3664.  (App. at 17.)  The government agreed to move to

dismiss the remaining counts (Counts 2 and 3) after sentencing.  (App. at 18.)

The district court held a change of plea hearing on February 15, 2019.  (R.

at 37.)  The district court determined Mr. Sprenger understood the rights he was

waiving by pleading guilty.  (App. at 34-43.)  The court also extensively reviewed

the plea agreement, including the sentencing guidelines calculations and the

factual basis.  (App. at 52-55.)  The Court noted Mr. Sprenger was pleading guilty

to Counts One and Four and stipulating to Count Two. (App. at 46.)  The court

explained Count One as "a violation of 18 U.S.C. § 2251(a), which says that you

knowingly employed and used a minor to engage in sexually explicit conduct for

the purpose of producing a visual depiction of such conduct."  (App. at 47.)

The court directed Mr. Sprenger to the factual basis contained within the

plea agreement.  (App. at 55-56.)  The court had the following colloquy with Mr.

Sprenger:

> THE COURT:  Okay.  Now, do you understand, again, in this
> plea agreement that you've entered into with the government that
> that factual basis is essentially a written confession of why you're
> guilty of the charge in Count One, why you're guilty of the charge in
> Count Four, and also confesses to committing other conduct that
> will be considered at sentencing in this case?  Do you understand
> that's the nature of what that factual basis is?
> THE DEFENDANT:  Yes, Your Honor.
> THE COURT:  All right.  And understanding that's essentially
> a written confession to conduct that will support the convictions in

9

this case, are you completely satisfied that everything that is set
forth in that factual stipulation in the plea agreement is 100 percent
accurate?

       THE DEFENDANT:  Yes, Your Honor.

       THE COURT:  Before you signed the plea agreement, did you
have the opportunity to go through that factual basis very carefully?

       THE DEFENDANT:  I did, Your Honor.

(App. at 56-57.)  The government provided a factual basis for Counts One and

Four and the stipulated conduct as follows, with the district court's clarifying

question:

       [GOVERNMENT COUNSEL]:  With respect to Count One, the
government's evidence at trial would show that on or about March
21, 2015, Mr. Sprenger traveled from Illinois to a hotel in Wisconsin
with Individual A and her four minor children who included Victim
A.  Victim A was 14 years old at the time.

       The evidence would show that in that hotel room in
Wisconsin, on or about March 22nd of 2015, Mr. Sprenger used a
Samsung Galaxy cellular phone to take at least seven sexually
explicit photographs of Victim A while she was sleeping.  The
photographs included sexually explicit conduct.

       THE COURT:  And just to be clear, the sexually explicit
conduct was not of Victim A but was of Mr. Sprenger, correct?

       [GOVERNMENT COUNSEL]:  That's correct, Your Honor.

       Mr. Sprenger, Individual A, Victim A, and the other minor
children stayed at that hotel until the next day, March 23rd of 2015,
at which time they returned to Illinois.  He brought - Mr. Sprenger
brought with him back to Illinois that Samsung Galaxy cellular
phone that contained the sexually explicit images.  He then stored
those images to a USB drive which he kept in his residence in
Illinois.

       Turning to Count Four, the evidence at trial would show that
Mr. Sprenger possessed approximately 64 images of child
pornography on a USB drive which was manufactured outside of
the United States; 66 images and 387 videos of child pornography on
a micro SD card which was manufactured also outside of the United
States, in the Philippine; 64 images of child pornography on an HP

laptop computer which was manufactured in China; and a second HP laptop computer.  The images and videos of child pornography that Mr. Sprenger possessed on these devices included images and videos of children who were as young as toddlers and included sadomasochistic conduct.  Each of these items were found in Mr. Sprenger's home.

Turning to the facts that support Count Two [the stipulated conduct], the evidence at trial would show that on or about April 7th of 2017, Mr. Sprenger took four videos of Victim B while Victim B was sleeping in the state of Illinois.  Victim B was 13 years old at the time.  The videos included sexually explicit conduct.  Mr. Sprenger then stored those four videos onto a micro SB card which was manufactured in the Philippines.

On or about November 14th of 2017, Mr. Sprenger communicated with an individual who, unbeknownst to Mr. Sprenger, was an undercover law enforcement officer over an application called Kik Messenger.  During that communication, Mr. Sprenger and the UC, or the undercover law enforcement officer, had a discussion about sexually explicit conduct that Mr. Sprenger had engaged in, and Mr. Sprenger then sent to the UC a video over Kik Messenger, specifically video 4, which is the subject of Count Two.

(App. at 58-60.)  The district court accepted Mr. Sprenger's guilty plea.  (App. at 34.)

## III.  Presentence Investigation Report, Supplemental Reports, and Sentencing Memoranda.

### A.  The Presentence Investigation Report.

The United States Probation Office issued the Presentence Investigation Report ("PSR") on June 4, 2019, using the 2018 version of the sentencing guidelines.  (R. at 41, p. 1, 9.)  Additional facts were disclosed in the PSR that are relevant here.  Mr. Sprenger had a conversation with another Kik user ("PH")

during which he discussed drugging and touching Victim B. (R. at 41, p. 7.) Specifically, he stated, "Mom is going out tonight. And [Victim A] isn't here. Im gonna try and slip some sleepy stuff into [Victim B]." (R. at 41, p. 7.) He then sent an image to PH of a drink with a spoon over it and the spoon contained a white powder. (R. at 41, p. 7.) He sent another image depicting white powder in the drink with an empty spoon. (R. at 41, p. 7.) He also sent the video of Victim B where he ejaculates on her to another Kik user. (R. at 41, p. 7.)

In Mr. Sprenger's statement to law enforcement, he stated he has a preference for teenage girls and admitted to taking "creepshots" of Victim A. (R. at 41, p. 7.) Many of these photographs were focused on Victim A's buttocks. (R. at 41, p. 7.) Mr. Sprenger admitted he had uploaded the "creepshots" to a Russian website used for public photo sharing. (R. at 41, p. 7.) He admitted to using a "spycam" application on his phone, which allowed him to take photos while his phone screen stayed dark. (R. at 41, p. 7.) Mr. Sprenger's micro SD card contained 30 videos of him masturbating on or around Victim A's photos and belongings. (R. at 41, p. 7.) He superimposed Victim A's face onto bodies of adult female pornography actresses. (R. at 41, p. 8.) He sent pictures of Victim A to other men who printed the photos and made videos of themselves ejaculated into the face of Victim A. (R. at 41, p. 8.) These videos were then sent to Mr. Sprenger. (R. at 41, p. 8.)

McCarthy gave Mr. Sprenger his minor daughter's cellular telephone number and Mr. Sprenger sent sexually-based messages to her. (R. at 41, p. 8.) His electronic devices also included videos of him masturbating with minor females nearby and not aware of his masturbation. (R. at 41, p. 7.) In one of these videos, Mr. Sprenger can be seen masturbating while Individual A's minor relatives (Victims D and E) are in the room. (R. at 41, p. 8.) In total, Mr. Sprenger possessed 1,108 images and 390 videos of child pornography. (R. at 41, p. 7.)

The probation officer calculated the guidelines as follows. Count 1, the production of child pornography offense involving Victim A, had a base offense level of 32 under § 2G2.1(a). (R. at 41, p. 9.) The officer added two levels because the offense involved a minor between the ages of 12 and 16 pursuant to § 2G1.1(b)(1)(B). (R. at 41, p. 9.) The officer also added two levels because the minor was in the custody, care, or supervisory control of Mr. Sprenger when the offense occurred under § 2G2.1(b)(5). (R. at 41, p. 9.) The adjusted offense level for Count 1 was 36. (R. at 41, p. 9.)

Count 4, the possession of child pornography offense, had a base offense level of 18 under § 2G2.2(a)(1). (R. at 41, p. 9.) The officer added two levels because the material involved a prepubescent minor under § 2G2.2(b)(2). (R. at 41, p. 9.) The officer also added two levels because Mr. Sprenger knowingly engaged in distribution of child pornography under § 2G2.2(b)(3)(F). (R. at 41, p.

13

10.)  The officer added four levels because the pornography possessed depicted sadistic or masochistic conduct, violence, or sexual abuse of an infant or toddler under § 2G2.2(b)(4).  (R. at 41, p. 10.)  The officer added five levels because Mr. Sprenger engaged in a pattern of activity involving the sexual abuse or exploitation of a minor under § 2G2.2(b)(5).  (R. at 41, p. 10.)  The officer also added two levels because the offense involved the use of a computer pursuant to § 2G2.2(b)(7)(D).  (R. a 41, p. 10.)  The officer assessed five additional levels because the offense involved more than 600 images under § 2G2.2(b)(7)(D).  (R. at 41, p. 10.)  The adjusted offense level for Count 4 was 38.  (R. at 41, p. 10.)

The officer then calculated the offense level for the Stipulated Offense, which was the production of child pornography involving Victim B.  (R. at 41, p. 10.)  The base offense level was 32 under § 2G2.1(a).  (R. at 41, p. 10.)  The officer added two offense levels because the minor was between 12 and 16 years old under § 2G2.(b)(1)(B).  (R. at 41, p. 10.)  The officer also added two levels because the offense involved the commission of a sexual act or sexual contact under § 2G2.1(b)(2)(A).  (R. at 41, p. 10.)  The officer added two levels because Mr. Sprenger engaged in distribution of a video depicting Victim B under § 2G2.1(b)(3).  (R. at 41, p. 10.)  The officer added two levels because Victim B was in the custody, care, or supervisory control of Mr. Sprenger under § 2G2.1(b)(5).  (R. at 41, p. 10.)  The adjusted offense level for the stipulated offense was 40.  (R.

14

at 41, p. 11.)

Under the multiple count adjustment rules, § 3D1.4(a), each offense received one unit, resulting in a three level enhancement to the highest adjusted offense level. (R. at 41, p. 11.) The combined adjusted offense level was 43. (R. at 41, p. 11.) The probation officer also determined Mr. Sprenger qualified under § 4B1.5(b)(1) as a repeat and dangerous sex offender against minors. (R. at 41, p. 11.) This resulted in a five level enhancement to the offense level determined in Chapters Two and Three, or an offense level of 48. (R. at 41, p. 11.) After a three level reduction for acceptance of responsibility, Mr. Sprenger's offense level was 45. (R. at 41, p. 12.) However, because the highest possible offense level is 43, his offense level was reduced to 43. (R. at 41, p. 12.) He had one criminal history point and his criminal history category was I. (R. at 41, p. 14.) The resulting guidelines range was life in prison. (R. at 41, p. 24.) However, because the statutory maximum sentence for Count 1 is 30 years and for Count 4 is 20 years, the statutory maximum sentence is 50 years or 600 months. (R. a 41, p. 24.) Therefore, the guidelines range was 600 months. (R. at 41, p. 24.)

## B.   The Supplemental Presentence Investigation Reports.

Voluminous attachments to the PSR contained victim statements and/or restitution requests for Victims A, B, C, D, and E. (R. at 41-1.) The PSR also contained attached victim impact statements and restitution requests for the

known child victims of the child pornography images and videos that Mr.

Sprenger possessed but did not produce himself.  (R. at 41-1.)  The PSR and the

attached supplemental materials contained restitution requests for known child

victims.  (R. at 41, 41-1.)  The second supplemental PSR detailed the specific

restitution requests made by the government totaling $86,000.  (R. at 51, p. 5.)

### C.    The Parties' Sentencing Memoranda.

The government filed a sentencing memorandum on August 15, 2019.  (R.

at 47.)  It requested the maximum statutory sentence of 50 years.  (R. at 47, p. 15.)

The memorandum also indicated that Mr. Sprenger had possessed a video of

Victim F, one of McCarthy's stepdaughters, who was 11 or 12 years when the

video was taken.  (R. at 47, p. 6.)  McCarthy took the video, which depicted

McCarthy masturbating next to Victim F, pointing the camera down to show his

naked, erect penis.  (R. at 47, p. 6.)  The video then showed Victim F seated at a

table with McCarthy masturbating behind her.  (R. at 47, p. 6.)  McCarthy sent

the video to Mr. Sprenger over Kik.  (R. at 47, p. 6.)

The government separated the restitution request into two groups - the

production victims and the possession victims.  (R. at 47, p. 17, 22.)  The

production victims were Victims A, B, C, D, and E - the children who were

depicted in videos Mr. Sprenger took himself.  (R. at 47, p. 17.)  The possession

victims were victims positively identified in the child pornography Mr. Sprenger

simply possessed that had been produced by someone else, including Victim F. (R. at 47, p. 22.) The government indicated there were seven known child victims who had been identified by law enforcement in the images possessed by Mr. Sprenger. (R. at 47, p. 22.)

The government proposed restitution to Victims A, B, and C of $15,000 each. (R. at 47, p. 19.) The government suggested restitution to Victims D and E of $3,000 each. (R. at 47, p. 22.) The difference in restitution amounts between Mr. Sprenger's production videos was accounted for because there was only one video of Victims D and E produced by Mr. Sprenger. (R. at 47, p. 22.) In addition, Victims D and E were not aware of the Mr. Sprenger's conduct as he filmed himself and them. (R. at 47, p. 22.)

The government proposed restitution of $5,000 for each of the possession victims. (R. at 47, p. 24.) The possession victims were Henley of the BluePillowI series, Maureen of the Lighthouse series, Pia of the Sweet Sugar series, Chelsea of the 2crazygurls series, Erin and Fiona, Jenny, and Victim F. (R. at 51, p. 5.) The total restitution requested by the government was $86,000. (R. at 51, p. 5.)

Mr. Sprenger filed a sentencing memorandum on August 19, 2019. (R. at 49.) He requested the minimum sentence of 15 years in prison. (R. at 49, p. 1.) In mitigation, he pointed out that he had been voluntarily engaging in alcohol treatment. (R. at 49, p. 1.) This was germane to his rehabilitation efforts because

he had engaged in the offenses while abusing alcohol.  (R. at 49, p. 9.)  He also

indicated that the psychological evaluation conducted at the request of defense

counsel indicated he had a low to moderate risk of sexually victimizing others.

(R. at 49, p. 4.)  He also noted that he was a victim as a child of sexual abuse and

had significant medical and mental health issues including anxiety, depression,

Attention Deficit Disorder, and anger issues.  (R. at 49, p. 12.)

**IV.    The Sentencing Hearing and Judgment in a Criminal Case.**

The district court held a sentencing hearing on August 29, 2019.  (App. at

67.)  The district court stated it had reviewed all of the sentencing submissions

and understood that, "while the defense believes various aspects of the guideline

calculation are weighted too heavily or impact the guideline disproportionally or

in a compounded fashion, you're not challenging the accuracy of the calculation

itself."  (App. at 70-71.)  Defense counsel agreed and indicated Mr. Sprenger was

not challenging the guidelines calculations.  (App. at 71.)  Individual A

addressed the court and then the government argued.  (App. at 73-76; 76-88.)

Defense counsel then argued, noting that the psychological evaluation had

not just relied on Mr. Sprenger's version of events and had found he had a low to

moderate risk of reoffending.  (App. at 88.)  Counsel emphasized that Mr.

Sprenger had suffered from sexual abuse as a child and currently suffers from

depression and suicidal thoughts.  (App. at 89.)  Counsel noted Mr. Sprenger

needed psychological and substance abuse treatment. (App. at 89-90.) He said

Mr. Sprenger had attended Alcoholics Anonymous while in custody and that his

offense conduct had been fueled by alcohol. (App. at 90-91.) Mr. Sprenger then

addressed the court. (App. at 92.) He apologized to the court and everyone

involved in the investigation. (App. at 92.) He apologized to his friends and

family and the victims of his offense. (App. at 92.)

The court then recited the § 3553(a) factors and noted that it was required

to impose a sentence that is sufficient but not greater than necessary. (App. at

93.) The court began by noting that Mr. Sprenger's crime was one of the most

serious crimes, involving children and victims from Mr. Sprenger's household

who trusted him. (App. at 94-95.) The court noted Mr. Sprenger used other

relationships to victimize children and possessed over 1,300 images of child

pornography and further victimized those children. (App. at 96.) The court

found that the offenses here did not just involve the creation of child

pornography, but also were sexual abuse. (App. at 96.) The court also found it

disturbing that Mr. Sprenger administered some sort of drug to one of the

victims in order to facilitate the abuse. (App. at 97.) The court found that Mr.

Sprenger spread his conduct further than his victims - he used hidden cameras in

bathrooms, stalked his victims, invited other men to victimize his victims, and

repeatedly targeted young girls. (App. at 97-98.)

19

The court also indicated it was considering mitigation factors as well. (App. at 09.)  The court considered Mr. Sprenger's history and characteristics including his lack of significant criminal history.  (App. at 98-99.)  The court noted Mr. Sprenger has significant mental health issues and was a sexual abuse victim himself.  (App. at 99-100.)  The court considered the psychological evaluation and its conclusion of a low to moderate recidivism rate.  (App. at 100.)  However, the court concluded the report was not based on a complete picture of the offense because it does not reflect "the heinous nature of the conduct" in this case.  (App. at 100.)

The court imposed a sentence was a term of 30 years on Count 1 and a term of 20 years on Count 4, those terms running concurrently.  (App. at 110-11.)  The court also imposed two terms of supervised release of 20 years each, running concurrently.  (App. at 117.)  The court imposed conditions of supervised release, a $200 special assessment, and restitution of $86,000.  (App. at 119-21.) Mr. Sprenger filed a timely notice of appeal on September 11, 2019.  (R. at 56.)

## SUMMARY OF ARGUMENT

Mr. Sprenger's guilty plea was not knowing and voluntary where he pled guilty to one count and stipulated to another count of production of child pornography under 18 U.S.C. § 2251(a) but the facts in his case fail to establish his guilt of either offense because he did not "use" or "employ" a minor to engage in sexually explicit conduct to produce images containing child pornography. The key portion of this statute is whether the defendant: "employs, uses, persuades, induces, entices, or coerces any minor to engage in" sexually explicit conduct. If a defendant's conduct and the minor's conduct do not fall within this definition, the defendant is not guilty of an offense under § 2251(a).

In Mr. Sprenger's case, it is clear his conduct did not fall into the "persuades, induces, entices, or coerces" portion of the statute. The minor children at issue were sleeping when he took the images he was charged with in the indictment. The children were unaware any activity was occurring and were therefore unable to be persuaded, induced, enticed, or coerced. The indictment charged that he "employed and used" the minors. The question is whether there was a factual basis for employing or using a minor to engage in sexually explicit conduct. Given the record in this case, this Court cannot conclude Mr. Sprenger either employed or used a minor to engage in sexually explicit conduct.

21

As a result, Mr. Sprenger's guilty plea was not knowing and voluntary and it must be vacated and this case remanded for redetermination of the surviving counts of the indictment.  Mr. Sprenger entered into the plea agreement as a whole, pleading guilty to both counts and stipulating to another count in exchange for certain promises from the government.  For this reason, the defect inherent in the 18 U.S.C. § 2252(a) plea taints the guilty plea to the 18 U.S.C. § 2252A(a)(5)(B) offense as well.

Both parties were mistaken as to the nature of the § 2251(a) charges against Mr. Sprenger.  Given the parties' mutual mistake as to an essential element of the plea agreement and the guilty plea, the entire plea agreement should be invalidated.  Thus, Mr. Sprenger is entitled to withdraw his entire guilty plea and plea agreement, including the stipulated offense, the § 2242A(a)(5)(B) offense, and the § 2251(a) offense.

## ARGUMENT

**I. Mr. Sprenger's guilty plea was not knowing and voluntary where he pled guilty to one count and stipulated to another count of production of child pornography under 18 U.S.C. § 2251(a) but the facts in his case fail to establish his guilt of either offense because he did not "use" or "employ" a minor to engage in sexually explicit conduct to produce images containing child pornography.**

### A. Standard of Review.

This Court reviews whether a guilty plea is knowing and voluntary by looking at the total circumstances surrounding the plea and determining whether the defendant was appropriately informed of his rights. *United States v. Mitchell,* 58 F.3d 1221, 1224 (7th Cir. 1995). In reviewing whether a defendant was informed of his rights and the subsequent plea was voluntary, the Court reviews the plea under the requirements of Federal Rule of Criminal Procedure 11. *Id.* To comport with Rule 11, the district court must advise the defendant of his constitutional rights, the charges against him, the factual basis for the plea, and the minimum and maximum penalties. *United States v. Garcia,* 35 F.3d 1125, 1132 (7th Cir. 1994). These safeguards help ensure that the defendant's plea is knowing and voluntary. *Id.*

Mr. Sprenger did not raise a challenge to the factual basis for his pleas in the district court. Therefore, review is for plain error. *Puckett v. United States,* 556 U.S. 129, 134 (2009). Under plain error review, the defendant must establish: (1) that an error occurred; (2) that the error was plain; (3) the error affected the

defendant's substantial rights; and (4) the error seriously affected the fairness,

integrity, or public reputation of the judicial proceedings. *United States v.*

*Patterson,* 576 F.3d 431, 438 (7th Cir. 2009).

**B.    Section 2251(a) as interpreted by this Court's recent *Howard* case.**

Mr. Sprenger pled guilty to one count and stipulated to another count

charged under § 2251(a).  An offense under § 2251(a) is commonly called

"production of child pornography."  *See United States v. Al-Awadi,* 873 F.3d 592,

596 (7th Cir. 2017).  Title 18 U.S.C. § 2251(a) mandates a 15 year mandatory

minimum sentence for the sexual exploitation of children for:

> Any person who employs, uses, persuades, induces, entices,
> or coerces any minor to engage in, or who has a minor assist any
> other person to engage in, or who transports any minor in or
> affecting interstate or foreign commerce, or in any Territory or
> Possession of the United States, with the intent that such minor
> engage in, any sexually explicit conduct for the purpose of
> producing any visual depiction of such conduct. . . .

18 U.S.C. § 2251(a).  For the purposes of this case, the key portion of this statute is

whether the defendant: "employs, uses, persuades, induces, entices, or coerces

any minor to engage in" sexually explicit conduct.  If a defendant's conduct and

the minor's conduct do not fall within this definition, the defendant is not guilty

of an offense under § 2251(a).

In Mr. Sprenger's case, it is clear his conduct did not fall into the

"persuades, induces, entices, or coerces" portion of the statute.  As discussed in

further detail below, the minor children at issue were sleeping when he took the images he was charged with in the indictment.  The children were unaware any activity was occurring and were therefore unable to be persuaded, induced, enticed, or coerced.  The indictment charged that he "employed and used" the minors.  (R. at 19, p. 1, 2.)  Therefore, this argument focuses on whether there was a factual basis for employing or using a minor to engage in sexually explicit conduct.  Given the record in this case, this Court cannot conclude Mr. Sprenger either employed or used a minor to engage in sexually explicit conduct.

This Court recently issued a decision in *United States v. Howard*, holding that in cases where the defendant is charged under § 2251(a) for videos that do not depict a child engaged in sexually explicit conduct, the videos are not child pornography and the defendant cannot stand convicted of producing any visual depiction of such sexually explicit conduct. *United States v. Howard,* 2020 U.S. App. LEXIS 24360, *10-11 (7th Cir. Aug. 2, 2020).[3]  "The most natural and contextual reading of the statutory language requires the government to prove that the offender took one of the listed actions to cause *the minor* to engage in sexually explicit conduct for the purpose of creating a visual image of that

---

[3] The *Howard* case was decided on August 3, 2020, and the government sought and received two extensions of times to file a petition for rehearing *en banc*.  *United States v. Matthew Howard,* Case Number 19-1005, docket numbers 32-35.  The government's petition is currently due on October 16, 2020.  *Id.* at 35.

conduct." *Id.* (emphasis in original).

The *Howard* case involved videos that depicted the defendant chatting online with others about their mutual sexual interest in children. *Id.* at *3. He turned his camera on to reveal his fully-clothed nine year old niece sleeping on the floor. *Id.* He masturbated several inches above her clothed buttocks. *Id.* Another video shows the same girl, again sleeping and fully clothed, with the defendant masturbating above her head. *Id.* at *4. The defendant "hovers very close to her face, with his erect penis near - and possibility momentarily touching - her lips while she sleeps." *Id.* The government maintained that the defendant's "use" of the minor for his own sexual gratification was enough to meet the "uses" portion of § 2251(a).

The Court rejected the government's proposed interpretation of the word "uses" and held that all of the verbs on the statutory list "require some action by the offender to cause the *minor's* direct engagement in sexually explicit conduct." *Id.* at *12 (emphasis in original). The Court found support in the consistency of the statutory scheme that Congress created to combat child pornography and noted that the government's interpretation would penalize the production of material that is not child pornography. *Id.* at *12-*13.

The defendant in *Howard* came to this Court in an odd procedural stance. He had been charged with seven crimes relating to the possession, receipt,

26

distribution, and production of child pornography. *Id.* at *1. He pled guilty to the five charges that did not involve production of child pornography prior to trial. *Id.* He proceeded to trial on the production charges alone. *Id.* Based on this posture, the remedy in *Howard* was to reverse the defendant's § 2251(a) convictions and remand for resentencing on the remaining counts. *Howard,* 2020 U.S. App. LEXIS 24360 at *15.

The *Howard* case controls in Mr. Sprenger's case. Like the defendant in *Howard,* Mr. Sprenger did not use or employ a minor to cause *the minor* to engage in sexually explicit conduct for the purpose of creating a visual image of that conduct. Unlike the defendant in *Howard,* Mr. Sprenger pled guilty and the question must be whether there was factual basis to support his guilty pleas to production counts. It is clear, after *Howard,* that there is not an adequate factual basis for his guilty pleas. However, the remedy for Mr. Sprenger is not simply to vacate the production conviction and stipulation. Because guilty pleas and plea agreements stand or fall as a whole, the entire guilty plea and plea agreement must be vacated and this case must go back for resolution of the remaining charges in the indictment.

### C. The factual basis to support Mr. Sprenger's guilty pleas and stipulation failed to state violations of 18 U.S.C. § 2251(a).

Mr. Sprenger was charged with a total of four counts: two counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) (Counts One and Two);

one count of transporting child pornography in violation of 18 U.S.C. §

2252A(a)(1) (Count Three); and one count of possession of child pornography in

violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Four).  (R. at 19.)  He pled guilty to

two of those counts, Count One and Count Four.  (App. at 2.)  In his plea

agreement, he stipulated to another count, Count Two.  (App. at 6.)

Again, Mr. Sprenger's offense conduct supporting Count One in this case

is nearly identical to the defendant's in *Howard.*  He took pictures of his naked,

erect penis next to her face and images of his own face, with his tongue sticking

out, next to her clothed groin.  Victim A was sleeping at the time and she in no

way "engaged in sexually explicit conduct."  At least for Count One, Mr.

Sprenger did not even admit he physically touched Victim A at all.  The

government's evidence failed to show he employed, used, persuaded, induced,

enticed, or coerced Victim A in these images.  As terrible as the images are,

Victim A was completely unaware of what was going on because she was asleep

and not touched at all.  Under *Howard,* Mr. Sprenger did not commit the

violation of § 2251(a) alleged in Count One.  His guilty plea was premised on an

offense that is not supported by a factual basis and, as a result, his entire guilty

plea is not knowing and voluntary.

A mistake about the substantive offense goes to the heart of the guilty plea.

*United States v. Bowlin,* 534 F.3d 654, 660 (7th Cir. 2008).  Where a defendant was

28

misinformed during the change of plea hearing as to what conduct would suffice to establish the offense, the guilty plea is not knowingly and voluntary. *United States v. Bradley,* 381 F.3d 641, 646 (7th Cir. 2004). In addition, where none of the parties understood the elements of the offense, or the facts to support those elements, confidence in the defendant's understanding of the charge is undermined. *See id.* at 647. Unless the defendant understands the elements of the crime he is admitting, his plea cannot be said to have been knowingly and voluntarily entered. *United States v. LeDonne,* 21 F.3d 1418, 1423 (7th Cir. 1994).

Furthermore, it is a violation of due process where the district court accepts a plea to which the elements of the crime are incorrectly understood. *Bradley,* 381 F.3d at 647 (citing *United States v. Musa,* 946 F.2d 1297, 1303 (7th Cir. 1991)). A defendant's clear understanding of the nature of the charges to which he is pleading guilty "relates to the very heart of the protections afforded by the Constitution and Rule 11." *Bradley,* 381 F.3d at 647. Misunderstanding of the nature of the charge, and the elements of the charge, which is shared by all participants in the hearing, is not harmless error. *Id.* (citing *United States v. Fernandez,* 205 F.3d 1020, 1027 (7th Cir. 2000)). Where there has been a fundamental misunderstand of the factual basis, the defendant's guilty plea is not knowing and voluntary. *See Bradley,* 381 F.3d at 347. This Court should reverse Mr. Sprenger's convictions and remand to the district court with

29

instructions to allow him to withdraw his guilty pleas.

> **1.    The facts of *Howard* are indistinguishable from this case and, as a result, Mr. Sprenger's § 2251(a) conviction in Count One lacks a factual basis for guilt.**

As stated above, Mr. Sprenger pled guilty to Count One, a production of child pornography count under § 2251(a).  The factual basis he agreed to in his plea agreement was, in relevant part, as follows.  Mr. Sprenger admitted he took at least seven photographs of Victim A while she was sleeping in March of 2015.  (App. at 3.)  The photographs included images of his naked, erect penis next to her face and images of his own face, with his tongue sticking out, next to her clothed groin.  (App. at 3.)  None of his conduct involved touching Victim A and none of the actions caused Victim A to herself engage in sexually explicit conduct.

The factual basis provided by the government at the change of plea hearing was nearly identical to the factual basis from Mr. Sprenger's plea agreement.  (App. at 58-60.)  A significant difference, however, is after the government recited the facts to support Count One, the production count, the district court clarified, "And just to be clear, the sexually explicit conduct was not of Victim A but was of Mr. Sprenger, correct?"  (App. at 58.)  The government agreed that the minor had not engaged in sexually explicit conduct.  (App. at 58.)

"In other words, the videos are not child pornography." *Howard,* 2020 U.S. App. LEXIS 24360 at *2. Mr. Sprenger cannot be found guilty of a § 2251(a) offense based on these facts. He may be guilty of other offenses, and his conduct was reprehensible, but his guilty plea to Count One was not supported by a factual basis. He was misinformed about the conduct that would suffice to establish the § 2251(a) offense. This was a due process violation and Mr. Sprenger's guilty plea, conviction, and sentence as to Count One must be vacated. The next question is what happens to the remaining parts of his guilty plea. As is shown below, the rest of Mr. Sprenger's guilty plea, convictions, and sentences cannot be disentangled from the error infecting Count One and must be vacated as well.

**2.     Mr. Sprenger's stipulated offense conduct to the charge in Count Two, also involving a § 2251(a) offense, lacks a factual basis.**

Mr. Sprenger stipulated that he also committed the offense charged in Count Two, which was based on his conduct with Victim B in 2017 in their home in Illinois. This was a stipulated offense and did not result in a conviction or a sentence. However, the conduct had an effect on Mr. Sprenger's guidelines calculations and his sentence. It was also a critical part of his guilty plea and plea agreement. For this offense, Mr. Sprenger admitted he took four videos of Victim B while she was sleeping. (App. at 6.) In the first video, he focused the

camera on Victim B's clothed buttocks and vagina while he masturbated over her.  (App. at 6.)  In the second video, he "reached with his hand and made physical contact with Victim B's clothed vagina."  (App. at 6.) In the third video, he "made physical contact with Victim B's clothed vagina and buttocks."  (App. at 6.)  The type of physical contact is not specified for either one of these videos.  (App. at 6.)  In the final video, Mr. Sprenger ejaculated onto Victim B's clothed buttocks.  (App. at 7.)  He admitted he sent the fourth video to the UC over Kik Messenger.  (App. at 8.)

This conduct is very similar to the conduct of the defendant in the *Howard* case, who "perhaps momentarily touch[ed] her lips with his penis."  *Howard,* 2020 U.S. App. LEXIS 24360 at *15, n. 3.  Mr. Sprenger's conduct involved touching Victim B's clothed vagina and buttocks with his hand.  It is unclear from the record exactly the nature of the physical contact with Victim B, but is clear she was sleeping at the time and he made contact with her clothed body.  It is possible this contact was "momentary" as in *Howard* and it is possible it was longer.  Importantly, however, is that the factual basis provided for Mr. Sprenger's guilty plea contains no more information than stated here and that information clearly shows Victim B did not engage in sexually explicit conduct. Without more information in the record, this Court cannot conclude the factual basis supported proves a violation of § 2251(a) and cannot uphold Mr. Sprenger's

stipulation.  This is another reason Mr. Sprenger's entire guilty plea and plea

agreement must be vacated and remanded.

> **3.**     **Although no direct challenge can be made to Mr. Sprenger's conviction for possession of child pornography, it too was tainted by conduct allegedly in violation of § 2251(a).**

Mr. Sprenger's second conviction was for possessing child pornography.

This conviction was based primarily on his possession of videos and images that

he did not create.  However, the factual basis for this offense also included his

possession of images and videos he made with Victims A, B, C, D, E, and F. For

Count Four, a violation of 18 U.S.C. § 2252A(a)(5)(B), Mr. Sprenger admitted he

possessed material which contained images of child pornography, including the

images he took of Victim A that constituted the offense charged in Count One.

(App. at 4.)  He also admitted the images he possessed included images he took

of Victim B, Victim C, and other victims personally unknown to him but known

victims of widely distributed child pornography.  (App. at 4-5.)

The videos involving Victim C were described as follows.  Mr. Sprenger

and McCarthy entered the bedroom where Victim C was sleeping.  (App. at 5.)

Mr. Sprenger masturbated over Victim C and, when he ejaculated, McCarthy

pinched some of the ejaculate off of Mr. Sprenger's penis and flicked it at Victim

C's face.  (App. at 5.)  Although not charged as a § 2251(a) offense, it is very clear

this is conduct the government might have charged (pre-*Howard*) as a separate §

2251(a) offense but chose not to.  This conduct does not meet the elements of §

2251(a) because nothing Mr. Sprenger did caused Victim C to engage in sexually

explicit conduct.  Like Victim A and Victim B, Victim C was sleeping when the

conduct occurred.  Like the conduct filmed with Victim A and Victim B, these

videos "are not child pornography."  *Howard,* 2020 U.S. App. LEXIS 24360 at *2.

> **4.     As a result, Mr. Sprenger's guilty plea was not knowing and
> voluntary and it must be vacated and this case remanded for
> redetermination of the surviving counts of the indictment.**

Mr. Sprenger entered into the plea agreement as a whole, pleading guilty

to both counts and stipulating to another count in exchange for certain promises

from the government.  For this reason, the defect inherent in the 18 U.S.C. §

2252(a) plea taints the guilty plea to the 18 U.S.C. § 2252A(a)(5)(B) offense as

well. *See Bradley,* 381 F.3d at 648.  Ordinary contract principles govern plea

agreements.  *See United States v. Barnes,* 83 F.3d 934, 938 (7th Cir. 1996).  Thus,

"when the government proposes a plea agreement, when the defendant accepts

it and when the district court enforces it, there must be a meeting of minds on all

of its essential terms."  *Id.*  Among the essential terms is the "nature of the charge

to which the defendant pleads."  *Id.*

Ambiguity in an essential term or a mutual mistake about the meaning of

such a term can invalidate the plea agreement. *Bradley,* 381 F.3d at 348.  Both

parties were mistaken as to the nature of the § 2251(a) charges against Mr.

34

Sprenger.  Given the parties' mutual mistake as to an essential element of the plea agreement and the guilty plea, the entire plea agreement should be invalidated.  *See Barnes,* 83 F.3d at 941 ("If we rule that some provision of the plea agreement is invalid, we must discard the entire agreement and require the defendant and the government to begin their bargaining all over again.")  The whole plea agreement stands, or the whole thing falls.  *United States v. Peterson,* 268 F.3d 533, 534 (7th Cir. 2001).  Thus, Mr. Sprenger is entitled to withdraw his entire guilty plea and plea agreement, including the stipulated offense, the § 2242A(a)(5)(B) offense, and the § 2251(a) offense.

     **E.**    **Mr. Sprenger can easily meet the plain error standards in this case.**

*Howard* was decided after Mr. Sprenger's judgment was entered and while his case was pending on appeal.  It represents a new interpretation of § 2251(a) involving cases in which the minor does not engage in sexually explicit conduct but the defendant does.  Mr. Sprenger did not raise this issue in the district court, and agreed that the factual bases in his plea agreement and recited by the government at the change of plea hearing were correct.  Because he raised no objection in the district court, this case is reviewed for plain error.  He can meet each one elements of plain error review.

In order to succeed on plain error review, Mr. Sprenger must demonstrate "an error or defect," that is "clear or obvious," and that "affected the [his]

substantial rights." *See United States v. Taylor,* 9009 F.3d 889, 893 (7th Cir. 2018). "[I]f the above three prongs are satisfied, the court of appeals has the discretion to remedy the error - discretion which ought to be exercised only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano,* 507 U.S. 725, 736 (1993)).  There was error in this case - Mr. Sprenger pled guilty to an offense that did not have an adequate factual basis to provide he committed the statutorily required conduct.  Given the fundamental misapprehension of the necessary factual basis to support a § 2251(a) charge, Mr. Sprenger's guilty plea was not knowing and voluntary.  *See Bradley,* 381 F.3d at 647.

The error may not have been plain in the district court, insofar as *Howard* was not decided until after Mr. Sprenger was sentenced and appealed, but all decisions apply to cases pending on appeal when they are decided. *United States v. Maez,* 960 F.3d 949, 954 (7th Cir. 2020) ("Current law governs our review on direct appeal, including any issues reviewed for plain error.")  After *Howard,* which is this Court's current law, the error in Mr. Sprenger's case is plain.

The error also affected Mr. Sprenger's substantial rights.  As argued above, it is a due process violation where the district court accepts a plea to which the elements of the crime are incorrectly understood.  *Bradley,* 381 F.3d at 647.  Mr. Sprenger has a substantial right to not be convicted of a crime for which the

factual basis does not prove he committed the crime charged.

This Court should furthermore exercise its discretion to remedy the error because it "seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Sura,* 511 F.3d 654, 663 (7th Cir. 2007). Mr. Sprenger received a sentence of 360 months (30 years) in prison, well below the applicable guidelines range of 600 months (50 years) in prison. However, this sentence and guidelines range was driven in large part by the conduct underlying the § 2251(a) charges. If those charges were not part of the sentencing guidelines calculation, his guidelines range would have been significantly lower. For example, if he had just been convicted of Count Four, and the guidelines calculations remained the same for Count Four, his total offense level would be 35, his criminal history category would be I, and the applicable guidelines range would be 168 to 210 months.[4] A sentence of 360 months is significantly higher than that range and based on multiple factors that are tied to conduct that cannot be considered a violation of § 2251(a). Therefore,

---

[4] This calculation is purely speculative and underlines the reasons the entire plea and plea agreement must be vacated in this case. For Count Four, the guidelines calculations were as follows: the base offense level under § 2G2.2(a)(1) is 18. (R. at 41, p. 9.) The following enhancements were added: two levels for involving a minor between 12 and 16 under § 2G2.2(b)(2); two levels for distribution under § 2G2.2(b)(3)(F); four levels for sadistic conduct under § 2G2.2(b)(4); five levels for a pattern of activity under § 2G2.2(b)(5); two levels for use of computer under § 2G2.2(b)(6); and five levels for more than 600 images under § 2G2.2(b)(7)(D). (R. at 41, p. 9-10.) After acceptance of responsibility, the total offense level would be 35.

this Court should exercise its discretion to vacate Mr. Sprenger's pleas and plea

agreement under plain error review and remand this case for further

proceedings.

# CONCLUSION

For all of the foregoing reasons, Defendant-Appellant Adam Sprenger respectfully request this Court vacate his guilty pleas and remand for further proceedings.

Respectfully submitted,
THOMAS W. PATTON
Federal Public Defender

s/  Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
ADAM SPRENGER

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(C)**

The undersigned certifies that this brief complies with the volume

limitations of Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule

32 in that it contains 9,344 words and 787 lines of text as shown by Microsoft

Word 2010 used in preparing this brief.


s/  Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN


Dated:  September 21, 2020

No. 19-2779

———————————————————————

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————————————————

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

ADAM SPRENGER,
Defendant-Appellant.

———————————————————————

Appeal from the United States District Court
for the Northern District of Illinois
Case No. 18-CR-105
The Honorable Judge John J. Tharp, Jr.

———————————————————————

REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT, ADAM SPRENGER

———————————————————————

FEDERAL PUBLIC DEFENDER
CENTRAL DISTRICT OF ILLINOIS
401 Main Street, Suite 1500
Peoria, Illinois 61602
Telephone:   (309) 671-7891
Fax:             (309) 671-7898
Email: Johanna_Christiansen@fd.org

THOMAS W. PATTON
Federal Public Defender

JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender


Attorneys for Defendant-Appellant,
ADAM SPRENGER

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

The undersigned counsel for Defendant-Appellant, hereby states that all of

the materials required by Circuit Rule 30(a) and 30(b) are included in the

Appendix to this brief.


<u>s/  Johanna M. Christiansen</u>
JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender

Date:  September 21, 2020

## APPENDIX TABLE OF CONTENTS

Certification ..................................................................................................ii

Plea Agreement .........................................................................................1

Change of Plea Hearing Transcript..........................................................27

Sentencing Hearing Transcript ................................................................67

Judgment in a Criminal Case ................................................................115

*FILED*
*FEB 15 2019*
*JUDGE JOHN J. THARP, JR.*
*UNITED STATES DISTRICT COURT*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ADAM SPRENGER

No. 18 CR 105

Judge John J. Tharp, Jr.

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the
Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant ADAM
SPRENGER, and his attorneys, THOMAS BRANDSTRADER and ANDREW
GABLE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and
is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to
this Agreement have agreed upon the following:

### Charges in This Case

2.      The indictment in this case charges defendant with production of child
pornography, in violation of Title 18, United States Code, Section 2251(a) (Counts
One and Two); transportation of child pornography, in violation of Title 18, United
States Code, Section 2252A(a)(1) (Count Three); and possession of child pornography,
in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Count Four).

3.      Defendant has read the charges against him contained in the
indictment, and those charges have been fully explained to him by his attorneys.

4.      Defendant fully understands the nature and elements of the crimes with
which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with production of child pornography, in violation of Title 18, United States Code, Section 2251(a); and Count Four, which charges defendant with possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Four of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.    With respect to Count One of the indictment:

Between on or about March 22, 2015, and on or about March 24, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere, including the Eastern District of Wisconsin, defendant ADAM SPRENGER knowingly employed and used a minor, namely, Victim A, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and the visual depiction was transported

2

using any means and facility of interstate commerce, in violation of Title 18, United States Code, Section 2251(a).

Specifically, on or about March 21, 2015, SPRENGER traveled from Illinois to a hotel in Lake Geneva, Wisconsin, with Individual A and her four minor children, including Victim A. SPRENGER knew that Victim A was 14 years old at the time. SPRENGER lived with Victim A's mother, and Victim A was in the care, custody, or supervisory control of SPRENGER at the time. On or about March 22, 2015, in the hotel room, SPRENGER used a Samsung Galaxy cellular phone to take at least seven photographs of Victim A while she was sleeping. In these images, SPRENGER used Victim A to engage in sexually explicit conduct. In one of the images, SPRENGER photographed his naked, erect penis next to Victim A's face. In another image, SPRENGER photographed his own face, with his tongue sticking out, next to Victim A's clothed groin. SPRENGER, Individual A, and the four minor children, including Victim A, stayed at the hotel until on or about March 23, 2015, when they returned to Illinois. When SPRENGER returned to Illinois, he brought his Samsung Galaxy cellular phone containing the sexually explicit images he took of Victim A. SPRENGER then stored the images on a USB drive, which he kept in his residence in Illinois.

b.    With respect to Count Four of the indictment:

On or about February 14, 2018, at Arlington Heights, in the Northern District of Illinois, Eastern Division, and elsewhere, SPRENGER knowingly possessed

3

material, namely (1) an HP laptop computer, model Pavilion DM4, bearing serial number CNU1311MPR; (2) an HP laptop computer, model Compaq nc6400, bearing serial number CND70528HT; (3) a Verizon Samsung Galaxy S7 cellular phone, bearing IMEI number 359764081485953; (4) a Samsung EVO 16GB micro SD card, bearing serial number KPABT27PB629; and (5) a DANE-ELEC 2GB USB drive, bearing serial number 4820-B6C1, which contained an image of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), that involved a prepubescent minor and a minor who had not yet obtained 12 years of age, such image having been shipped and transported using any means and facility of interstate and foreign commerce, and such image having been produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

Specifically, SPRENGER possessed approximately 64 images of child pornography on a DANE-ELEC USB drive bearing serial number 4820-B6C1, which was manufactured outside of the United States. The USB drive included, among other images, the image in which SPRENGER photographed his naked, erect penis next to Victim A's face and the image in which SPRENGER photographed his own face, with his tongue sticking out, next to Victim A's clothed groin. These images were taken on or about March 21, 2015, and Victim A was 14 years old at the time.

4

SPRENGER also possessed approximately 66 images and 387 videos of child pornography on a micro SD card bearing serial number KPABT27PB629, which was manufactured in the Philippines. The micro SD card included, among other videos, four videos taken on or about April 7, 2017, in which SPRENGER filmed himself masturbating over Victim B as she slept, making physical contact with Victim B's clothed vagina and buttocks, and ejaculating onto Victim B's clothed buttocks. Victim B was 13 years old at the time. The micro SD card also included, among other videos, a video titled 20170106_072256, in which SPRENGER filmed himself masturbating as he and another man, Sean McCarthy, walked into a bedroom where Victim C was sleeping on a bed. SPRENGER stood over Victim C as he masturbated. When SPRENGER ejaculated, McCarthy pinched some of the ejaculate off of SPRENGER's penis and flicked it three times in a downward manner, towards Victim C's face. This video was taken on or around January 6, 2017. Victim C was 14 years old at the time.

SPRENGER possessed approximately 64 images of child pornography on an HP laptop computer, model Pavilion DM4, bearing serial number CNU1311MPR. The HP laptop was manufactured in China. SPRENGER possessed approximately 914 images and 3 videos of child pornography on another HP laptop computer, model Compaq nc6400, bearing serial number CND70528HT. The HP laptop was also manufactured in China.

The images and videos of child pornography that SPRENGER possessed on these devices also included images and videos of children, some as young as toddlers,

5

being forced to engage in oral, vaginal, and anal intercourse, as well as sadomasochistic images and lascivious exhibition of minors' genitals.

Stipulated Offense

Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense: On or about April 7, 2017, and on or about November 14, 2017, at Arlington Heights, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant did knowingly employ and use a minor, namely, Victim B, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and such visual depiction was transported using any means and facility of interstate commerce, in violation of Title 18, United States Code, Section 2251(a).

Specifically, on or about April 7, 2017, SPRENGER took four videos of Victim B, while Victim B was sleeping. SPRENGER knew that Victim B was 13 years old at the time. SPRENGER lived with Victim B's mother, and Victim B was in the care, custody, or supervisory control of SPRENGER at the time. In video one, titled 20170407_020204.mp4, SPRENGER pulled back the blanket that was covering Victim B and focused the camera on Victim B's clothed buttocks and vagina. SPRENGER's erect penis was visible as he masturbated over Victim B. In video two, titled 20170407_020628.mp4, SPRENGER reached with his hand and made physical contact with Victim B's clothed vagina. In video three, titled 20170407_020820.mp4, SPRENGER made physical contact with Victim B's clothed vagina and buttocks. In

6

video four, titled 20170407_021005.mp4, SPRENGER ejaculated onto Victim B's clothed buttocks. SPRENGER then stored the four videos on a micro SD card, which was manufactured in the Philippines.

On or about November 14, 2017, SPRENGER communicated with an individual who, unbeknownst to SPRENGER, was an undercover law enforcement officer ("the UC") over an application called Kik Messenger. During that Kik conversation, the UC asked "Hey, saw you on [Website A] & wondered if you were hands on with any yung [sic] toys like me? Ime [sic] only lookin [sic] to swap new homemade stuff, not old shit." SPRENGER responded, "How did you get the password btw?" The UC replied, "i didnt use a password to get in wtf? soz mate, looks like your albums are lock now, but I dont know your pass, but I do comment on a lot of pics, so cant remember what the fuk I did". SPRENGER replied, "Well, it's always been locked. I don't get it either. No worries. I get along with other perverts. Haha". The UC stated, "oh fuk yeah ime a real pervert alright! Actually ime a downright sik fukka that needs serious help". SPRENGER replied, "Even better".

SPRENGER asked the UC, "How olds yours?" The UC responded, "she's 11 goin on 12 I just met her mother online, so ime [sic] only just kickin off things. yours?" SPRENGER replied, "Yummy! 10 and 14[.] I only date women with beautiful girls. Or if they are ultra petite." The UC stated, "fukin awesome man! two on tap? yeah that's funny cos I only look for women online that are single mums[.] ive got this act goin on with them where ime the most carin person in the world with their

7

daughters[.] i tell them they can go out clubbin with their girlfriends & I will stay home and care for their beatiful little girls." SPRENGER responded, "Until you are feeding them your cum in their breakfast." The UC asked, "how far have you got with your two? or aren't you touchin them?" SPRENGER responded, "Just rubbed my cock on their face and hands while their sleeping". The UC stated, "fuk yeah! thats great. did you get pics of your cok on their pretty faces? where did you blow?" SPRENGER replied, "Yes. And on the bed or floor next to them".

After several additional communications during which the UC asked SPRENGER for pictures, SPRENGER sent a video to the UC over Kik Messenger, specifically, video four, titled 20170407_021005.mp4, in which he ejaculated onto Victim B's clothed buttocks while Victim B slept.

### **Maximum Statutory Penalties**

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of 30 years' imprisonment, and a statutory mandatory minimum sentence of 15 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

8

b.       Count Four carries a maximum sentence of 20 years' imprisonment. Count Four also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Four, the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

c.       Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.       Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e.       Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 50 years' imprisonment, and the minimum sentence is 15 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

f.       Defendant further understands that, pursuant to Title 18, United States Code, Section 3014, defendant will be assessed an additional $5,000 per count of conviction if the Court determines that he is a non-indigent person.

## **Sentencing Guidelines Calculations**

8.       Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

9

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

10

b.      **Offense Level Calculations**.

## Count One (Group One)

i.      The base offense level is 32, pursuant to Guideline § 2G2.1(a).

ii.     Pursuant to Guideline § 2G2.1(b)(1)(B), two levels are added because at the time of the offense Victim A was a minor who had attained the age of 12 years but not the age of 16 years.

iii.    Pursuant to Guideline § 2G2.1(b)(5), two levels are added because Victim A was in the custody, care, or supervisory control of the defendant.

iv.     Accordingly, the offense level for Count One is 36.

## Count Four (Group Two)

v.      The base offense level is 18, pursuant to Guideline § 2G2.2(a)(1).

vi.     Pursuant to Guideline § 2G2.2(b)(2), two levels are added because the material involved a prepubescent minor or a minor who had not attained the age of 12 years.

vii.    Pursuant to Guideline § 2G2.2(b)(3)(F), two levels are added because defendant knowingly engaged in distribution of child pornography.

viii.   Pursuant to Guideline § 2G2.2(b)(4), four levels are added because the offense involved material that portrays (A) sadistic or masochistic

11

conduct or other depictions of violence, or (B) sexual abuse or exploitation of an infant or toddler.

ix.    Pursuant to Guideline § 2G2.2(b)(5), five levels are added because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

x.    Pursuant to Guideline § 2G2.2(b)(6), two levels are added because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material.

xi.    Pursuant to Guideline § 2G2.2(b)(7), five levels are added because the offense involved 600 or more child pornography images.

xii.    Accordingly, the offense level for Count Four is 38.

### **Stipulated Offense (Group Three)**

xiii.    The base offense level is 32, pursuant to Guideline § 2G2.1(a).

xiv.    Pursuant to Guideline § 2G2.1(b)(1)(B), two levels are added because at the time of the offense Victim B was a minor who had attained the age of 12 years but not the age of 16 years.

xv.    Pursuant to Guideline § 2G2.1(b)(2)(A), two levels are added because the offense involved the commission of a sexual act or sexual contact.

12

xvi.     Pursuant to Guideline § 2G2.1(b)(3), two levels are added because the defendant knowingly engaged in distribution.

xvii.     Pursuant to Guideline § 2G2.1(b)(5), two levels are added because Victim B was in the custody, care, or supervisory control of the defendant.

xviii.     Accordingly, the offense level for the stipulated offense is 40.

## Grouping Under Guideline § 3D1.2

xix.     Pursuant to Guideline § 3D1.2(d), Group One (Count One), Group Two (Count Four), and Group Three (Stipulated Offense) each are treated as a separate group because offenses under Guideline § 2G2.1 are specifically excluded from this subsection. There are therefore three groups.

xx.     The Stipulated Offense carries the highest offense level of 40. Pursuant to § 3D1.4(a), the Stipulated Offense counts as one unit.

xxi.     The two other groups are from 1 to 4 levels less serious, so one additional unit is counted for each group pursuant to Guideline § 3D1.4(a), for a total of three units.

xxii.     Pursuant to Guideline § 3D1.4(a), three levels are added to the group with the highest offense level because there are three units. This results in a combined offense level of 43.

13

## **Acceptance of Responsibility**

xxiii.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xxiv.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

## **Repeat and Dangerous Sex Offender against Minors**

xxv.      Pursuant to Guideline § 4B1.5(b)(1), five levels are added because the instant offense is a covered sex crime, defendant engaged in a pattern of activity involving prohibited sexual conduct, he is not a career offender, and he has no prior conviction for a sex offense.

14

**Total Offense Level**

xxvi.    Therefore, defendant's total offense level is 43.

c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 43, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of life imprisonment. The statutorily authorized maximum sentence is 50 years' imprisonment. Therefore, pursuant to Guideline § 5G1.1(a), the guidelines sentence is 50 years' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 15 years' imprisonment.

e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation

15

and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does

16

not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 2259, the Court must order restitution in the full amount of the losses of any victim of defendant's offense, as the terms "victim" and "loss" are defined in that section. The amount of restitution shall be determined by the Court at sentencing.

14.    Defendant also acknowledges that in addition to restitution due pursuant to Title 18, United States Code, Section 2259, he is liable for restitution pursuant to Title 18, United States Code, Section 3663A. Defendant also agrees to pay additional restitution arising from the stipulated offense conduct set forth above, pursuant to Title 18, United States Code, Section 3663(a)(5) and 3664.

15.    Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

16.    Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court. If the Court finds that the defendant is a non-indigent person, defendant further agrees to pay the $10,000 special assessment, assessed pursuant

17

to Title 18, United States Code, Section 3014, after he has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation ordered by the court and arising from the convictions.

17.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Forfeiture

19.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property involved in the offense.

20.     Defendant agrees to forfeiture of the following specific property to the United States: an HP laptop computer, model Pavilion DM4, bearing serial number CNU1311MPR; an HP laptop computer, model Compaq nc6400, bearing serial number CND70528HT; a Verizon Samsung Galaxy S7 cellular phone, bearing IMEI number 359764081485953; a Samsung EVO 16GB micro SD card, bearing serial number KPABT27PB629; and a DANE-ELEC 2GB USB drive, bearing serial number 4820-B6C1. In doing so, defendant admits that the property described above was

18

involved in the offense, as alleged in the indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

21.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

22.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### **Acknowledgments and Waivers Regarding Plea of Guilty**

#### **Nature of Agreement**

23.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 105.

24.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or

19

release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

25.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

20

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

21

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.    With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

26.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

27.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him,

and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

28.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

29.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of

23

defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

30. Defendant understands that pursuant to Title 18, United States Code, Sections 3583(d) and 4042(c), the Court must order as an explicit condition of supervised release that defendant register as a sex offender in compliance with the requirements of the Sex Offender Registration and Notification Act. Defendant also understands that he will be subject to federal and state sex offender registration requirements independent of supervised release, that those requirements may apply throughout his life, and that he may be subject to state and federal prosecution for failing to comply with applicable sex offender registration laws. Defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his duties to comply with current or future sex offender registration laws. Defendant nevertheless affirms that he wants to plead guilty regardless of any sex offender registration consequences that his guilty plea may entail.

31. Defendant agrees to participate in psychological counseling and sex offender treatment as directed by the Probation Office as a condition of any sentence of probation or supervised release imposed.

**Other Terms**

32. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including

24

providing financial statements and supporting records as requested by the United States Attorney's Office.

33.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

34.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of

25

limitations between the signing of this Agreement and the commencement of such prosecutions.

36.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

37.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE:  February 15, 2019


JOHN R. LAUSCH, JR.                          ADAM SPRENGER
United States Attorney                       Defendant


KELLY GREENING                               THOMAS BRANDSTRADER
Assistant U.S. Attorney                      ANDREW GABLE
                                             Attorneys for Defendant


26

<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
   UNITED STATES OF AMERICA,        )
 4                                   )
                        Plaintiff,  )
 5                                   )
                                     )
 6  -vs-                             )  Case No. 18 CR 105
                                     )
 7                                   )  Chicago, Illinois
   ADAM SPRENGER,                    )  February 15, 2019
 8                                   )  10:01 a.m.
                        Defendant.   )
 9

10                     TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JOHN J. THARP, JR.
11
     APPEARANCES:
12
     For the Plaintiff:     UNITED STATES ATTORNEY'S OFFICE
13                          BY:  MS. KELLY MATTEA GREENING
                            219 S. Dearborn Street
14                          Suite 500
                            Chicago, IL  60604
15
     For the Defendant:     THOMAS C. BRANDSTRADER, ATTORNEY AT LAW
16                          BY:  MR. THOMAS C. BRANDSTRADER
                            53 W. Jackson Boulevard
17                          Suite 618
                            Chicago, IL  60604
18
                            LAW OFFICE OF ANDREW GABLE
19                          BY:  MR. ANDREW S. GABLE
                            53 W. Jackson Boulevard
20                          Suite 863
                            Chicago, IL  60604
21

22  Court Reporter:         KELLY M. FITZGERALD, CSR, RMR, CRR
                            Official Court Reporter
23                          United States District Court
                            219 South Dearborn Street, Room 1420
24                          Chicago, Illinois  60604
                            Telephone:  (312) 818-6626
25                          kmftranscripts@gmail.com
</pre>

1       (Proceedings heard in open court:)

2               THE CLERK:  U.S.A. v. Sprenger, 18 CR 105.

3               MS. GREENING:  Good morning, Your Honor.  Kelly

4       Greening on behalf of the United States.

5               MR. BRANDSTRADER:  Good morning, Judge.  Thomas

6       Brandstrader, B-r-a-n-d-s-t-r-a-d-e-r, for Mr. Sprenger who is

7       to my left.

8               THE COURT:  Good morning.

9               Good morning, Mr. Sprenger.

10              THE DEFENDANT:  Good morning, Your Honor.

11              THE COURT:  All right.  We're here for a change of

12      plea hearing.

13              Ready to go forward?

14              MR. BRANDSTRADER:  Yes, Judge.

15              THE COURT:  Mr. Sprenger, we're going to go through a

16      process here this morning that is required in order for me to

17      make certain determinations that I must make in order to

18      accept a plea of guilty to any of the charges that you're

19      facing in this case.  In order to go through this process, I'm

20      going to have to ask you quite a few questions here this

21      morning.  It's important that you understand the questions and

22      you answer the questions truthfully and accurately because I

23      need your truthful and accurate answers in order to make the

24      determinations that I need to make as to whether I can accept

25      a plea of guilty.

1    You also need to answer these questions truthfully
2  and accurately because you're going to be put under oath, and
3  it can be a crime to answer or provide false information in
4  response to my questions.  So you don't want to do that.

5    And, third, it's important to understand that the
6  answers that you give me to these questions will be used
7  against you because this process, if I end up accepting your
8  plea of guilty, will result in my entry of an order finding
9  you guilty of the crime based on this hearing today.

10    So when I ask you these questions, if you need
11  clarification, you don't understand something, you need to
12  speak up, let your lawyer know.  If you want to just -- if you
13  understand the question but you think you need to talk to your
14  lawyer before responding, just let him know that, and I'll
15  give you the opportunity to do that.  All right?

16    THE DEFENDANT:  Yes, Your Honor.

17    THE COURT:  All right.

18    Ms. Rone, would you please swear in Mr. Sprenger.

19    (Defendant sworn.)

20    THE COURT:  All right.  Mr. Sprenger, what's your
21  full name?

22    THE DEFENDANT:  Adam Westin Sprenger.

23    THE COURT:  All right.  And how old are you, sir?

24    THE DEFENDANT:  37.

25    THE COURT:  And before you were taken into custody,

1    what city did you live in?

2              THE DEFENDANT:  Arlington Heights.

3              THE COURT:  Have you lived in the Chicago

4    metropolitan area for quite some time?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Are you married?

7              THE DEFENDANT:  No.

8              THE COURT:  Do you have children?

9              THE DEFENDANT:  No.

10             THE COURT:  What's the highest level of formal

11   education you have completed?

12             THE DEFENDANT:  Graduated high school.

13             THE COURT:  Okay.  And so I take it you're able to

14   read and write English?

15             THE DEFENDANT:  Yes.

16             THE COURT:  All right.  Before you were taken into

17   custody, were you employed?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Doing what kind of work?

20             THE DEFENDANT:  I was an Uber driver, and I was

21   working at a restaurant.

22             THE COURT:  Were you food preparation, server?

23             THE DEFENDANT:  Server.

24             THE COURT:  Do you feel like you're in good physical

25   health?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Are you presently taking any prescription

3    medications of any sort?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  What sort of medications?

6          THE DEFENDANT:  Gabapentin for nerves and Prozac.

7          THE COURT:  Okay.  And are those being prescribed by

8    a mental health professional?

9          THE DEFENDANT:  Yes.

10         THE COURT:  All right.  And you're periodically

11   consulting with that professional, I take it?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Okay.  Do the medicines that have been

14   prescribed for you interfere in any way with your ability to

15   think clearly?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Do they affect your judgment in any way?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  All right.  Do you feel that they prevent

20   you or that you should not make very important decisions while

21   you're taking that medication?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  In fact, do you find that medication is

24   actually beneficial to your ability to function normally?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Other than the mental health medications,

2    are you on any other prescription medications?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Other than the mental health medications,

5    have you had any other drugs or alcohol in the last 24 hours?

6          THE DEFENDANT:  No.

7          THE COURT:  Is there any reason that you don't feel

8    capable mentally or physically this morning from going forward

9    with this hearing?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  All right.

12         Mr. Brandstrader, do you have any reason to doubt

13   Mr. Sprenger's competence to enter a plea of guilty?

14         MR. BRANDSTRADER:  No objection.

15         THE COURT:  Ms. Greening?

16         MS. GREENING:  No, Your Honor.

17         THE COURT:  All right.  I do find that Mr. Sprenger

18   is competent to enter a plea of guilty based not only on the

19   substance of his responses to the Court's questions but also

20   his demeanor and attentiveness here in court.  It's clear to

21   the Court that he understands the questions and the nature of

22   the proceeding and is responding appropriately.

23         Mr. Sprenger, who is the attorney who has been

24   representing you in this case?

25         THE DEFENDANT:  Mr. Brandstrader.

1          THE COURT:  All right.  Have you had enough time to

2     talk to Mr. Brandstrader about this case generally?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Have you had enough time to talk with him

5     more specifically about what we're doing here this morning?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Pleading guilty to some of these charges?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Are you satisfied with the advice and

10    counsel that Mr. Brandstrader has given you in the course of

11    his representation?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Is there anything you think he should

14    have done for you as your attorney that he has not done for

15    you?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  All right.  I'm sure Mr. Brandstrader has

18    talked to you about what it means to plead guilty and the

19    rights that you will be giving up by pleading guilty, but we

20    need to make this a matter of record to be sure that you

21    understand that going through this process, if I accept your

22    guilty plea, you will have surrendered and waived very

23    important significant rights that you would otherwise have.

24    And everything I'm going to talk to you about starts with the

25    fundamental proposition that even though you're in custody

1    now, even though you're facing criminal charges, under the

2    law, you are presumed to be not guilty of those charges.  What

3    that means is you have no burden to prove that you are not

4    guilty.  The law presumes that you are not guilty, and it

5    places the burden of proof on the government.  Do you

6    understand that?

7             THE DEFENDANT:  Yes, Your Honor.

8             THE COURT:  So the government must prove that you are

9    guilty, and they must do that by presenting evidence that is

10   sufficient to prove you guilty beyond a reasonable doubt.

11   That's what the government's burden is.  Do you understand

12   that?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  Okay.  And the way that the -- that we

15   would go about assessing whether the government's evidence

16   would prove you guilty beyond a reasonable doubt is we would

17   have a trial, a jury trial in all likelihood.  You have an

18   absolute right to have a trial by jury.  Do you understand a

19   jury is just a group of citizens who have been called to

20   listen to the evidence and the instructions of law that apply

21   in a case and decide, make that decision of whether the

22   evidence proves you guilty of an offense beyond a reasonable

23   doubt?  That's what a jury is.  Do you understand that?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  Okay.  Now, if we had a trial, it would

1  be in a public courtroom, probably this one since this case is

2  assigned to me.  You have the right to counsel throughout the

3  trial, and that public trial, the government can't take you

4  and haul you off somewhere and try you in secret.  It would

5  take place in a public courtroom where friends, family, media,

6  anybody else who was interested in the case would have the

7  opportunity to observe the proceedings.  Do you understand

8  that?

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  Okay.  Now, during -- the trial would

11  begin with the selection of the jury, and you and your

12  attorney would play a very big role in determining who gets to

13  sit on that jury for several reasons.  We would call a group

14  of people in, probably 40 people, maybe more than that, in as

15  possible jurors, and we would question those folks and get

16  information from them in order to determine whether they could

17  be fair and impartial jurors in this particular case.  Your

18  lawyer would get to have a very big part in that because he

19  would submit questions to the Court that we would ask these

20  people to determine what kind of information we were going to

21  get from them.  In some cases he may even be able to question

22  jurors directly himself.

23           Based on the information that we get from those

24  jurors, if you and your attorney thought someone on the basis

25  of the information we have about them would not be a fair and

1   impartial juror, Mr. Brandstrader could make what are called

2   challenges for cause, which are just objections that say,

3   Judge, this person isn't going to be fair and impartial; they

4   should not be permitted to sit as a juror in this case.  And

5   if I agreed with those objections, I would strike that

6   individual, and they would not be permitted to be part of the

7   jury.  Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  The other thing to understand about

10  challenges for cause is there's no limit to the number of

11  challenges for cause that you and your attorney could make.

12  If we brought 40 people in and Mr. Brandstrader thought that

13  half of them weren't going to be fair and impartial, he could

14  make, you know, 20 challenges for cause.  He could make 40 if

15  he thought no one would be fair and impartial.  The odds are I

16  wouldn't agree with all of those challenges, but if I did, we

17  would have to bring more people in until we got a jury

18  consisting of 12 people who could be fair and impartial

19  jurors.  Do you understand that?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Okay.  Now, there's another kind of

22  challenge that you would be able to make in the course of jury

23  selection, and that's called a peremptory challenge.  And a

24  peremptory challenge is even more powerful than a challenge

25  for cause because you can exercise a peremptory challenge to

1   strike people from the jury pool for almost any reason at all.

2   The only reason you can't use a peremptory challenge to strike

3   someone is if you're doing so on an unconstitutional basis,

4   meaning you can't strike someone with a peremptory challenge

5   because of their race or their religion or their gender or

6   their national origin, for example.  There's probably several

7   other categories, but apart from those unconstitutional

8   reasons, you can use a peremptory challenge to strike someone

9   for any other reason at all.  You just think somebody has got

10  a bad attitude based on their demeanor or their responses,

11  they don't want to be here, they don't want to give up a week

12  or more of their life to sit on the jury in this case, or you

13  think there's something going on in their life, they're

14  distracted, their spouse is in the hospital or something and

15  they're not going to pay attention, you think they're too

16  dumb, you think they're too smart, too rich, too poor,

17  anything other than those unconstitutional reasons, you can

18  use a peremptory challenge to strike someone.  Do you

19  understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Okay.  Because they're so powerful, you

22  don't get -- unlike challenges for cause, you don't get an

23  unlimited number of peremptory challenges, but you would have

24  at least ten to exercise in picking the jury.  So if we had 40

25  people in here and you could strike ten of them for almost any

1   reason at all, that would wipe out 25 percent of the jury pool
2   right there, and I would have essentially nothing to say about
3   that.  Do you understand that?
4              THE DEFENDANT:  Yes, Your Honor.
5              THE COURT:  Okay.  So between peremptory challenges
6   and challenges for cause and participating in the questioning
7   of the jurors, that's why I say you and Mr. Brandstrader would
8   play a very big role in ultimately deciding who gets to sit on
9   the jury.  Do you understand that?
10             THE DEFENDANT:  Yes, Your Honor.
11             THE COURT:  Okay.  Once we pick the jury, then it
12  would be the government's -- that would be the point the
13  government has to present its evidence.  They would do that by
14  calling witnesses, by presenting tangible items of evidence if
15  there were documents.  This case may involve photographs,
16  videos, things like that.  The government has the right to
17  present that evidence.  What is important for you to
18  understand is your attorney has the right to challenge the
19  introduction of any of that evidence if there's some legal
20  basis to say the jury shouldn't be permitted to consider that
21  evidence.  And I would listen to those challenges, and I would
22  rule on those challenges.  Do you understand you have the
23  right to challenge the government's introduction of evidence?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  All right.  The other way you could

1    challenge the government's evidence is through

2    cross-examination of the witnesses that the government calls.

3    Any witness the government calls and questions during the

4    trial your attorney has the right to cross-examine.  It just

5    means to ask questions himself of those witnesses.  Do you

6    understand that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Now, once the government presented its

9    evidence, as the defendant in the case, you have the right,

10   but not the obligation, to present any evidence that you think

11   might help convince the jury that you're not guilty.  You

12   don't have to present evidence because as I told you at the

13   outset, you don't have a burden of proof.  The government has

14   the burden of proof.  But if you have evidence that you think

15   would help convince the jury that you're not guilty, you have

16   the right to present that evidence under the same rules and

17   procedures that the government presents its evidence.  Do you

18   understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Okay.  There's another kind of evidence

21   that you can -- you have the right to present if you wish, and

22   that's your own testimony.  During the trial, you would have

23   the right to testify in your own defense if you chose to do

24   so.  You would also have the right not to testify if that was

25   your decision.  Do you understand that?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  All right.  Now, a couple of things to

3    understand about that.

4    First, the decision about whether to testify or not

5    testify in the case is a decision that no one can make for

6    you.  That is your decision to make.  Mr. Brandstrader is an

7    experienced attorney, and he would give you the benefit of his

8    experience and his counsel about whether he thought it was

9    wise for you to testify in the case or not.  But at the end of

10   the day, if you disagree with him, it's your decision to make,

11   not his.  Do you understand that?

12   THE DEFENDANT:  Yes, Your Honor.

13   THE COURT:  All right.  Now, in making that decision,

14   if you decided at the -- that you wanted to testify, the jury

15   would be instructed that they should consider your testimony

16   just like the testimony of any other witness in the trial, and

17   you would be subject to cross-examination just like any other

18   witness at trial.  Do you understand that?

19   THE DEFENDANT:  Yes, Your Honor.

20   THE COURT:  Okay.  On the other hand, if you decided

21   not to testify, the jury would be instructed that they can't

22   hold that decision against you or use that decision against

23   you in any way, meaning they can't think to themselves or say

24   to each other you know what?  If Mr. Sprenger is not guilty of

25   these charges, he would have taken the witness stand, taken an

1  oath, and he would have told us he was not guilty.  They can't

2  do that.  Do you understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And they will be told they can't do that.

5  In fact, they will be told and instructed as a matter of law

6  they can't even discuss the fact that the defendant chose not

7  to testify if that was your decision.  Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Okay.  The other thing I want to make

10  sure you understand about the evidence in the case is both

11  sides, the government and the defense, have the right to issue

12  what are called trial subpoenas.  And those are just court

13  orders that if you thought, for example, that there was some

14  witness out there who could testify and would be of benefit to

15  your defense but they weren't willing to come in and testify

16  voluntarily, Mr. Brandstrader could issue a trial subpoena

17  which I would enforce that would require that individual to

18  come in and testify or require an individual to come in and

19  produce physical evidence that they might have in their

20  possession.  Do you understand you have the right to issue

21  trial subpoenas?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Okay.  Now, once all of the evidence in

24  the case had been presented, the lawyers would make their

25  closing arguments, and then it would be time for the jury to

1    deliberate, meaning they would be instructed on the law that

2    applies to the charges in the case.  They would go back to the

3    jury room, and they would consider the evidence that was

4    presented at trial and make the determination of whether that

5    evidence was sufficient to prove you guilty of any of the

6    charges beyond a reasonable doubt.  And the important thing to

7    understand about the jury and its deliberations is in order to

8    come back into the courtroom and say we have a verdict and we

9    find Mr. Sprenger guilty of any charge, the jury would have to

10   unanimously agree that the evidence was sufficient to prove

11   you guilty of that charge beyond a reasonable doubt.  So if

12   even one juror was not convinced beyond a reasonable doubt,

13   the jury could not bring a verdict back against you.  Do you

14   understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  There are no 7-5 or 11-1 verdicts in

17   criminal cases in federal court.  Do you understand that?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Now, let's say for the sake of discussion

20   that we had a jury trial and the jury came back with a verdict

21   of guilty on one or more of the charges that you're facing.

22   At that point, even at that point, your rights would not be

23   over because you have the right to appeal the jury's verdict.

24   You have the right to counsel to help you with that appeal,

25   which means that you have the right to make arguments to the

1    Court of Appeals that something improper happened during the

2    trial, that you didn't get a fair trial, or maybe that even

3    just that the evidence wasn't sufficient to prove you guilty

4    beyond a reasonable doubt.

5        You have the right to a lawyer to help you make those

6    arguments, and if the Court of Appeals agrees that you didn't

7    get a fair trial, they might order another trial to be held.

8    You go back to square one.  If there were certain mistakes or

9    errors made during the course of a trial, they might even

10   decide the indictment has to be dismissed; this man can't be

11   retried, and he must be acquitted.  That doesn't happen very

12   often, but that's possible relief that you can get on an

13   appeal.  Do you understand that?

14       THE DEFENDANT:  Yes, Your Honor.

15       THE COURT:  You understand when we conclude this

16   process this morning, if I accept your guilty plea, none of

17   that is going to happen.  You understand that?

18       THE DEFENDANT:  Yes, Your Honor.

19       THE COURT:  All right.  And because we're not going

20   to have a trial, there's not going to be any trial errors to

21   appeal from.  So in pleading guilty, you're limiting the scope

22   of any of appeal that you might be able to make at the

23   conclusion of this case.  Do you understand that?

24       THE DEFENDANT:  Yes, Your Honor.

25       THE COURT:  The only thing you would be able to

1    appeal from this case would be what we're doing now, the

2    process we're going through now, and whatever sentence might

3    get imposed ultimately in the case.  Do you understand that?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Okay.  Now, what I've just described to

6    you is a jury trial.  There's another kind of trial I have to

7    tell you about, and that's called a bench trial.  And a bench

8    trial operates with one major exception just like a jury

9    trial, and that exception is in a bench trial, we don't pick a

10   jury.  We don't have a group of 12 people listening to the

11   evidence and making the determination about the adequacy of

12   the evidence.  In a bench trial, the judge that presides over

13   the case does that.

14           You don't have a right to a bench trial; you have the

15   right to ask for a bench trial if that's how you wanted to

16   resolve the charges against you.  And if you asked for a bench

17   trial, the government -- the government has to agree to a

18   bench trial.  They could object.  The judge also has to agree.

19   But if all of those parties were in agreement, then there

20   could be a bench trial, and the charges could be resolved in

21   that manner.  Do you understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Okay.  All right.

24           Do we have the plea agreement?

25           MS. GREENING:  Yes, Your Honor.

1      THE COURT:  Could you give that to Mr. Brandstrader?

2      MS. GREENING:  Yes.

3      THE COURT:  Mr. Brandstrader, would you show

4  Mr. Sprenger the last page of that plea agreement.

5      All right.  Mr. Sprenger, is that your signature

6  above your typewritten name?

7      THE DEFENDANT:  Yes, Your Honor.

8      THE COURT:  All right.  Now, before you signed that

9  plea agreement, did you have an adequate opportunity to review

10  it?

11      THE DEFENDANT:  Yes, Your Honor.

12      THE COURT:  Did you have enough time to discuss it

13  with your lawyer?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  Have any questions about that plea

16  agreement answered by your attorney?

17      THE DEFENDANT:  Ask that --

18      THE COURT:  Did you have enough time to have any

19  questions you had answered?

20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  Do you have any lingering questions about

22  what's in that plea agreement or anything that it provides?

23      THE DEFENDANT:  No, Your Honor.

24      THE COURT:  All right.  Did you sign that plea

25  agreement voluntarily?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Did anyone force you to sign that plea

3  agreement?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  All right.  Now, you understand in that

6  plea agreement that you are making an agreement, really a

7  contract with the government, and part of your performance of

8  that contract is to plead guilty to Count One and -- or excuse

9  me --

10         MS. GREENING:  Counts One and Four, Your Honor.

11         THE COURT:  One and Four.

12         MS. GREENING:  And there's also a stipulated offense,

13  which is Count Two.

14         THE COURT:  Okay.

15         So you are agreeing to plead guilty to Count One and

16  Count Four of the indictment.  And you've admitted facts that

17  are the basis for the charge that is reflected in Count Two of

18  the indictment, but you're not technically pleading guilty to

19  that count.  Do you understand that?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  All right.  And do you understand that,

22  again, if we get to the end of this process and I accept your

23  plea of guilty and I find you guilty of the charge that you

24  could be sentenced to -- up to the maximum penalties that are

25  provided by law for convictions on the charge set forth in

1    Count One and the charge set forth in Count Four?  Do you

2    understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right.  I want to make sure you

5    understand what those maximum penalties are.

6              Count One, which charges a violation of 18 U.S.C. §

7    2251A, which says that you knowingly employed and used a minor

8    to engage in sexually explicit conduct for the purpose of

9    producing a visual depiction of such conduct, a conviction on

10   that crime carries a maximum sentence of 30 years of

11   imprisonment and a mandatory minimum sentence of 15 years of

12   imprisonment.  Do you understand that?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  In addition to a term of

15   imprisonment between 15 and 30 years, there's also a maximum

16   fine that can be imposed in addition to the term of

17   imprisonment of up to $250,000.  Do you understand that?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  In addition to the term of imprisonment

20   and a fine, there's also a term of what's called supervised

21   release that could be imposed after your term of imprisonment

22   concludes.  And that term of supervised release has to be at

23   least five years and could be for the rest of your life.  Do

24   you understand that?

25             THE DEFENDANT:  Yes, Your Honor.

1       THE COURT:  And on top of all of that, I have to

2   impose what's called a special assessment of $100 on each

3   count of conviction.  So on top of all of the other stuff on

4   Count One, there would be that special assessment.  Do you

5   understand that?

6       THE DEFENDANT:  Yes, Your Honor.

7       THE COURT:  Now, with respect to Count Four of the

8   indictment, which charges you with a violation of Title 18 of

9   the United States Code, Section 2252A(a)(5)(B), which the

10  essence of which is the knowing possession of material that

11  contained images of child pornography, including images that

12  involved prepubescent minors and minors who had not reached

13  the age of 12 years, the penalties that could be imposed for a

14  conviction under that count include a term of imprisonment of

15  up to 20 years, a maximum fine of up to $250,000, a period of

16  supervised release of at least five years and up to life, and,

17  again, a special assessment of $100.  Do you understand that?

18      THE DEFENDANT:  Yes, Your Honor.

19      THE COURT:  All right.

20      Ms. Greening, any questions about the maximum

21  penalties as I've recited them of which I'm relying on the

22  plea agreement?

23      MS. GREENING:  No, Your Honor.  Just paragraph 7,

24  subparagraph f outlines a statute that's specific to this

25  particular type of crime, which is Title 18, United States

1   Code, Section 3014 indicating that the defendant would be

2   assessed an additional $5,000 per count of conviction if the

3   Court determines at sentencing that he is a nonindigent

4   person.

5           THE COURT:  Okay.  So that would be part of the

6   maximum penalties as well, this fine of $5,000.  Is that just

7   on Count One?

8           MS. GREENING:  It's each count, Your Honor.

9           THE COURT:  Each count.  So there would be at least a

10  $10,000 fine that could be imposed if I conclude that you're

11  not indigent.  Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And also you should be aware, on top of

14  everything that I've just described to you, that it's

15  mandatory that restitution be awarded in this case in some

16  amount.  Do you understand that?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  All right.  Now, I gave you the maximum

19  penalties that could be imposed on each count of conviction.

20  I gave you those penalties separately.  But do you understand

21  that because you're pleading guilty to both counts, those

22  penalties can be aggregated and for the maximum penalty are

23  aggregated so that the maximum penalty that you can ultimately

24  face in this case is a sentence of up to 50 years'

25  imprisonment, a minimum sentence of 15 years, a maximum fine

1  of up to $500,000, a period of supervised release of at least

2  five years and special assessments totaling $200 in addition

3  to the restitution and the $10,000 fine that we just talked

4  about.  Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  Now, those are the maximum

7  penalties.  That doesn't mean those are the penalties that

8  will be imposed.  We don't know what -- the penalties that

9  will be imposed, what the sentence in this case will be at

10  this point because I don't have the information necessary to

11  make the judgment about the appropriate sentence at this

12  point.  Do you understand there's not going to be a sentence

13  imposed today?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Okay.  We have to go through a process to

16  get me the information that I need in order to determine the

17  appropriate sentence.  The way we do that is through the

18  preparation of what's called a presentence investigation

19  report.  That's a report that's compiled by the probation

20  office that gives me information about you, your background,

21  your education, your health, your financial situation, your

22  childhood, your employment history, any criminal history,

23  things like that.  It also gives me information about the

24  offenses that you've pled guilty to, and it also provides a

25  preliminary calculation of the advisory sentencing guideline

1   range that is applicable in this case.

2         Have you had a chance to talk with Mr. Brandstrader

3   generally about the sentencing guidelines and the role that

4   they play in sentencing?

5         THE DEFENDANT:  I have, Your Honor.

6         THE COURT:  A couple of things I want to make sure

7   that you understand about the guidelines.

8         The guidelines, I am required to calculate the

9   advisory sentence under the guidelines, and I am required to

10  make that calculation and to consider that calculation as a

11  factor in deciding the sentence to impose.  But I am not

12  required to impose the sentence that is suggested by the

13  guidelines.  Do you understand that?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  I may decide -- the guidelines, in other

16  words, are one factor among many factors that I'm required to

17  consider in assessing the appropriate sentence.  I might

18  decide the guideline range is just right.  I might decide, for

19  whatever reason, that it's too high.  I might also decide it's

20  too low.  And so at this point, you could -- you know, I have

21  the discretion to sentence you to anything up to those maximum

22  penalties that I've described.  Do you understand that?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  All right.  Now, we don't know what the

25  advisory sentencing guideline is going to be yet because I

1    need to get that presentence investigation report.  Your

2    lawyer and the government need the opportunity to review that

3    report and comment on it, and then I have to review it and

4    consider their comments and ultimately make the decision about

5    what the advisory guideline range is.  But as it stands right

6    now, the government and Mr. Brandstrader have some idea of

7    what they think the guideline range will be.  And so it's

8    important I think to consider and understand before you plead

9    guilty what that range may be because I am required to take

10   the range into account.

11        So, Ms. Greening, what is the government's

12   preliminary view as to what the guideline calculation in this

13   case will yield?

14        MS. GREENING:  Your Honor, the anticipated total

15   offense level is 43, which when combined with the anticipated

16   criminal history category of I results in a sentencing

17   guidelines range of life imprisonment.  But because the

18   statutorily authorized maximum sentence is 50 years under

19   guideline 5G1.1(a), the guideline sentence would be 50 years'

20   imprisonment.

21        THE COURT:  All right.

22        And, Mr. Brandstrader, are there issues that would

23   affect the guideline calculation that you believe at this

24   point will be in dispute?

25        MR. BRANDSTRADER:  Yes, Judge, there will be one or

1  two enhancements.  Obviously we have to wait to see how the

2  probation department looks at it before we file anything.  But

3  I understand the preliminary calculations, Judge, and I'm not

4  going to lodge an objection today, but we're not in total

5  agreement with them.

6           THE COURT:  Okay.

7           So, Mr. Sprenger, there may be some disputes about

8  the calculation of the guideline range.  Those won't get

9  resolved ultimately until the sentencing hearing in this case

10 that takes place a number of months down the road.  But at

11 this point, the government thinks the sentence is going to

12 be -- the guideline range sentence is going to be 50 years in

13 prison.  Do you understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  If that's the guideline range that I

16 determine, I have to take that into account, but, again,

17 that's only advisory.  It's not binding on the Court.  Do you

18 understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  Now, the sentence that is

21 imposed in this case is obviously the most significant

22 consequence to being convicted of these charges.  It's not the

23 only consequence, however, and I want to make sure that you

24 understand that.

25          Under the law, the law places various restrictions on

1    people who have been convicted of felonies apart from, you

2    know, whatever sentence is imposed in their case.  Common

3    examples are folks who have been convicted of felony offenses

4    lose their right to possess a firearm, may not be able to

5    vote, can't sit on a federal jury.  Those are common examples.

6    There are many, many restrictions like that that are imposed

7    by the federal government, by state governments, by city

8    governments.  There's way too many restrictions like that for

9    me to tell you about all of them.  But if you have concerns

10   about those kinds of restrictions, another one that you should

11   be cognizant of and be aware of is there are -- particularly

12   for folks who have been convicted of crimes of a sexual nature

13   that there are many restrictions that are placed on the civil

14   liberties of people who have those kinds of convictions even

15   after they've served any sentence that was imposed in the

16   case.  If you have any concerns about those kinds of

17   consequences, those need to be addressed and thought about and

18   considered before you enter a plea of guilty because once

19   you've entered a plea of guilty and I find you guilty and we

20   get to sentencing or after sentencing or sometime down the

21   road and you say, I didn't realize that I wasn't going to be

22   able to do this, or I was going to have to do this as a result

23   of these convictions, had I known that, I wouldn't have pled

24   guilty.  It's going to be too late to go back and undo that

25   plea.  You understand that?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  So if you have any questions along that

3  front, you need to research them and discuss them with your

4  attorney before pleading guilty.  Do you understand that?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  Okay.

7      We have no immigration consequences?

8      MR. BRANDSTRADER:  No, Judge.

9      THE COURT:  All right.

10      Now, one of the determinations I have to make, as I

11  mentioned at the outset, Mr. Sprenger, is I have to make -- in

12  order to accept your plea of guilty, I have to make a

13  determination that you are, in fact, guilty of the crimes that

14  you wish to plead guilty to.  You can't just plead guilty to a

15  crime in order to get a better deal.  In order to plead guilty

16  and have your plea accepted, I have to make a determination

17  that you are, in fact, guilty of those crimes.

18      Mr. Brandstrader, would you show Mr. Sprenger -- it

19  starts on page 2?

20      MS. GREENING:  Yes.

21      THE COURT:  On page 2 of the plea agreement, you see

22  the heading there that says about halfway down the page

23  "factual basis," Mr. Sprenger?

24      THE DEFENDANT:  Yes, Your Honor.

25      THE COURT:  All right.  And that factual basis

1   continues for several pages, all the way through about halfway

2   down the page on page 8.  Are you with me?

3           MR. BRANDSTRADER:  Yes, Judge.

4           THE COURT:  Okay.  Now, do you understand, again, in

5   this plea agreement that you've entered into with the

6   government that that factual basis is essentially a written

7   confession of why you're guilty of the charge in Count One,

8   why you're guilty of the charge in Count Four, and also

9   confesses to committing other conduct that will be considered

10  at sentencing in this case?  Do you understand that's the

11  nature of what that factual basis is?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  All right.  And understanding that's

14  essentially a written confession to conduct that will support

15  the convictions in this case, are you completely satisfied

16  that everything that is set forth in that factual stipulation

17  in the plea agreement is completely 100 percent accurate?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Before you signed the plea agreement, did

20  you have the opportunity to go through that factual basis very

21  carefully?

22          THE DEFENDANT:  I did, Your Honor.

23          THE COURT:  And did you go through it very carefully?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Along the way, before final izing the

1   plea agreement, did you have the opportunity to make changes

2   to that factual basis to correct anything that you thought was

3   not perfectly accurate?

4          THE DEFENDANT:  I didn't need to.

5          THE COURT:  All right.  But you had that opportunity?

6          THE DEFENDANT:  I did, yes.

7          THE COURT:  And you found from the get-go that it was

8   completely accurate?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  All right.  So you have no quibbles at

11   all with the factual statements that are made in that factual

12   basis?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  All right.

15          Ms. Greening, I'm going to ask the government to

16   summarize, and that being the operative word in view of both

17   the length and specific nature of the statements that are

18   conceded and made by the defendant in the factual basis, I

19   would ask the government to provide a brief summary of what

20   its evidence at trial would consist of and show if this case

21   were to go to trial.

22          Mr. Sprenger, I want you to listen carefully to

23   Ms. Greening because when she's finished, I'm going to ask you

24   if anything she's told me you disagree with.

25          THE DEFENDANT:  Okay.

1          THE COURT:  Ms. Greening.

2          MS. GREENING:  With respect to Count One, the

3  government's evidence at trial would show that on or about

4  March 21, 2015, Mr. Sprenger traveled from Illinois to a hotel

5  in Wisconsin with individual A and her four minor children who

6  included victim A.  Victim A was 14 years old at the time.

7          The evidence would show that in that hotel room in

8  Wisconsin, on or about March 22nd of 2015, Mr. Sprenger used a

9  Samsung Galaxy cellular phone to take at least seven sexually

10 explicit photographs of victim A while she was sleeping.  The

11 photographs included sexually explicit conduct.

12         THE COURT:  And just to be clear, the sexually

13 explicit conduct was not of victim A but was of Mr. Sprenger,

14 correct?

15         MS. GREENING:  That's correct, Your Honor.

16         Mr. Sprenger, individual A, victim A and the other

17 minor children stayed at that hotel until the next day,

18 March 23rd of 2015, at which time they returned to Illinois.

19 He brought -- Mr. Sprenger brought with him back to Illinois

20 that Samsung Galaxy cellular phone that contained the sexually

21 explicit images.  He then stored those images to a USB drive

22 which he kept in his residence in Illinois.

23         Turning to Count Four, the evidence at trial would

24 show that Mr. Sprenger possessed approximately 64 images of

25 child pornography on a USB drive which was manufactured

1    outside of the United States; 66 images and 387 videos of

2    child pornography on a micro SD card which was manufactured

3    also outside of the United States, in the Philippines; 64

4    images of child pornography on an HP laptop computer which was

5    manufactured in China; and a second HP laptop computer.  The

6    images and videos of child pornography that Mr. Sprenger

7    possessed on these devices included images and videos of

8    children who were as young as toddlers and included

9    sadomasochistic conduct.  Each of these items were found in

10   Mr. Sprenger's home.

11        Turning to the facts that support Count Two, the

12   evidence at trial would show that on or about April 7th of

13   2017, Mr. Sprenger took four videos of victim B while victim B

14   was sleeping in the state of Illinois.  Victim B was 13 years

15   old at the time.  The videos included sexually explicit

16   conduct.  Mr. Sprenger then stored those four videos onto a

17   micro SB card which was manufactured in the Philippines.

18        On or about November 14th of 2017, Mr. Sprenger

19   communicated with an individual who, unbeknownst to

20   Mr. Sprenger, was an undercover law enforcement officer over

21   an application called Kik Messenger.  During that

22   communication, Mr. Sprenger and the UC, or the undercover law

23   enforcement officer, had a discussion about sexually explicit

24   conduct that Mr. Sprenger had engaged in, and Mr. Sprenger

25   then sent to the UC a video over Kik Messenger, specifically

1   video 4, which is the subject of Count Two.

2              THE COURT:  All right.

3              Mr. Sprenger, anything that Ms. Greening has told me

4   that you take issue with?

5              THE DEFENDANT:  No, sir.

6              THE COURT:  All right.

7              On the basis of Mr. Sprenger's responses to my

8   questions, the very detailed factual stipulation that is

9   included in the plea agreement and the government's proffer of

10  what its evidence at trial would show, I do find there is a

11  factual basis to support pleas of guilty to Count One and

12  Count Four of the indictment in this case.

13             All right.  The last thing we have to cover,

14  Mr. Sprenger, is I've asked you some of these questions in

15  relation to the plea agreement itself, but now I'm asking more

16  generally with respect to your decision to plead guilty.

17             Do you feel that anyone has forced you in any way to

18  plead guilty to any of these charges?

19             THE DEFENDANT:  No, Your Honor.

20             THE COURT:  All right.  Has anyone threatened you in

21  any way to -- threatened you or anyone you care about in any

22  way in order to coerce you in some fashion into pleading

23  guilty?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Has anyone promised you anything -- well,

1    let me back up.

2           As I've already said, this plea agreement is a

3    contract between you and the government.  And it has

4    agreements the government has made; it has agreements that you

5    have made.  Putting any promises or agreements that are

6    included in the plea agreement to one side, has anyone

7    promised you anything else in order to induce you to plead

8    guilty to any of these charges?

9           THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Has anyone promised you what your

11   sentence will be in this case?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  All right.  And you understand for the

14   reasons we've already talked about no one could possibly make

15   that promise to you because I'm going to be sentencing you,

16   and I don't have any idea what your sentence will be at this

17   point.  Do you understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  You understand that the final

20   decision as to what your sentence will be rests with me, and

21   that I may sentence you to a longer period or a shorter period

22   than you may expect?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  Are you entering these pleas

25   voluntarily?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Are you entering them because you have

3   decided that it's the best course and the appropriate course

4   for you to take?

5        THE DEFENDANT:  Yes, Your Honor.

6        THE COURT:  All right.  The next question then I'm

7   going to ask you, Mr. Sprenger, is how you wish to plead to

8   Count One of the indictment and how you wish to plead to

9   Count Four of the indictment.  If you tell me that you to wish

10  to plead guilty to one or both of those charges, I'm going to

11  accept that plea of guilty, and I'm going to find you guilty

12  of those charges, and that's the point of no return.  You will

13  have crossed the Rubicon.  It's too late to turn back at that

14  point.  Do you understand that?

15       THE DEFENDANT:  Yes, Your Honor.

16       THE COURT:  All right.

17       Then, Mr. Sprenger, how do you wish to plead to

18  Count One of the indictment in this case?

19       THE DEFENDANT:  Guilty, Your Honor.

20       THE COURT:  And how do you wish to plead to

21  Count Four of the indictment in this case?

22       THE DEFENDANT:  Guilty, Your Honor.

23       THE COURT:  All right.

24       Since you acknowledge that you are, in fact, guilty

25  as charged in Count One and Count Four of the indictment in

1    this case, you've had the assistance of counsel, you've been

2    advised of your trial rights, we've talked about the maximum

3    possible punishment and the sentencing process that has to

4    take place, and you've acknowledged that you are freely and

5    voluntarily pleading guilty, I will accept your pleas of

6    guilty and enter a finding of guilty on your plea as to

7    Count One and Count Four of the indictment in this case.

8         All right.  So you have now been found guilty of

9    those charges, Mr. Sprenger.  As I said, the next step in the

10   process is the preparation of that presentence investigation

11   report.  Mr. Brandstrader will continue to represent you and

12   advise you in connection with that process and at sentencing.

13   It's important for you to cooperate with that process going

14   forward.

15        Mr. Brandstrader, you need to contact probation

16   promptly to advise them of the entry of the guilty plea.

17        Ms. Greening, I'll ask that the government's version

18   of the offense be submitted to probation within 14 days.

19        Any defendant's version that the defendant wishes to

20   present should be presented within -- submitted to probation

21   within seven days after the government's version.

22        We will set sentencing for about four months down the

23   road.

24        THE CLERK:  June 18th.

25        THE COURT:  Is that date convenient?

1          THE CLERK:  2:00 p.m.

2          MS. GREENING:  Your Honor, I apologize.  I'm going to

3    be on trial that week.  Is there any way to move it to the

4    week before or after?

5          THE COURT:  The week after, Alberta.  Am I here?

6          THE CLERK:  I'm thinking that you're not.  Hold on.

7          MR. BRANDSTRADER:  Before I start, Judge, my son is

8    getting married in Colorado the next week.  I don't think I'm

9    going to be available.  Sorry.

10          THE COURT:  All right.  You're out, Mr. Brandstrader,

11    the week of the 24th?

12          MR. BRANDSTRADER:  Yes, Judge.

13          THE COURT:  And, Ms. Greening, you're out the week of

14    the 17th?

15          MS. GREENING:  Yes, Your Honor.

16          THE COURT:  All right.  Then let's go -- then we run

17    into the 4th of July.  Is it going to interfere with anyone's

18    travel -- let's just do -- why don't we go to, say, July 10th,

19    2:00 p.m.  Does that work?

20          MS. GREENING:  Yes, Your Honor.

21          MR. BRANDSTRADER:  Yes, Your Honor.

22          THE COURT:  Sentencing set for July 10th at 2:00 p.m.

23    Sentencing memoranda are due 14 days before that date.  Any

24    response or objection to the other side's submission are due

25    seven days prior to that date.  The sentencing order that

1   comes out today will direct the probation office to provide

2   counsel with the -- with probation's sentencing recommendation

3   at the same time probation provides that recommendation to the

4   Court.

5           Please read the order that comes out today carefully

6   because it prescribes what content is required to be included

7   in the sentencing memoranda and provides other significant

8   information to counsel.

9           Anything else we need to address?

10          MS. GREENING:  For the record, Your Honor, would you

11  like me to pass up the signed copy?

12          THE COURT:  Yeah.  If you would hand that to my

13  courtroom deputy, we'll get that on the docket.

14          THE CLERK:  Thank you.

15          THE COURT:  All right.  Anything else?

16          MR. BRANDSTRADER:  Judge, if I might, and I don't

17  know if this is even an issue, my client is at Kankakee.  He

18  is going to -- runs the AA therapy.  He has a therapist there

19  that he's got a very good relationship.  He's asking if the

20  Court can, that he remain there until the sentencing date.  He

21  has been told that guys get moved up to the MCC.  It's

22  happened once or twice in my experience.  But he is concerned

23  about leaving his therapist and the group that he runs in the

24  jail.

25          THE COURT:  In the first instance, talk with the

1    marshals about that.  You know, usually the requests are

2    running the other way, of people wanting to get to the MCC

3    from other places.  So I doubt there should be any problem

4    with leaving him -- is he at Kane County?

5         MR. BRANDSTRADER:  Kankakee.

6         THE COURT:  Kankakee.  So I doubt that there's going

7    to be a problem.  But if at some point the marshals think they

8    need to move him, you can come in on a motion, and we can talk

9    about it.

10        MR. BRANDSTRADER:  Thank you, Judge.

11        THE COURT:  But, again, usually things are moving the

12   other direction, or the problem is the other direction, so I

13   don't anticipate a problem there.

14        MR. BRANDSTRADER:  Agreed.  Thank you.

15        THE COURT:  Anything else?

16        MR. BRANDSTRADER:  Nothing, Judge.

17        THE COURT:  All right.  Thank you.

18        MS. GREENING:  Thank you.

19    (Which were all the proceedings heard.)

20                       CERTIFICATE

21    I certify that the foregoing is a correct transcript from

22   the record of proceedings in the above-entitled matter.

23   */s/Kelly M. Fitzgerald*                *January 14, 2020*

24   _____        _____
     Kelly M. Fitzgerald                      Date
25   Official Court Reporter

<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
   UNITED STATES OF AMERICA,          )
 4                                     )
                         Plaintiff,    )
 5                                     )
                                       )
 6   -vs-                              ) Case No. 18 CR 105
                                       )
 7                                     ) Chicago, Illinois
   ADAM SPRENGER,                      ) August 29, 2019
 8                                     ) 2:00 p.m.
                         Defendant.    )
 9

10                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JOHN J. THARP, JR.
11
     APPEARANCES:
12
     For the Plaintiff:    UNITED STATES ATTORNEY'S OFFICE
13                         BY:  MS. KELLY MATTEA GREENING
                           219 S. Dearborn Street
14                         Suite 500
                           Chicago, IL  60604
15
     For the Defendant:    THOMAS C. BRANDSTRADER, ATTORNEY AT LAW
16                         BY:  MR. THOMAS C. BRANDSTRADER
                           53 W. Jackson Boulevard
17                         Suite 618
                           Chicago, IL  60604
18
                           LAW OFFICE OF ANDREW GABLE
19                         BY:  MR. ANDREW S. GABLE
                           53 W. Jackson Boulevard
20                         Suite 863
                           Chicago, IL  60604
21

22   Court Reporter:       KELLY M. FITZGERALD, CSR, RMR, CRR
                           Official Court Reporter
23                         United States District Court
                           219 South Dearborn Street, Room 1420
24                         Chicago, Illinois  60604
                           Telephone:  (312) 818-6626
25                         kmftranscripts@gmail.com
</pre>

1    (Proceedings heard in open court:)

2        THE CLERK:  U.S.A. v. Adam Sprenger, 18 CR 105.

3        MS. GREENING:  Good afternoon, Your Honor.  Kelly

4    Greening on behalf of the United States.

5        MR. BRANDSTRADER:  Good afternoon, Judge Tharp.

6    Thomas Brandstrader and Andrew Gable, G-a-b-l-e, for

7    Mr. Sprenger.

8        THE COURT:  Good afternoon.

9        Good afternoon, Mr. Sprenger.

10        THE DEFENDANT:  Good morning.

11        PROBATION OFFICER:  Good afternoon, Judge.  Michael

12    Alper, U.S. Probation.

13        THE COURT:  Good afternoon.

14        Are we prepared to proceed with sentencing?

15        MR. BRANDSTRADER:  Yes, Your Honor.

16        MS. GREENING:  Yes, Judge.

17        THE COURT:  Ms. Rone, would you please swear in

18    Mr. Sprenger.

19        THE CLERK:  Yes.

20     (Defendant sworn.)

21        THE COURT:  All right.  The first thing I want to do

22    is make sure I've seen everything that's been submitted.

23        I, of course, reviewed the plea agreement, the

24    presentence investigation report along with a supplemental and

25    second supplemental report, the probation office's sentencing

1   recommendation, the government's version of the offense and

2   supplemental version of the offense, the government's

3   sentencing memorandum, a separate submission that included

4   video clips and several photographs that were submitted by the

5   government that are referenced in the materials but not

6   previously included.  I just received those yesterday

7   afternoon.

8           And I have received, of course, and reviewed the

9   defendant's sentencing memorandum which includes, along with

10  various argument, a psychosexual risk evaluation and

11  approximately a dozen mitigation letters submitted by

12  Mr. Sprenger's family and friends.

13          Is there anything else I'm missing?

14          MS. GREENING:  I believe this might be included in

15  the categories you just listed, Your Honor, but the two victim

16  impact letters from the parents of both Victim C and F and the

17  parents of Victim E.

18          THE COURT:  Yes, I think those are included in the

19  supplemental material provided by probation.

20          MS. GREENING:  Okay.

21          THE COURT:  Anything else?

22          MR. BRANDSTRADER:  I think you named everything,

23  Judge.

24          THE COURT:  Okay.

25          Is either party anticipating presenting any witness

1   testimony?

2           MS. GREENING:  No witnesses, Your Honor.  I do have

3   one victim who would like to testify to the Court today.

4           THE COURT:  Okay.

5           MS. GREENING:  Make a statement, rather.

6           THE COURT:  All right.  We'll address that in just a

7   moment.

8           I want to start with the PSR.  There were I think

9   several issues the defense counsel had with certain paragraphs

10  in the PSR.  With respect to all of them, it wasn't entirely

11  clear to me what -- whether you were seeking some correction

12  to the PSR or just to clarify things for my edification.

13          MR. BRANDSTRADER:  It was more of a clarification,

14  Judge.

15          THE COURT:  Okay.  All right.  So are there any

16  statements of fact included in the PSR that you're objecting

17  to?

18          MR. BRANDSTRADER:  No, Judge.

19          THE COURT:  Okay.  Then we'll move to the question of

20  the calculation of the advisory sentencing guideline range

21  that applies in this case which is the point that the

22  Supreme Court has said all district courts should begin

23  sentencing proceedings by correctly calculating the applicable

24  guideline range.

25          Having reviewed the submissions, it's my

1   understanding, while the defense believes various aspects of

2   the guideline calculation are weighted too heavily or impact

3   the guideline range disproportionately or in a compounded

4   fashion, you're not challenging the accuracy of the

5   calculation itself?

6           MR. BRANDSTRADER:  We are not, Your Honor.

7           THE COURT:  All right.

8           And the government does not challenge the calculation

9   either?

10          MS. GREENING:  That's correct.

11          THE COURT:  All right.  I ordered the preparation of

12  a presentence investigation report to assist the Court in

13  sentencing the defendant.  The presentence investigation

14  report reflect a preliminary guideline calculation with a

15  total offense level of 43 and a criminal history category of

16  I.

17          I'll just note this much for clarity of the record.

18  The 43 is the maximum offense level that can be utilized under

19  the guideline.  If you actually do the math, the guideline

20  calculation comes out to 45, but pursuant to comment 2 of

21  Section 5.8, 43 is the maximum offense level.

22          So the PSR reflects a total offense level of 43 and a

23  criminal history category of I.  I concur with those

24  calculations as set forth in the PSR.  They're quite

25  complicated, so I'm not going to go through them and reiterate

1  them on the record, but I accept the presentation, and there's

2  been no objection to the presentation set forth in the PSR.

3        The combination of offense level of 43 and a criminal

4  history score of I yields an advisory sentencing guideline

5  range of 50 years of imprisonment, a supervised release range

6  of at least five years, up to life, a fine range of 50,000 up

7  to $250,000 along with required restitution.

8        Is there anything else we need to cover or discuss

9  with respect to the guideline calculation itself?

10       MS. GREENING:  No, Your Honor.

11       MR. BRANDSTRADER:  No, Judge.

12       THE COURT:  All right.  Then we'll proceed to

13  consider all of the other factors in addition to the advisory

14  guideline range that the Court is required to take into

15  account in determining the appropriate sentence to impose.

16       I'll hear first from the government, then from the

17  defense.

18       And, Mr. Sprenger, once your counsel has had the

19  opportunity to make his comments on your behalf, as the

20  defendant in the case, you have the right to address the Court

21  directly if you wish to do so.  You're not required to do so,

22  but you will have that opportunity.  If you choose not to

23  address the Court, that will not be held against you in any

24  way.

25       All right.  Ms. Greening, why don't we hear first

1    from the victim, and then we'll have your comments and

2    arguments.

3          MS. GREENING:  Thank you, Your Honor.

4          So I would like to call up Individual A.  If it

5    pleases the Court, I would like to continue to refer to her

6    that way to protect her children's identities.

7          MR. BRANDSTRADER:  May I sit down, Judge?

8          THE COURT:  Yes, you may.

9          MR. BRANDSTRADER:  We have no objection to that,

10   Your Honor.

11         MS. GREENING:  She's the parent of Victims A and B.

12         THE COURT:  Yes, ma'am.

13         Good afternoon, ma'am.

14         THE WITNESS:  Good afternoon, Your Honor.  I will try

15   to get through this as easily and quickly as possible.

16         THE COURT:  Let me ask you just to pull that down a

17   little.  Thank you.

18         THE WITNESS:  Is that better?

19         THE COURT:  That's better.

20         THE WITNESS:  Okay.

21         On Valentine's Day 2018, my entire world was forever

22   changed.  My views on life, definition of love and ability to

23   trust was taken from me and my family.  I'm a mother of four

24   and of Victims A and B.  They are my daughters.  It is not

25   important for me to share how I am feeling now.  It's more

1    important for you all to hear how I felt then.  In my first

2    entry, I state just a few of the many emotions that were going

3    through me and my children's minds at that time and have

4    continued to evolve, and I'm going to just read that entry

5    real quick to you guys.

6         March 22, 2018.  In so many ways I am not ready to do

7    this, to write and feel, but in so many more, I know I must

8    face this.  If I'm ever to heal and move forward, I am at a

9    crossroads, almost paralyzed by what has happened these past

10   five weeks: abandoned, betrayed, hurt, shocked, angry, lost,

11   numb, unable to fully comprehend the awful truth which keep

12   expanding further and further into my life and those around

13   me, the ones that I love and couldn't protect, lost,

14   heartbreak, isolation, anxiety, fear, the unknown of what he

15   did and what will be the pain for myself and my children and

16   everyone allowed to be affected by him; pain, unable to sleep,

17   hatred mixed with missing what I thought was love and hating

18   myself for letting him in my life to begin with.  This person

19   preyed on my family, making calculated moves, gaining my trust

20   and using love to manipulate me for his own dark and

21   unimaginable needs.  He used my children and exploited them,

22   and it did not stop there.  Other family members of mine were

23   targeted, my children's friends, my neighbor's daughters and

24   on and on and on.

25        Since that Valentine's Day I have had to leave my job

1   as an ICU nurse and go on short-term disability due to a new

2   diagnosis of PTSD related to these events.  I have an

3   inability to function and at times to even leave the house.

4        My children and I have spent the last 18 months in

5   weekly therapy, sometimes twice a week, costing over $20,000

6   for those visits and continuing to grow as therapy is going to

7   be something we are needing for most likely the rest of our

8   lives.  So many questions that I may know answers to they do

9   not yet.  One of my daughters is now over 18.  She has the

10  ability to go look at any of this information and access it

11  for the rest of her life, and I can't protect her from that.

12  And I know that my other daughter who is now 15 will also have

13  that right.  So as difficult as it was to hear, I chose to

14  hear the details so that I could someday address that with

15  them and also the therapist.  For now, whether right or wrong,

16  I find some comfort in knowing that they don't know the

17  details because once you learn them, you cannot unhear them,

18  and you can never forget.

19       Sorry.

20       THE COURT:  Take your time.

21       THE WITNESS:  My kids have been struggling.  They

22  started struggling in school when they prior had not.  There

23  were some days we just could not get out of the house.  It was

24  too difficult for us to face the world or other people,

25  causing them to miss many days of school and then get them

1   further behind.  And while scars never truly go away, today

2   does mark the beginning of a healing process.

3        I would like to close with a quote from a song, as

4   music has always been a means of being healing and expressing

5   emotions.  Okay.

6        All your life is such a shame, shame, shame.  Are you

7   happy where you're sleeping?  Casting shadows on the winter

8   sky as you stood there counting crows, one for sorrow, two for

9   joy, three for girls, and four for boys, five for silver, six

10  for gold, seven for a secret that was never told until now.

11  All your life is such a shame.  Open up your eyes, you can see

12  the flames of your wasted life.  You should be ashamed, and

13  I'm not going to waste my life.

14       Thank you.

15       THE COURT:  Thank you very much, ma'am.

16       MS. GREENING:  Your Honor, the defendant in this case

17  is a predator whose conduct has harmed the youngest and most

18  vulnerable members of our community.  He produced images and

19  videos depicting himself masturbating on and around and

20  molesting children in his own home and in others.  He

21  distributed these videos to other men like him over the

22  Internet, ensuring that they will live on and on to continue

23  to humiliate and cause pain to these victims.  And he

24  possessed over 1300 other images on various devices that

25  depict child pornography, including the anal, vaginal and oral

1    rape of children as young as toddlers.  These are real

2    children whose real trauma and suffering continues even once

3    the assault is over at the hands of men like the defendant who

4    trade in this kind of material for fun.

5         Based on this conduct, Your Honor, the government is

6    asking for a sentence of 50 years' imprisonment, which is the

7    guideline range.  It's a significant sentence, but it's

8    warranted and necessary in light of the 3553(a) factors.

9         First turning to the nature and circumstances of the

10   defendant's offense.  The horrifying nature of the defendant's

11   conduct weighs heavily in favor of this guideline sentence.

12   The defendant exploited these young girls who trusted them --

13   him in their own homes as they slept.  He molested,

14   masturbated on and around these girls.  He turned their safest

15   place into a nightmare.

16        And as you just heard the effects of some -- on some

17   of these victims is not even yet realized because their

18   parents haven't shared with them what fully went on.  But the

19   mother of one victim wrote a powerful statement detailing how

20   her daughter and their family has suffered the defendant 's

21   actions.  Victim D is Individual A's niece.  She's an 8 year

22   old who was left in the care of the defendant for an

23   afternoon.  The defendant videoed himself masturbating openly

24   in front of this victim while she was fully awake.

25        Victim D's mother detailed how her daughter's grades

1    and test scores have dropped.  Her participation in sports

2    have dropped.  She's afraid of being alone.  She's changed the

3    way she dressed.  She's embarrassed to be a girl.  She's

4    developed social anxiety.  She's cried to her parents that

5    her, quote, brain keeps telling me to be sad.  She's in

6    biweekly therapy to address these issues.

7         Her parents too are suffering greatly.  Her mother

8    describes being torn apart, having heightened anxiety and pain

9    watching her child suffer.  She said that Victim D's, quote,

10   first sexual experience was decided for her by Adam against

11   her will, and when she didn't possess the purview of what sex

12   should be, Adam took that experience from her.  The

13   defendant's crimes against her child and others revealed to

14   her, that, quote, the person I trusted to protect my child was

15   the one victimizing her.  This is a recurring theme in this

16   case for the defendant.

17        Similarly, Victim C and Victim F's father wrote a

18   powerful statement to this Court stating that people like the

19   defendant are, quote, every parent's worst nightmare, and his

20   actions will affect them for the rest of their lives.

21        Your Honor, there's significant evidence to

22   substantiate that the defendant actually drugged at least one

23   of his victims, 13-year-old Victim B, before making his video.

24   As discussed in filings and shown in government's version

25   Exhibit A, the defendant sent another man pictures of himself

1   mixing a white powder substance into a cup with liquid and

2   then mixing it into the liquid.  He told the man he was

3   slipping some sleepy stuff into Victim B.  Later he said, What

4   the hell?  She's still wide awake.

5        The video he took of Victim B included him molesting

6   her as she slept.  He fondled her vagina and her buttocks on

7   camera, and Victim D did not move.

8        THE COURT:  Ms. Greening, let me interrupt you right

9   there.  I want to be clear as to the government's position

10  with respect to this question of whether the defendant did

11  drug, supply some sort of drug that put the victims to sleep.

12  Is that the government's position?

13        MS. GREENING:  It's the government's position that

14  the evidence supports that inference, yes, Your Honor.

15        THE COURT:  All right.

16        MS. GREENING:  Now, the defendant states that while

17  disturbing, the defendant's conduct, quote, did not involve

18  touching under the clothing or any other acts more typically

19  associated with contact offenses.

20        But let's be clear.  This was a sexual assault.  The

21  defendant assaulted Victim B and videotaped it.  The fact that

22  he did not assault her to the furthest extent possible is not

23  a mitigating factor.

24        On top of these videos that he produced, the

25  defendant also possessed over 1300 images and videos depicting

1    child pornography, a very limited portion of which was

2    supplied to this Court ahead of sentencing.  He collected

3    these images and videos of children being sexually abused in

4    the cruellest and most sickening ways possible, and he did it

5    for his own pleasure.  And, again, the powerful victim impact

6    statements from the identified children were depicted in these

7    images and videos.  They were ages 4 through 12 at the time of

8    their abuse, describe the pain that they experience every time

9    they learn a new person had been looking at their most

10    tortured moments for fun.  They describe living in fear that

11    someone on the street will recognize them.  The message must

12    be sent to all of these victims, those the defendant knew and

13    those that he didn't, that they matter, that society values

14    protecting them.

15         Now, turning to the defendant's history and

16    characteristics, the government does recognize in mitigation

17    that the defendant has strong family support.  He also

18    reported to probation the history of abuse himself though the

19    defendant describes a cycle of abuse, victim to predator, and

20    that factor can weigh both ways because the cycle needs to be

21    stopped.

22         Moreover, an overall review of the defendant's

23    history and characteristics weighs heavily in favor of a

24    50-year sentence in this case.  The record before the Court

25    depicts a defendant who preys on young girls and was obsessed

1   with doing so.  He exclusively dated women with young

2   daughters.  In Exhibit C to the government's version, he

3   describes two prior long-term relationships with women who had

4   young girls.  And that wasn't an accident.  Just before

5   sending a video of himself ejaculating on Victim B to an

6   undercover officer, the defendant said, quote, I only date

7   women with beautiful girls, or if they're ultra petite.

8           In another Kik chat, he referenced "sniffing" one of

9   his ex-girlfriend's daughters when she was 8 years old.  He

10  targeted these girls.  He targeted their mothers.  He lived

11  with them and exploited them in their own homes where they're

12  supposed to feel the safest.

13          Now, the government's sentencing memorandum also lays

14  out extensive evidence of the defendant's fantasies, which

15  included rape and having sex with the corpses of teen girls.

16  But it's all not just fantasy.  The defendant took very real

17  actions to live some of his fantasies out.  He installed

18  hidden cameras in the bathroom to watch Victim A naked.  He

19  masturbated all over Victim A's belongings, including her

20  cheerleading outfit and her retainer.  He invited strange men

21  over to do the same.  He took many, many what he called creep

22  shots of Victim A and other children's groins and buttocks,

23  and he sent those creep shots to many, many men over

24  Kik Messenger.

25          Turning to Victim C, Sean McCarthy's 14-year-old

1  stepdaughter.  He followed her in person.  He harassed her

2  over text message even after she blocked him.  He harassed her

3  again using a different number.  And he took substantial steps

4  to date Individual C, the mother of Minor G, whom he discussed

5  at length wanting to drug and rape, both of them.  He

6  continued even after Individual C told him to stop, called

7  security when he would come and told him that he was creeping

8  her out.  None of this is an anomaly for the defendant.  This

9  was his lifestyle.

10         Now, I would like to spend a moment talking about

11 Dr. Brenzinger's report, the evaluation that the defense has

12 submitted.  And this is both under his history and

13 characteristics and a discussion of specific deterrence in

14 this case.

15         The defense relies heavily on this report which

16 concludes that he is a low-to-moderate risk potential of

17 sexually victimizing others.  But this evaluation relies at

18 least in part on the defendant's statements, some of which

19 were demonstratively false.

20         Lie No. 1, the defendant stated repeatedly and

21 vehemently he denied ever having made physical contact with

22 the victims.  That's on page 9 of the report.  Now, the

23 government provided several disks of videos in preparation for

24 this sentencing, including Exhibit Disk 1 which contains the

25 four videos described in the stipulated offense of the plea

1   involving Victim B.  And on that disk, the defendant visibly

2   fondles Victim B's vagina and buttocks.  There is clear

3   physical contact.  He lied to the evaluator about never having

4   contact with a child.  The evaluator credited that lie.  Now,

5   six months later, the defendant had to admit to sexual contact

6   with Victim B in the plea agreement.  It's on page 6.  But the

7   evaluation and its results are tainted by the defendant's

8   lies.

9           Lie No. 2, the defendant told the evaluator that he

10  never used a phone or the Internet to solicit a minor for sex.

11  That's on page 11 of the report.  Government's version

12  Exhibit G is a Kik chat between the defendant and Sean

13  McCarthy.  The defendant screenshots his attempts to

14  communicate with McCarthy's stepdaughter, Victim C, via text

15  message.  He relays that he asked Victim C, quote, if she

16  wants to make a quick 60 bucks.  She blocked his number.

17          It's clear from the context of the defendant and

18  McCarthy's conversation and many other conversations that they

19  had about Victim C, including rape fantasies and the video

20  that the defendant made of himself masturbating on Victim C,

21  that this is in a sexual context.  He was soliciting Victim C

22  for sex using a phone.  He lied to the evaluator about that

23  conduct as well.  When the defendant provides false

24  information to the evaluator who is creating the report, the

25  result of that evaluation is tainted.

1      I also want to highlight here in this report as well

2  as in other contexts the defendant's serious minimization of

3  his conduct.  Pages 6 through 7 of the report, he claimed no

4  one was hurt by what happened.  He slipped one time.  He made

5  a mistake.  He doesn't know how the sexual things happened,

6  and he felt victimized by the charges against him in this

7  case.

8      On the concept that no one was hurt, I would point

9  the Court to Individual A's oral statement, the other victim

10 impact statements of the few parents who gathered the strength

11 to write them.  To read the statements of the children and the

12 hundreds and hundreds of images and videos that were in the

13 defendant's possessions, they're describing their rape and

14 their pain.  And if what he's referring to is the fact that

15 the children he masturbated on and molested were often asleep,

16 he's missing the point.

17     The idea that he slipped one time, again, Your Honor,

18 the record proves that is not the case.  This is the

19 defendant's lifestyle.  This is who he is.  And the idea that

20 he felt victimized by the charges, the only victims are the

21 innocent children whose videos and images of sexual

22 exploitation he created, he distributed, and he possessed.

23     Also in this report and elsewhere in his sentencing

24 submissions, the defendant put a lot of blame on alcohol.

25 This was addressed in the government's sentencing filing, so I

1   won't go much further here except to say alcohol cannot be

2   blamed for this lifestyle of abuse and exploitation that the

3   defendant lived.  This wasn't "I got intoxicated one or two

4   times and made a mistake."  It's clear from the extensive

5   record before the Court this was who the defendant was.

6           Now, a few other points I would like to address from

7   the defendant's sentencing memorandum.

8           First, that there's no evidence he did this before.

9   Now, as already discussed in the sentencing filings and

10  earlier in my presentation, there is an evidence of history of

11  this kind of behavior, including, quote, sniffing an 8 year

12  old and his discussion with the undercover officer about only

13  dating women with beautiful girls.

14          The defendant also stated that he fully accepted

15  responsibility for his actions the moment he was interviewed

16  by the FBI, but he did not.  The government's version,

17  Exhibit C, is the full report of the defendant's initial

18  interview.  He admitted to creep shots of Victim A, a

19  preference for teen girls and having a spy cam app on his

20  phone.  He denied having any hidden cameras in the house,

21  using Kik Messenger at all, which was how he sent and received

22  his videos and images of child pornography, and having any

23  images or albums of Victim B.  The defendant minimized then as

24  he has continued to do.

25          Now, the defense argues that the guidelines as

1    appropriately calculated overstate the seriousness of the

2    offense and that many of the enhancements he's received are

3    applicable to all offenders, but they're not.  Taking just one

4    example, the stipulated offense involving the production of

5    the videos of Victim B, not one of the enhancements that the

6    defendant received would apply to all production cases.  In

7    fact, several of them didn't even apply to Count One, which is

8    the other production count that he pled guilty to.  He

9    received enhancements for the offense involving a minor under

10   16, sexual contact during the video, which he did not receive

11   for Count One; distribution of the video, which he did not

12   receive for Count One; and for Victim B being in his care,

13   custody or supervisory control.  All of this, which is

14   individual to the defendant and his conduct, already gets him

15   to the offense level of 40.  Add grouping, acceptance and the

16   4B1.5 enhancement, and we're back at life, or 50 years.

17            Same with the possession guidelines, which is more of

18   the defendant's focus.  Of course not all images and videos

19   depicting child pornography include sadomasochistic conduct or

20   children under the age of 12.  And the 600 images or more

21   enhancement is appropriate and very much link to the

22   guidelines' need to reflect the seriousness of the offense,

23   for the sentence to promote just punishment.  600, or in this

24   case over 1300, images and videos; it's not just a number.

25   There are real children on the other side of those lenses,

1    kids that were raped on camera and whose assault was

2    distributed to and from men like the defendant.  Each photo is

3    traumatic.  Each video matters.  The guidelines contemplate

4    all kinds of production and offenses, and here the guidelines

5    are an appropriate calculation.  It is a high range, but it's

6    based on his conduct.

7          Now, on the argument that the application of both

8    2G2.2(b)(5) and 4B1.5(b)(1) constitute double counting, of

9    course the defendant doesn't appear to dispute the case law

10   stating clearly that it's not.  The Court in *Dowell*, which is

11   the Fourth Circuit case cited in the government's sentencing

12   memorandum, explained why these two could apply, because the

13   enhancements have two separate goals: one, to punish the

14   offense-specific conduct; and the other, to protect the

15   public.

16         But even if the defendant hadn't pled to the

17   possession count, and therefore 2G2.2 wouldn't have even

18   applied, and instead only pled to Count One and stipulated to

19   the Victim B videos, his guidelines would remain the same.

20   The stipulated offense alone had a total offense level of 40

21   plus at least one point for grouping, then plus five for

22   4B1.5, minus three for acceptance, it would still have the

23   defendant at his range of 50 years.

24         The defendant also argues that many courts have given

25   below-guideline sentences to offenders convicted of child

1   pornography offenses, and his filing lists I believe five

2   specific examples of that.  Not a single one of those cases

3   involve production.  They were all possession cases.  Here

4   it's possession and production.  These are two important

5   separate offenses to keep in mind.

6           Your Honor, I won't belabor what's been laid out

7   extensively in the government's filings and the government's

8   version of the offense.  These are real victims.  They were

9   affected.  They continue to be affected, some of whom knew and

10  trusted this person and others of whom will never meet him.

11          For all these reasons, the government requests a

12  within guideline sentence of 50 years' imprisonment.

13          THE COURT:  All right.  Thank you, Ms. Greening.

14          Mr. Brandstrader.

15          MR. BRANDSTRADER:  Thank you, Judge.

16          Your Honor, on behalf of Mr. Sprenger, if I could

17  address the evaluation as characterized by government.

18          The evaluation, as I understand it, was not based

19  solely on an interview with Mr. Sprenger.  The doctor had the

20  affidavit for complaint for search warrant which was

21  extensive, laid out the crimes that they believe to have been

22  committed.  They also had the indictment.  And if the Court

23  reads the evaluation, it does not scream, I'm trying to hide

24  something here, I'm trying to minimize something here.  My

25  client freely interacted with the doctor to discuss the

1  problems that have manifested himself in his life in the last

2  few years.

3          The Court is in a very difficult position, to

4  determine who Mr. Sprenger is.  Is he the dangerous pedophile

5  that the government makes him out to be, or is he the

6  individual reflected in the 12 letters submitted to this

7  Court, each one knowing exactly what Mr. Sprenger was standing

8  here for but at the same time lauding his generosity, his

9  ability to help others and expressing and exhibiting strong

10  family support?

11          Heartbreaking is the father's letter that they knew

12  nothing about the childhood abuse suffered by Mr. Sprenger.

13  True in his life he had suffered with depression.  He was

14  medicated early, I think in fifth grade, for anxiety, for

15  depressed moods.  He admitted to the doctor that he once

16  attempted to take his life.

17          There were problems.  There were underlying urges

18  that manifested themselves in the years after 2015.  He was in

19  his thirties.  And it is only now that, as the evaluation

20  points out, he is susceptible to treatment to address these

21  urges, these behaviors.  He stands before you almost 40 years

22  old with no relevant criminal history.  The letters show the

23  support that he receives from his family, also showing the

24  heartbreak that his behavior has caused that family which he

25  freely acknowledges.  He was cooperative.  We believe he was

1   cooperative upon arrest.  He accepted responsibility.  He pled

2   guilty.  He precluded the necessity of having a public trial.

3   He has been in custody since the day of his arrest.  He -- and

4   I failed to enter these into my memo, but he has received

5   certain documents about life changes, courses that he took in

6   Kankakee.  He was also a monitor on the tier that he had

7   worked so hard to behave and to follow the rules, that they

8   made him a monitor of the tier.  He attended AA while in

9   custody, ran meetings himself, understands that alcoholism,

10   use of alcohol cannot be used as any type of a defense, but it

11   certainly adds to a factor that the Court should consider when

12   determining who Adam Sprenger is.

13        I believe what the evaluation also shows and I

14   believe now that we know what the history of what Mr. Sprenger

15   is that this abhorrent behavior has been a slow evolution of

16   reckless conduct fueled by alcohol, fueled by drugs and fueled

17   by walking in the dark as he has the last few years and doing

18   these outrageous things to people who loved him.

19        Throwing his life away with a 50-year sentence makes

20   no sense.  It's not what the sentencing scheme calls for.

21   Yes, he must pay a penalty for his behavior, but at the same

22   time, we can't throw the human being away.  He has never had

23   the treatment that he so greatly deserves.  We will be

24   requesting placement in the appropriate facility upon the

25   disposition of sentence.  We ask this Court to invoke its

1    great powers of mercy and leniency to understand the victim as

2    a whole.  Candidly, the criminal justice is really not the

3    place to address these types of problems and these behavioral

4    issues, but when it includes so many victims, it's the only

5    place sometimes that these issues can be addressed.

6         We believe, and we say it respectfully, that the

7    mandatory minimum involved in this case of 15 years is more

8    than enough, more than sufficient to meet the guidelines set

9    out and that this Court must follow.

10        The evaluation indicates that he's a low-to-moderate

11   risk that's susceptible to treatment for the many issues that

12   he addresses.  We hope that where he goes he'll get it, but we

13   ask this Court not to throw away his life.  He has a potential

14   for rehabilitation once these issues are addressed.  Obviously

15   he'll probably be under some kind of guidance for the rest of

16   his life.  That also should be taken into consideration when

17   rendering sentence.

18        And, again, respectfully, Judge, we ask the Court to

19   find that the 15-year minimum sentence is appropriate and

20   sufficient and meets all the needs as set out by the

21   guidelines and the statutes.

22        Thank you.

23        THE COURT:  Thank you, Mr. Brandstrader.

24        Mr. Sprenger, this is your opportunity to address the

25   Court if you wish to do so.

1    THE DEFENDANT:  Your Honor, first I would like to

2    apologize to the Court and everyone involved in the

3    investigation for having to view the disgusting and obscene

4    material found in my possession.  No one should ever be

5    exposed to this material no matter what their profession.

6        Also, I need to apologize to my friends and family

7    for letting them down with my embarrassing and damaging

8    conduct.  This was not how I was raised nor was the type of

9    behavior expected of me.

10       Secondly, I need to apologize to all the victims in

11   the images and videos that I possessed.  In my own

12   selfishness, I did not realize that I was, in fact, continuing

13   their abuse.  As a victim of sexual abuse myself, I cannot

14   begin to imagine how it could possibly feel to have a record

15   of it available for everyone to see.  For my part in their

16   continued victimization, I am truly sorry.

17       Most importantly, I apologize to the families and to

18   the people I used for my humiliating and disturbing behavior.

19   My alcoholism, coupled with my undiagnosed disorders, resulted

20   in unforgiveable and malevolent conduct.  These people opened

21   their hearts and homes to me, and in return, I took their

22   trust and completely destroyed it.  I will forever be sorry

23   for ruining such a precious and invaluable gift, and I hope

24   that my abuse does not impede their happiness going forward.

25   My commitment has been and will remain to be focused on my own

1   rehabilitation so that no one in my life will ever have to go

2   through a nightmare like this again.

3          Thank you, Your Honor.

4          THE COURT:  Thank you, Mr. Sprenger.

5          Under Title 18 of the United States Code,

6   Section 3553(a), the Court is required to impose a sentence

7   that is sufficient but not greater than necessary to serve the

8   purposes that are set forth in that statute.  Those purposes

9   include the need for the sentence imposed to reflect the

10  seriousness of the offense, to promote respect for the law and

11  to provide just punishment for the offense, to afford adequate

12  deterrence to criminal conduct, to protect the public from

13  further crimes of the defendant and to provide the defendant

14  with needed educational or vocational training, medical care

15  or other correctional treatment in the most effective manner.

16  These four objectives align with the four generally recognized

17  objectives of criminal sentencing: retribution, deterrence,

18  incapacitation, and rehabilitation.  And federal courts are

19  required to fashion sentences that will, to the greatest

20  extent possible, achieve these purposes to the extent they are

21  applicable in a given case.

22         To do that, the Court is required to consider the

23  nature and circumstances of the offense and the history and

24  characteristics of the defendant.  The Court must also

25  consider other factors, such as the kinds of sentences

1  available and the advisory sentencing guideline range, as well

2  as the policy statements that inform the application of the

3  sentencing guidelines.  The Court is required to consider the

4  need to avoid unwarranted sentencing disparities among

5  defendants who have been convicted of similar crimes and have

6  similar backgrounds.

7       Many of the considerations and facts that bear on

8  these issues overlap in that they are relevant to more than

9  one objective.  Sometimes facts point in different directions

10  in terms of what they suggest that the appropriate sentence in

11  the case must be.  It is the Court's task to balance all of

12  these considerations in fashioning the sentence that best

13  promotes the sentencing objectives as they are relevant in

14  this case.

15       I'm going to discuss the factors that I consider most

16  material to the question of the appropriate sentence to impose

17  in this case.  And starting with the nature and circumstances

18  of the crimes committed by Mr. Sprenger, we have to, of

19  course, start with the seriousness of the offense.  One of the

20  two counts of conviction in this case involves the production

21  of child pornography.  The other offense of conviction, the

22  downloading and possession and distribution of child

23  pornography, that obviously, it really goes without saying, is

24  one of the most serious crimes that we recognize as a society.

25  It violates, these crimes violate any accepted norm of

1   civilized behavior and victimize the people in our society who

2   are the most vulnerable, those who cannot look out for

3   themselves.  I speak obviously of children, and this crime

4   victimized children.

5         Any form of child pornography is, therefore, a

6   serious offense, but as the government cataloged very

7   effectively, this is a case where there are innumerable

8   aggravating factors that make this not just a case of garden

9   variety child pornography, God forbid that we ever describe

10  child pornography in that manner, but there are many

11  aggravating factors here that enhance the seriousness of this

12  offense.  And of course in that regard, it's hard to imagine

13  anything more aggravating than the betrayal of trust that is

14  evident in the commission of these crimes.  The victimization

15  of members of Mr. Sprenger's own household, the people who he

16  professed to love and care for more than any other people in

17  this world, and yet those are the victims of this crime.

18        He betrayed the trust, of course, of young children

19  who believed in him, trusted him, who were supposed to be

20  learning from him for whom he should have been a mentor.

21        He also betrayed -- as Individual A said very

22  eloquently in her comments to the Court today, he also

23  betrayed her and all those who were close to their family.

24  "Gained my trust.  He manipulated my love."  There could be no

25  quarrel with that assessment.

1        And of course it gets worse because we have the

2    victimization not only of two of the children living in his

3    own household and his partner, but he didn't stop there.  He

4    victimized directly through his personal conduct in their

5    presence at least four other minors who were also known -- two

6    of whom at least were also members of his family, not his

7    household, but his family.

8        But there's more.  In addition to the victimization,

9    the direct personal victimization of these children,

10   Mr. Sprenger perpetuated the victimization of hundreds of

11   additional minors, about 1300 additional minors who had been

12   victimized by sexual abuse in the past in the attendant

13   creation of videos and pictures of that abuse.  And it is hard

14   to overstate the disturbing nature of those videos which --

15   unfortunately some of which I have had to review in order to

16   fully assess this conduct.  And as the victims universally

17   reflect, it's hard to undo or set aside those kinds of images.

18       There's more, because this isn't just a crime that

19   involves the creation of child pornography; this is a crime

20   that involves sexual abuse.  I think the government is

21   absolutely right about that.  It involves unwanted, uninvited,

22   unlawful physical contact between Mr. Sprenger and at least

23   one of the six children he victimized directly that we know

24   of.

25       It's also incredibly disturbing, when one views some

1    of this material, to come to the understanding of how brazen

2    this conduct was, how close this conduct came to being

3    discovered and adverted to by the victims.  And it is either

4    in some cases incredibly fortunate that the victim didn't turn

5    around at the wrong moment or didn't wake up at the wrong

6    moment, which brings me to yet another aggravating factor.

7    And it's hard to rank these aggravating factors, but this

8    certainly would be near the top of the list.

9          The government submits, and I conclude, that the

10   evidence does support a finding that the defendant

11   administered on at least some occasions some sort of drug to

12   the children he was victimizing.  That conclusion is based,

13   first and foremost, on the defendant's own admissions and

14   statements repeatedly saying that he did so.  As the

15   government's submission points out, it is also -- that claim

16   does not appear to be mere bravado, some kind of twisted

17   bravado.  It appears to be consistent with reality because it

18   was consistent with his ability to fondle these children while

19   they slept.

20         I will note also that despite the -- there is no

21   countervailing evidence.  There is no protest on the tape

22   recordings, the video recordings, the text messages from those

23   he was communicating with that suggested that that wasn't

24   happening.  And I'm unaware in any of the statements the

25   defendant has made that he has ever denied the allegation.  I

1  left out the fact that there's also video evidence that when

2  this discussion is going on, the defendant was mixing up a

3  crushed white powder into some sort of liquid drink.  So the

4  visual evidence, the repeated statements and the consistency

5  with the ability to actually carry out some of this criminal

6  conduct all suggests to me by a preponderance of the evidence

7  that Mr. Sprenger did exactly what he said he did in drugging

8  or administering sleepy time substances at least on occasion.

9       I could go on.  We could talk about the hidden

10 cameras in the bathroom.  We could talk about the invitations

11 to other men.  Not content to commit these crimes by himself,

12 the defendant invited other men to participate with him.  We

13 could talk about the behavior of targeting young girls.

14 Beyond the "I only date women who have beautiful girls"

15 comments, we see a direct case of this in the stalking and

16 pursuit of Victim C by Mr. Sprenger.  So this is a highly

17 aggravated case of both production and possession of child

18 pornography.

19       Factors that mitigate the seriousness of these

20 offenses?  I suppose we, the victims can count their blessings

21 that Mr. Sprenger didn't go further, but I don't find that as

22 a mitigating factor in the seriousness of the offense.  It

23 doesn't reduce the seriousness of the offense.  The offense is

24 incredibly serious, even as carried out by Mr. Sprenger.

25       I have to consider Mr. Sprenger's history and

1    characteristics, and I do consider -- and this is where there

2    are factors that are appropriately considered in terms of

3    mitigation.

4         Mr. Sprenger has no significant criminal history, and

5    that does count in his favor, though given the indicia that

6    this kind of conduct took place over an extended period of

7    time, as evidenced by factors such as the size of the

8    collection of pornography, his comments about conduct from

9    several years past, the length of time over which just the

10   conduct that's outlined in the plea agreement takes place,

11   it's clear that this was not a momentary -- these crimes were

12   not the product of momentary lapses of good judgment or

13   episodic bouts of drunkenness or other substance abuse.

14        It's clear that Mr. Sprenger does have some

15   significant and substantial mental health issues, and I have

16   no difficulty concluding that those mental health issues

17   undoubtedly are part of the story here in terms of why

18   Mr. Sprenger has engaged in this abhorrent conduct.

19        The fact that Mr. Sprenger is a victim himself is

20   part of that equation, and I think it's -- I think I'm on

21   fairly solid ground in recognizing that there's likely a

22   greater incidence of this kind of criminal activity by those

23   who have themselves been abused.  But I don't find that to

24   be -- to excuse the conduct certainly, and it points out in

25   some respects, you know, the flip side of that equation is

1    while it might help us explain some of Mr. Sprenger's conduct,

2    it also is at this point part of who Mr. Sprenger is.  And

3    part of what the Court is required to consider, as I've

4    already noted, is the protection of the public.  And for

5    whatever reasons, Mr. Sprenger developed, through a

6    combination of his choices, his genetics, his experiences, he

7    developed into the individual that we see depicted in this

8    case.  And that's the Adam Sprenger that we have to address

9    here in court today, and that is an Adam Sprenger who presents

10   a very real and significant risk to the safety of children and

11   the public in general.

12         The psychosexual assessment that the defense

13   submitted I agree generally doesn't read like an apology for

14   Mr. Sprenger's conduct, and clearly he was forthcoming in

15   large measure about his conduct.  But I also agree with the

16   government that the picture that is described and on which a

17   low-to-moderate threat assessment is based is not a complete

18   picture.  And as presented in the report, it is -- it does not

19   begin to reflect the heinous nature of the conduct that

20   Mr. Sprenger engaged in.  And most particularly, it does

21   not -- while at some points, it -- at least one point it

22   expressly acknowledges that there was some contact, it

23   nevertheless assesses Mr. Sprenger based on an apparent belief

24   that this is not a sexual -- this crime and his conduct does

25   not involve sexual assault.  And as I've already indicated, I

1    disagree with that conclusion.  Mr. Sprenger's conduct

2    reflects that he represents a very real danger.

3          I also take note of the fact, and consistent with the

4    lack of criminal history, while this is a part of who

5    Mr. Sprenger is, it's certainly not the entirety of who

6    Mr. Sprenger is.  And we can see that, and that is very

7    effectively communicated by the letters his family and friends

8    have provided for him.  This is not an individual who

9    possesses no redeeming qualities.  Apart from this criminal

10   conduct, he has lived a life that has been largely law

11   abiding.  He has enjoyed stable family relationships.  He has

12   shown himself and been recognized to be capable of maintaining

13   loving relationships.  And as we've noted, he's also shown

14   himself capable of manipulating those relationships.

15         He's been able to support himself, live productively

16   in society, but yet has never maintained long-term, stable

17   employment; by "long-term," I mean spanning many years.  He's

18   certainly not moved from job to job every few months, but

19   there are a very large number of jobs which, to his credit,

20   he's able to secure.  But the number of job changes and the

21   lack of stability in his employment and career development

22   also I think reflects some of the issues and problems that

23   Mr. Sprenger struggled with.

24         We have to take into account Mr. Sprenger's age,

25   though here that is not nearly as significant a factor as it

1  might be in some other cases because Mr. Sprenger is not and

2  will not be at an age where physiology is likely to mitigate

3  the risk that he poses for recidivating for this kind of

4  criminal activity.

5      Again contributing to, you know, this mixed bag of

6  who Adam Sprenger is is his postarrest conduct, and there are

7  a number of noteworthy aspects to that, as Mr. Brandstrader

8  points out.

9      It does appear from his involvement in AA and his

10  work as a trustee at the jail that Mr. Sprenger is, at least

11  for the present, highly motivated.  And as his own comments

12  reflect -- and I credit his present intention to do everything

13  in his power to rehabilitate himself so that he will not

14  present these kind of threats in the future.  But the fact of

15  the matter is today he presents that threat, and the Court has

16  to take that into account because the Court is required to

17  impose a sentence that will protect the public, that will

18  reflect the seriousness of the offense and will promote

19  respect for the law, as well as speak to Mr. Sprenger in terms

20  of deterring him from ever repeating this kind of conduct.

21  And the sentence must also speak to others.

22      There are two kinds of deterrence.  There's specific

23  deterrence, which is what I just spoke of, sending a message

24  to Mr. Sprenger.  But there's another kind of deterrence that

25  is particularly important in a case like this, where we're

1   talking about the protection of the most vulnerable members of

2   our society, and that's the message to those who may be

3   struggling with the same kind of demons that Mr. Sprenger has

4   struggled with.  They need to hear the message loud and clear

5   that we will protect those vulnerable members of society.

6   They need to understand -- you know, Mr. Sprenger's comments I

7   think are revealing that he said, you know, he didn't fully

8   understand and appreciate what he was doing and how he was

9   victimizing people when he was doing this, and I believe that.

10  And that's why we have to do everything in our power to make

11  sure that others get the message.

12          You know, we live in a society where the rule of law

13  is what educates our citizenry about the conduct that is

14  tolerated and the kind of conduct that is not tolerated.  And

15  the sentence imposed in this case has to send a very strong

16  message that this kind of conduct is intolerable, that it

17  ranks among the most abhorrent kinds of conduct and that it

18  will be treated as such.

19          As I indicated, I'm required to consider unwarranted

20  sentencing disparities and to try to avoid unwarranted

21  sentencing disparities.  In that regard I note that the

22  sentencing guidelines are the best tool available to try to

23  reduce sentencing disparities; and as explained by the

24  Supreme Court, district courts must treat the guidelines as

25  the starting point and the initial benchmark in considering

1    whether a proposed sentence satisfies the requirements of

2    Section 3553(a).

3        I'm required to take into account the kinds of

4    sentences available.  In this regard I note that Count One is

5    a Class B felony, which carries a maximum sentence of 30 years

6    and a minimum sentence of 15 years; Count Four, the second

7    count of conviction, is a Class C felony, which carries a

8    maximum sentence of 20 years.  So the maximum sentence that

9    could be imposed in this case is 50 years, which is the

10   guideline sentence.

11       It also bears noting that while the Court is required

12   to consider the need for vocational training, medical

13   treatment and things that will address issues and prepare

14   defendants for the ability to function productively and

15   lawfully in society, Section 3582 of Title 18 bars

16   consideration of the need to promote correction and

17   rehabilitation in connection with the imposition of a term of

18   imprisonment.

19       The Court also needs to consider restitution as it

20   bears on the sentence.  And in that regard, the government has

21   submitted a proposed restitution list of victims drawn by

22   victims that include the Victims A through F that are

23   identified specifically and personally in this case, along

24   with a number of other victims whose identities are known that

25   appear in the child pornography possessed by the defendant.

1   And the government has proposed a restitution order for those

2   identified victims that totals $86,000.

3        Mr. Brandstrader, what is the defendant's position

4   with respect to the government's restitution amount and

5   itemization?

6        MR. BRANDSTRADER:  Judge, we're going to object for

7   the record.  Let me leave it at that.  We'll object to the

8   restitution order for the record.

9        THE COURT:  All right.

10        And finally, with respect to this category of what

11   kinds of sentences are available, I also note that in the plea

12   agreement in this case, Mr. Sprenger agreed to the entry of a

13   preliminary order of forfeiture that requires the forfeiture

14   of various items of electronic equipment, computers that are

15   involved in the commission of this offense.

16        All right.  Mr. Brandstrader, are there any other

17   factors in mitigation that you neglected to discuss that you

18   would like to raise at this juncture or that you think that I

19   have neglected to discuss adequately in my comments?

20        MR. BRANDSTRADER:  No, Your Honor.

21        THE COURT:  All right.

22        Anything else, Ms. Greening, from the government?

23        MS. GREENING:  No, Your Honor.

24        THE COURT:  All right.

25        I'm going to take about ten minutes.  We'll adjourn

1  for about ten minutes.  And we'll come back out, and I should

2  be prepared to impose the sentence at that time.

3     (Recess.)

4        THE COURT:  All right.  We'll resume.

5        The Court is prepared to impose the sentence in this

6  case.

7        On February 15th of 2019, defendant Adam Sprenger

8  entered a plea of guilty to a charge of production of child

9  pornography in violation of 18 U.S.C. 2252A(a)(5)(B) and a

10  charge of possession of child pornography in violation of

11  Title 18 -- or excuse me.  I'm sorry.  The production charge

12  was in violation of Section 2251A of Title 18, and the

13  possession charge is in violation of Section 2252A(a)(5)(B).

14        I have considered all of the arguments presented to

15  me by government's counsel, by defense counsel.  I've

16  considered Mr. Sprenger's remarks here today.  I've considered

17  the remarks of Individual A in court here today.  I've

18  considered the victim impact statements that have been

19  submitted by other victims of these crimes.  I have also

20  considered the letters of support that have been submitted on

21  behalf of Mr. Sprenger.  I have considered the advisory

22  federal sentencing guidelines and the policy statements that

23  inform their consideration.  I have taken into consideration

24  all of the factors that are set forth in Section 3553(a), and

25  I have considered the totality of the circumstances in this

1    case in fashioning the sentence for the defendant.

2            As noted, the guideline range in this case is 50

3    years of imprisonment, and the government has recommended the

4    imposition of that guideline sentence.  The defense has

5    recommended that the lowest possible sentence of 15 years be

6    imposed.  Neither of those sentences I believe is the

7    appropriate sentence to impose in this case.

8            I'm going to impose a term of imprisonment of 30

9    years to be followed by a term of supervised release of 20

10   years.  I have already remarked about the factors relevant to

11   that determination, but I have determined that that is the

12   sentence that is sufficient but not greater than necessary to

13   promote the sentencing objectives as a whole because I think

14   that a term of 50 years is not appropriate to begin with.

15   While the offenses that Mr. Sprenger has committed in this

16   case are, as I have cataloged, abhorrent and rank among the

17   most serious offenses that we address, a sentence of 50 years

18   in this case would -- may well be a life sentence.  And I'm

19   not prepared to say that Mr. Sprenger's conduct warrants

20   imprisonment for the rest of his life.  To say that, I think

21   we'd have to say that Mr. Sprenger presents a combination of

22   someone who is irredeemable and who has committed crimes that

23   rank not just among the most serious but at the very top of

24   the chart.  Life sentences are the sentences that we impose on

25   those who have murdered and violated, you know, the most

1    fundamental commandments that we observe as a civilization.

2    And while this is certainly up there in terms of that ranking,

3    it's not at the very top.  And I therefore don't believe that

4    it is deserving of the sentence at the very top end of the

5    guideline range that could be imposed in this case.

6         The sentence that I have arrived on I think is a

7    very, very serious sentence that recognizes and respects --

8    that recognizes the seriousness of Mr. Sprenger's conduct and

9    respects the terrible toll that that conduct has taken on its

10   victims.

11        It will also, I believe, ensure the protection of the

12   public.  It is adequate to ensure the protection of the

13   public.  Mr. Sprenger will be in his mid 60s when he is

14   released from this sentence, at a time when age alone should

15   have mitigated to a significant degree the risk of and the

16   danger posed by Mr. Sprenger in terms of the risk of

17   recidivism.  And what risk remains I think can appropriately

18   be monitored and treated during the extended period of

19   supervised release that will be long enough to take

20   Mr. Sprenger should he be fortunate enough to live into his

21   late 80s.  So I think the combination of 30 years of

22   imprisonment with a 20-year term of supervised release is

23   sufficient but not greater than necessary to protect the

24   public as well.

25        It also serves the purposes of deterrence that I've

1    talked about, both directly to Mr. Sprenger and also to those

2    who, again, suffer from similar demons.  Perhaps understanding

3    that this kind of serious sentence will be imposed may help

4    some other child somewhere by giving somebody else pause to

5    think about -- more carefully about what they're doing.

6         Even if it doesn't, I think this is a sentence that

7    speaks to us as a community and as a nation and reminds us all

8    that we will and must protect the vulnerable, most vulnerable

9    among us, our children.  And perhaps the message will be heard

10   not only in the context of protecting them from sexual

11   predators like Mr. Sprenger but from other kinds of predators

12   that we're also battling in today's world.

13        I'm going to impose in full the government's proposed

14   restitution amount of $86,000 on the schedule that the

15   government has proposed.  I find the government's rationale to

16   be appropriate in assessing and distinguishing among groups

17   and individual victims.  And in the absence of any articulated

18   specific objection to the calculation, I find that it is a

19   reasonable calculation of the amount of restitution that

20   should be paid in this case to the victims, and it is also an

21   amount that there is some hope that the victims may actually

22   see some day.

23        In addition to the restitution amount, I'm required

24   to impose a special assessment of $100 on each count of

25   conviction.

1    I am not imposing the enhanced special assessment

2 because I think it unlikely that Mr. Sprenger is going to have

3 the financial resources to pay that in addition to the

4 restitution owed, and I want whatever financial resources are

5 available to go to restitution.

6    All right.  With respect to the terms and conditions

7 of supervised release, Mr. Brandstrader, I don't believe that

8 the defense objected to any of the proposed conditions?

9    MR. BRANDSTRADER:  No, Judge.  We discussed them with

10 Mr. Sprenger, and we're not lodging any objection to the ones

11 set out in the probation report.

12    THE COURT:  All right.  Understanding that, the

13 Seventh Circuit has recognized that a defendant who has had

14 the opportunity to review proposed terms and conditions of

15 supervised release in advance of a sentencing hearing and had

16 the opportunity to object may waive the review and individual

17 recitation of those conditions at the sentencing hearing if he

18 wishes to do so.  Do you wish to waive that process, or I can

19 go through the individual conditions?

20    MR. BRANDSTRADER:  We'll waive, Judge.

21    THE COURT:  All right.

22    No fine will be imposed, again, for the reasons that

23 any financial resources that Mr. Sprenger has available should

24 go to paying restitution to the victims of his crimes.

25    Going back to the term of imprisonment for a moment,

1    that term of 30 years will be imposed on Count One.  A term of

2    20 years will be imposed on Count Four, those terms to be run

3    concurrently.

4         All right.  Mr. Sprenger, you have the right to

5    appeal the sentence and judgment entered in this case.  Any

6    appeal that is taken must be filed by filing a notice of

7    appeal in this district court within 14 days of the entry of

8    this judgment.  The judgment will likely be entered on the

9    Court's docket tomorrow which will start that 14-day clock

10   ticking.

11        Mr. Brandstrader, is the defense seeking any

12   recommendations by the Court to the Bureau of Prisons with

13   respect to the sentence or --

14        MR. BRANDSTRADER:  Yes, Judge.  We would respectfully

15   ask the Court to recommend FCI Elkton, E-l-k-t-o-n.  I believe

16   it's in Ohio.  They offer sex treatment programs.

17        THE COURT:  E-l-k-t-o-n?

18        MR. BRANDSTRADER:  E-l-k-t-o-n.

19        THE COURT:  All right.  I certainly will make that

20   recommendation.

21        MR. BRANDSTRADER:  Thank you.

22        THE COURT:  Were there any others?

23        MR. BRANDSTRADER:  Well, the other one is I would say

24   it's Devens in Massachusetts, Judge.  They have the full

25   treatment program, FMC Devens, D-e-v-e-n-s.

1        THE COURT:  All right.

2        Mr. Sprenger, I'm happy to make those

3   recommendations.  They're certainly warranted here.  You

4   should understand, however, that I do not have the authority

5   to order the Bureau of Prisons to provide any particular type

6   of treatment or to designate you to any specific facility.

7   They take recommendations by the Court seriously, but

8   ultimately it is only a recommendation.

9        Mr. Alper, anything from probation that I've

10  neglected to cover?

11       PROBATION OFFICER:  No, Your Honor.  Thank you.

12       THE COURT:  Ms. Greening, anything else from the

13  government?

14       MS. GREENING:  A few quick things, Your Honor.

15       On supervised release, for discretionary condition 6,

16  the government requests adding a few additional individuals to

17  the no contact order, including all of the victims who have

18  been listed in this case, Victim C, D, E, and F.

19       THE COURT:  Yes, thank you.  I had actually scribbled

20  that in in my note.  I will make that change.

21       No objection, Mr. Brandstrader?

22       MR. BRANDSTRADER:  No objection, Judge.

23       THE COURT:  All right.

24       MS. GREENING:  I don't believe the Court has

25  addressed forfeiture.

1    THE COURT:  You're right.  I talked about it earlier
2    but did not impose the forfeiture.
3        The Court will grant the government's request for
4    entry of the preliminary forfeiture order, the entry of which
5    was agreed to in the plea agreement between the parties.  So
6    that will be entered along with the judgment order.
7        MS. GREENING:  Thank you, Your Honor.
8        And the last thing is that the government moves to
9    dismiss the other counts in the indictment.
10        THE COURT:  All right.  On the government's motions,
11    Counts Two and Three?
12        MS. GREENING:  Yes, Your Honor.
13        THE COURT:  Will be dismissed.
14        One other aspect.  In entering the restitution order
15    proposed by the government, the Court recognizes and
16    acknowledges and identifies each individual listed in that
17    order as a victim of this defendant's crimes.
18        All right.  Anything else?
19        MS. GREENING:  No.  Thank you, Your Honor.
20        THE COURT:  All right.
21        MR. BRANDSTRADER:  Nothing, Judge.
22        THE COURT:  Mr. Sprenger.
23        THE DEFENDANT:  Yes, Your Honor.
24        THE COURT:  This sentence -- a harsher sentence could
25    have been justified.  I mean it when I say that I don't

1    believe you are irredeemable.  The love and support that you

2    have here from your family members is the greatest testament

3    to that.  I hope that you will hold that with you and that

4    will be of some strength to you as you move forward with your

5    life.  And I wish you good luck and success in battling the

6    demons that have brought us here today.

7            To the victims of the crime who are here, thank you

8    for your courage and your contributions to this process.  I

9    hope that you feel justice has been done.

10           We're adjourned.

11      (Which were all the proceedings heard.)

12

13                        CERTIFICATE

14      I certify that the foregoing is a correct transcript from

15    the record of proceedings in the above-entitled matter.

16    */s/Kelly M. Fitzgerald*              *January 17, 2020*

17    _____        _____
      Kelly M. Fitzgerald                    Date
18    Official Court Reporter

19

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT
Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| ADAM SPRENGER | ) | Case Number:     1:18-CR-00105(1) |
| | ) | USM Number:     52874-424 |
| | ) | |
| | ) | |
| | ) | Thomas C. Brandstrader |
| | ) | Defendant's Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count(s) One and Four of the Indictment.

☐ pleaded nolo contendere to count(s)          which was accepted by the court.

☐ was found guilty on count(s)          after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18:2251(a) Sexual Exploitation of Children | 02/14/2018 | 1 |
| 18:2252A(a)(5)(B) Activities Re Material Constituting/Containing Child Porn. | 02/14/2018 | 4 |

The defendant is sentenced as provided in pages 2 through 9 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Count(s) Two and Three of the Indictment are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

August 29, 2019
_____
Date of Imposition of Judgment

_____
Signature of Judge
John J. Tharp, United States District Judge

Name and Title of Judge

8/30/19
_____
Date

Case: 1:18-cr-00105 Document #: 53 Filed: 08/30/19 Page 2 of 12 PageID #:1108
ILND 245B (Rev. 06/28/2019) Judgment in a Criminal Case
Sheet 2 – Imprisonment          Case: 19-2779          Document: 31          Filed: 09/21/2020          Pages: 176          Judgment – Page 2 of 9

DEFENDANT: ADAM SPRENGER
CASE NUMBER: 1:18-CR-00105(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:
30 years as to Count 1; 20 years as to Count 4, these sentences to run concurrently to each other.

☒　　　　The court makes the following recommendations to the Bureau of Prisons: It is recommended that the Defendant be designated to a

facility that provides sex offender treatment and that the defendant be permitted to participate in such programs, with the specific

recommendations of FCI Elkton, OH or FMC Devens, MA.

☒　　　　The defendant is remanded to the custody of the United States Marshal.

☐　　　　The defendant shall surrender to the United States Marshal for this district:

☐　　　　at　　　　　on

☐　　　　as notified by the United States Marshal.

☐　　　　The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐　　　　before 2:00 pm on

☐　　　　as notified by the United States Marshal.

☐　　　　as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this
judgment.

_____
UNITED STATES MARSHAL

By　_____
DEPUTY UNITED STATES MARSHAL

ILND 245B (Rev. 06/28/2019) Judgment in a Criminal Case
Sheet 3 – Supervised Release

DEFENDANT: ADAM SPRENGER
CASE NUMBER: 1:18-CR-00105(1)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of:
Twenty years on each of Counts One and Four, to run concurrently.

You must report to the probation office in the district to which you are released within 72 hours of release from the custody of the Bureau of Prisons. The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**
- ☒ (1) you shall not commit another Federal, State, or local crime.
- ☒ (2) you shall not unlawfully possess a controlled substance.
- ☐ (3) you shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, if an approved program is readily available within a 50-mile radius of your legal residence. [Use for a first conviction of a domestic violence crime, as defined in **§ 3561(b)**.]
- ☒ (4) you shall register and comply with all requirements of the Sex Offender Registration and Notification Act **(42 U.S.C. § 16913)**.
- ☒ (5) you shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.
- ☒ (6) you shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release. [This mandatory condition may be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse by the defendant.]

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions** — The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D)**; such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D)**; and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**.
The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**
- ☐ (1) you shall provide financial support to any dependents if you are financially able to do so.
- ☐ (2) you shall make restitution to a victim of the offense under **§ 3556** (but not subject to the limitation of **§ 3663(a)** or **§ 3663A(c)(1)(A)**).
- ☐ (3) you shall give to the victims of the offense notice pursuant to the provisions of **§ 3555**, as follows:
- ☒ (4) you shall seek, and work conscientiously at, lawful employment or, if you are not gainfully employed, you shall pursue conscientiously a course of study or vocational training that will equip you for employment.
- ☐ (5) you shall refrain from engaging in the following occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in the following specified occupation, business, or profession only to a stated degree or under stated circumstances; (if checked yes, please indicate restriction(s)) .
- ☒ (6) you shall not knowingly meet or communicate with any person whom you know to be engaged, or planning to be engaged, in criminal activity and shall not:
  - ☐ visit the following type of places: .
  - ☒ knowingly meet or communicate with the following persons: Sean McCarthy, Beth Richards, Victims A, B, C, D, E, and F.
- ☒ (7) you shall refrain from ☒ any or ☐ excessive use of alcohol (defined as ☐ having a blood alcohol concentration greater than 0.08; or ☐ ), and from any use of a narcotic drug or other controlled substance, as defined in **§ 102** of the Controlled Substances Act (**21 U.S.C. § 802**), without a prescription by a licensed medical practitioner.
- ☒ (8) you shall not possess a firearm, destructive device, or other dangerous weapon.
- ☒ (9) ☒ you shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.
  - ☒ you shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

ILND 245B (Rev. 06/28/2019) Judgment in a Criminal Case
Sheet 3 – Supervised Release Case: 19-2779    Document: 31    Filed: 09/21/2020    Pages: 176    Judgment – Page 4 of 9

DEFENDANT:  ADAM SPRENGER
CASE NUMBER:  1:18-CR-00105(1)

☐   you shall participate, at the direction of a probation officer, in medical care; (if checked yes, please specify: _____ .)

☐   (10)   (intermittent confinement): you shall remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling _____ [no more than the lesser of one year or the term of imprisonment authorized for the offense], during the first year of the term of supervised release (provided, however, that a condition set forth in **§3563(b)(10)** shall be imposed only for a violation of a condition of supervised release in accordance with **§ 3583(e)(2)** and only when facilities are available) for the following period _____ .

☐   (11)   (community confinement): you shall reside at, or participate in the program of a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of supervised release, for a period of _____ months.

☐   (12)   you shall work in community service for _____ hours as directed by a probation officer.

☐   (13)   you shall reside in the following place or area: _____ , or refrain from residing in a specified place or area: _____ .

☒   (14)   you shall not knowingly leave from the federal judicial district where you are being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

☒   (15)   you shall report to a probation officer as directed by the court or a probation officer.

☒   (16)   ☒   you shall permit a probation officer to visit you ☒ at any reasonable time or ☒ as specified:                ,
                 ☒ at home        ☒ at work        ☒ at school        ☐ at a community service location
                 ☒ other reasonable location specified by a probation officer
          ☒   you shall permit confiscation of any contraband observed in plain view of the probation officer.

☒   (17)   you shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. You shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

☒   (18)   you shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

☐   (19) (home confinement)
          ☐   (a)(i) (home incarceration) for a period of __ months, you are restricted to your residence at all times except for medical necessities and court appearances or other activities specifically approved by the court.
          ☐   (a)(ii) (home detention) for a period of __ months, you are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the probation officer.
          ☐   (a)(iii) (curfew) for a period of __ months, you are restricted to your residence every day.
          ☐   from the times directed by the probation officer; or ☐ from __ to __.
          ☐   (b) your compliance with this condition, as well as other court-imposed conditions of supervision, shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and you shall abide by all technology requirements.
          ☐   (c) you shall pay all or part of the cost of the location monitoring, at the daily contractual rate, if you are financially able to do so.

☐   (20)   you shall comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by you for the support and maintenance of a child or of a child and the parent with whom the child is living.

☐   (21)   (deportation): you shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations.  If ordered deported, you shall not remain in or enter the United States without obtaining, in advance, the express written consent of the United States Attorney General or the United States Secretary of the Department of Homeland Security.

☒   (22)   you shall satisfy such other special conditions as ordered below.

☒   (23)   You shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release.  You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

☐   (24)   Other:

- App. 118 -

Case: 1:18-cr-00105 Document #: 53 Filed: 08/30/19 Page 5 of 12 PageID #:1108
ILND 245B (Rev. 06/28/2019) Judgment in a Criminal Case
Sheet 3 – Supervised Release Case: 19-2779    Document: 31    Filed: 09/21/2020    Pages: 176    Judgment – Page 5 of 9

DEFENDANT: ADAM SPRENGER
CASE NUMBER: 1:18-CR-00105(1)

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified by checkmarks below:

**During the term of supervised release:**

☐ (1) if you have not obtained a high school diploma or equivalent, you shall participate in a General Educational Development (GED) preparation course and seek to obtain a GED within the first year of supervision.

☒ (2) you shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

☐ (3) you shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least _____ hours of community service per week at the direction of the probation office until gainfully employed. The total amount of community service required over your term of service shall not exceed _____ hours.

☐ (4) you shall not maintain employment where you have access to other individual's personal information, including, but not limited to, Social Security numbers and credit card numbers (or money) unless approved by a probation officer.

☒ (5) you shall not incur new credit charges or open additional lines of credit without the approval of a probation officer unless you are in compliance with the financial obligations imposed by this judgment.

☒ (6) you shall provide a probation officer with access to any requested financial information requested by the probation officer to monitor compliance with conditions of supervised release.

☒ (7) within 72 hours of any significant change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments, you must notify the probation officer of the change.

☒ (8) you shall file accurate income tax returns and pay all taxes, interest, and penalties as required by law.

☒ (9) you shall participate in a sex offender treatment program. The specific program and provider will be determined by a probation officer. You shall comply with all recommended treatment which may include psychological and physiological testing. You shall maintain use of all prescribed medications.

  ☒ You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall consent to the installation of computer monitoring software on all identified computers to which you have access and to which the probation officer has legitimate access by right or consent. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

  ☒ The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

  ☒ You shall not possess or use at any location (including your place of employment), any computer, external storage device, or any device with access to the Internet or any online computer service without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system

  ☒ You shall not possess any device that could be used for covert photography without the prior approval of a probation officer.

  ☒ You shall not view or possess child pornography. If the treatment provider determines that exposure to other sexually stimulating material may be detrimental to the treatment process, or that additional conditions are likely to assist the treatment process, such proposed conditions shall be promptly presented to the court, for a determination, pursuant to **18 U.S.C. § 3583(e)(2)**, regarding whether to enlarge or otherwise modify the conditions of supervision to include conditions consistent with the recommendations of the treatment provider.

  ☒ You shall not, without the approval of a probation officer and treatment provider, engage in activities that will put you in unsupervised private contact with any person under the age of 18, and you shall not knowingly visit locations where persons under the age of 18 regularly congregate, including parks, schools, school bus stops, playgrounds, and childcare facilities. This condition does not apply to contact in the course of normal commercial business or unintentional incidental contact

  ☐ This condition does not apply to your family members:    [Names]

  ☒ Your employment shall be restricted to the judicial district and division where you reside or are supervised, unless approval is granted by a probation officer. Prior to accepting any form of employment, you shall seek the approval of a probation officer, in order to allow the probation officer the opportunity to assess the level of risk to

ILND 245B (Rev. 06/28/2019) Judgment in a Criminal Case
Sheet 3 – Supervised Release

DEFENDANT: ADAM SPRENGER
CASE NUMBER: 1:18-CR-00105(1)

the community you will pose if employed in a particular capacity. You shall not participate in any volunteer activity that may cause you to come into direct contact with children except under circumstances approved in advance by a probation officer and treatment provider.

☒　You shall provide the probation officer with copies of your telephone bills, all credit card statements/receipts, and any other financial information requested.

☒　You shall comply with all state and local laws pertaining to convicted sex offenders, including such laws that impose restrictions beyond those set forth in this order.

☒ (10)　you shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of your gross earnings minus federal and state income tax withholdings.

☒ (11)　you shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the prior permission of the court.

☐ (12)　you shall pay to the Clerk of the Court $_____ as repayment to the United States of government funds you received during the investigation of this offense. (The Clerk of the Court shall remit the funds to _____ (list both Agency and Address.)

☐ (13)　if the probation officer determines that you pose a risk to another person (including an organization or members of the community), the probation officer may require you to tell the person about the risk, and you must comply with that instruction. Such notification could include advising the person about your record of arrests and convictions and substance use. The probation officer may contact the person and confirm that you have told the person about the risk.

☐ (14)　You shall observe one Reentry Court session, as instructed by your probation officer.

☐ (15)　Other: _____

ILND 245B (Rev. 06/28/2019) Judgment in a Criminal Case Document: 31      Filed: 09/21/2020      Pages: 176
Sheet 5 – Criminal Monetary Penalties                                                                    Judgment – Page 7 of 9

DEFENDANT:  ADAM SPRENGER
CASE NUMBER:  1:18-CR-00105(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $200.00 | $.00 | $.00 | $86,000.00 |

☐    The determination of restitution is deferred until           . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such
      determination.

☒    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

      If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified
      otherwise in the priority order or percentage payment column below.  However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal
      victims must be paid before the United States is paid.

      Restitution of $86,000.00 to:

            (VICTIM LIST ATTACHED)

ILND 245B (Rev. 06/28/2019) Judgment in a Criminal Case Document: 31       Filed: 09/21/2020       Pages: 176
Sheet 5 – Criminal Monetary Penalties

Judgment – Page 8 of 9

DEFENDANT: ADAM SPRENGER
CASE NUMBER: 1:18-CR-00105(1)

(VICTIM LIST ATTACHED)

☐    Restitution amount ordered pursuant to plea agreement $

☐    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full
     before the fifteenth day after the date of the judgment, pursuant to **18 U.S.C. § 3612(f)**. All of the payment options on Sheet
     6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☒    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☒          the interest requirement is waived for the restitution.

     ☐          the interest requirement for the        is modified as follows:

☐    The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine
     obligations.

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
* Findings for the total amount of losses are required under **Chapters 109A, 110, 110A, and 113A of Title 18** for offenses committed
on or after September 13, 1994, but before April 23, 1996.

ILND 245B (Rev. 06/28/2019) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

DEFENDANT:  ADAM SPRENGER
CASE NUMBER:  1:18-CR-00105(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒    Lump sum payment of $200 due immediately.

       ☐    balance due not later than      , or

       ☒    balance due in accordance with ☐ C, ☐ D, ☐ E, or ☒ F below; or

**B** ☐    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐    Payment in equal    *(e.g. weekly, monthly, quarterly)* installments of $    over a period of    *(e.g., months or years)*, to commence    *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐    Payment in equal    *(e.g. weekly, monthly, quarterly)* installments of $    over a period of    *(e.g., months or years)*, to commence    *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐    Payment during the term of supervised release will commence within    *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒    Special instructions regarding the payment of criminal monetary penalties:
Per Special Condition of Supervised Release (10) above.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
| --- | --- | --- | --- |

**See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☒    The defendant shall forfeit the defendant's interest in the following property to the United States: The government's motion for entry of Preliminary Order of Forfeiture is granted. Preliminary Order of Forfeiture is attached.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18 CR 105 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| ADAM SPRENGER | ) | |

## **PRELIMINARY ORDER OF FORFEITURE**

The United States asks this Court to issue a preliminary order of forfeiture pursuant to Title 18, United States Code, Section 2253 and Federal Rules of Criminal Procedure 32.2.

(a)    On July 5, 2018, an indictment was returned charging defendant ADAM SPRENGER in Counts One and Two with production of child pornography, in violation of 18 U.S.C. § 2251(a); in Count Three with transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); and in Count Four with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).   The indictment sought forfeiture to the United States of property that was used, or intended to be used, to commit and to promote the commission of the charged offenses.

(b)    On February 15, 2019, defendant ADAM SPRENGER entered a voluntary plea of guilty to Counts One and Four of the indictment.   Pursuant to the terms of the plea agreement and as a result of his violations of 18 U.S.C. § 2251(a) and 2252A(a)(5)(B), defendant ADAM SPRENGER agreed that certain property, including but not limited to: (1) one HP laptop computer, model Pavilion DM4, bearing serial number CNU1311MPR, (2) one HP laptop computer, model Compaq nc6400, bearing serial number CND70528HT, (3) one Verizon Samsung Galaxy S7 cellular phone, bearing IMEI number 359764081485953; (4) one Samsung EVO 16GB micro SD

card, bearing serial number KPABT27PB629; and (5) one DANE-ELEC 2GB USB drive, bearing serial number 4820-B6C1, are subject to forfeiture pursuant to the provisions of 18 U.S.C. § 2253.

(c)     Defendant ADAM SPRENGER has agreed to the entry of a preliminary order of forfeiture relinquishing any right, title or interest he has in the foregoing property pursuant to 18 U.S.C. § 2253, for disposition according to law.

(d)     The United States requests that this Court enter a preliminary order of forfeiture against defendant ADAM SPRENGER as to (1) one HP laptop computer, model Pavilion DM4, bearing serial number CNU1311MPR, (2) one HP laptop computer, model Compaq nc6400, bearing serial number CND70528HT, (3) one Verizon Samsung Galaxy S7 cellular phone, bearing IMEI number 359764081485953; (4) one Samsung EVO 16GB micro SD card, bearing serial number KPABT27PB629; and (5) one DANE-ELEC 2GB USB drive, bearing serial number 4820-B6C1, because the property used, or intended to be used, to commit and to promote the commission of the offenses of conviction.

(e)     Accordingly, this Court orders that a preliminary order of forfeiture be entered against defendant ADAM SPRENGER as to the foregoing property.   Pursuant to 18 U.S.C. § 2253 and Fed. R. Crim. P. 32.2, all right, title, and interest of the defendant in the foregoing property named in this order shall be forfeited to the United States for disposition according to law.

(f)     Pursuant to 18 U.S.C. § 2253 and Fed. R. Crim. P. 32.2, the terms and conditions of this preliminary order of forfeiture shall be made part of the sentence imposed against the defendant and recited in any judgment and commitment order entered in the case.   In accordance with Rule 32.2(b)(4)(A), at sentencing-or at any time before sentencing if the defendant consents-

2

the preliminary order of forfeiture, will become final as to the defendant. Pursuant to Rule 32.2(c), if a third party files a petition asserting an interest in the property to be forfeited, this Court must hold a hearing to determine his rights. Pursuant to 21 U.S.C. § 853(n)(2), incorporated by 18 U.S.C. § 2253(b), third parties have thirty days from the publication of notice or receipt of notice, whichever is earlier, to file a petition. The preliminary order of forfeiture will remain preliminary as to third parties until such an ancillary proceeding, if required, can be conducted under Rule 32.2(c). After disposition of all third party interests, this Court shall, upon the government's motion if appropriate, enter a final order of forfeiture of the property that is the subject of this preliminary order of forfeiture, thereby vesting clear title in the United States of America.

(g)    Pursuant to 21 U.S.C. § 853(g), as incorporated by 18 U.S.C. § 2253(b), and Fed. R. Crim. P. 32.2, upon entry of this preliminary order of forfeiture the foregoing property shall be seized by the Federal Bureau of Investigation.

(h)    This Court shall retain jurisdiction to take such additional action and enter such further orders as may be necessary to implement and enforce this preliminary forfeiture order.

_John J. Tharp Jr._
_____
JOHN J. THARP, JR.
United States District Judge

DATED:    August 30, 2019

3