In the

# UNITED STATES COURT OF APPEALS
for the Seventh Circuit

## No. 19-2779

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**ADAM SPRENGER,**

**Defendant-Appellant.**

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 18 CR 105 — John J. Tharp, Jr., *Judge.*

# BRIEF OF THE UNITED STATES

JOHN R. LAUSCH, JR.
United States Attorney
  for the Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois  60604
(312) 353-5300

ANDRIANNA D. KASTANEK
Assistant United States Attorney
Chief of Appeals, Criminal Division

HELENE B. GREENWALD
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

JURISDICTIONAL STATEMENT .......................................................... 1

ISSUE PRESENTED FOR REVIEW ...................................................... 1

STATEMENT OF THE CASE ................................................................. 1

SUMMARY OF ARGUMENT ................................................................ 11

ARGUMENT ........................................................................................... 12

    This Court Should Reverse Defendant's Conviction on Count 1 But Leave the Remainder of the Plea Agreement Undisturbed. ...................... 12

        A.    Standard of Review ................................................................ 12

        B.    Analysis ................................................................................. 13

            1.    The *Howard* decision ................................................ 13

            2.    The District Court Plainly Erred By Accepting Defendant's Guilty Plea To Count 1. ...................................... 15

            3.    Defendant's Conviction on Count 4 Is Unaffected By *Howard*. ...................................................................... 16

            4.    Defendant's Stipulation To Count 2 Is Unaffected By *Howard*. ...................................................................... 19

            5.    The Plain Error As To Count 1 Does Not Warrant Invalidation Of The Plea Agreement *In Toto*. ........................... 25

CONCLUSION ........................................................................................ 30

# TABLE OF AUTHORITIES

## CASES

*Brady v. United States*, 397 U.S. 742 (1970) ..................................................... 26

*Henderson v. United States*, 568 U.S. 266 (2013) ........................................... 15

*McKeever v. Warden SCI-Graterford*, 486 F.3d 81 (3d Cir. 2007) ............ 25, 29

*North Carolina v. Alford*, 400 U.S. 25 (1970) .................................................. 25

*United States v. Adkins*, 743 F.3d 176 (7th Cir. 2014) ................................... 25

*United States v. Banks*, 556 F.3d 967 (9th Cir. 2009) ..................................... 22

*United States v. Barnes*, 83 F.3d 934 (7th Cir. 1996) ...................................... 29

*United States v. Barron*, 172 F.3d 1153 (9th Cir. 1999) ................................. 25

*United States v. Bradley*, 381 F.3d 641 (7th Cir. 2004) ............................ 27, 28

*United States v. Bunner*, 134 F.3d 1000 (10th Cir. 1998) ............................... 27

*United States v. Damico*, 99 F.3d 1431 (7th Cir. 1996) ................................... 16

*United States v. Dowthard*, 948 F.3d 814 (7th Cir. 2020) ........................ 12, 16

*United States v. Finley*, 726 F.3d 483 (3d Cir. 2013) ...................................... 20

*United States v. Franklin*, 547 F.3d 726 (7th Cir. 2008) ................................ 27

*United States v. Grimes*, 244 F.3d 375 (5th Cir. 2001) ................................... 23

*United States v. Howard*, 968 F.3d 717 (7th Cir. 2020) ..........................passim

*United States v. Jones*, 408 F. App'x 949 (6th Cir. 2011) ............................... 17

*United States v. Knox*, 32 F.3d 733 (3d Cir. 1994) .......................................... 23

*United States v. Miller*, 829 F.3d 519 (7th Cir. 2016) ..................................... 22

*United States v. Morgan*, 958 F.3d 847 (8th Cir. 1992) ................................. 25

*United States v. Neal*, 907 F.3d 511 (7th Cir. 2018) ........................................ 21

*United States v. Nichols*, 527 F. App'x 344 (6th Cir. 2013) ............................ 20

*United States v. Novak*, 841 F.3d 721 (7th Cir. 2016) .................................... 16

*United States v. Price*, 775 F.3d 828 (7th Cir. 2014)...................................... 22

*United States v. Vowell*, 516 F.3d 503 (6th Cir. 2008)................................... 20

Un*ited States v. Watkins, 1*47 F.3d 1294 (11th Cir. 1998) ............................ 26

*United States v. Williams*, 198 F.3d 988 (7th Cir. 1999) ................................ 25

*United States v. Williams*, 946 F.3d 968 (7th Cir. 2020)............... 15, 16, 19, 24

## STATUTES

18 U.S.C. § 924(c) ............................................................................................... 27

18 U.S.C. § 2251(a) ........................................................................ 5, 11, 13, 15

18 U.S.C. § 2252A(a)(1) .................................................................... 5, 12, 17

18 U.S.C. § 2256(2)(A) ....................................................................................... 21

18 U.S.C. § 2259............................................................................................. 8

21 U.S.C. § 841(a)(1) ......................................................................................... 27

## RULE

Fed. R. Crim. P. 11(e)(1)(C) ............................................................................. 29

## JURISDICTIONAL STATEMENT

Defendant-appellant's jurisdictional statement is complete and correct.

## ISSUE PRESENTED FOR REVIEW

Whether, under *United States v. Howard*, 968 F.3d 717 (7th Cir. 2020), the district court plainly erred by accepting defendant's guilty plea to the charge of production of child pornography; and if so, whether the portions of defendant's plea agreement unaffected by *Howard*, including his guilty plea to the possession of child pornography, can stand.

## STATEMENT OF THE CASE

Based on this Court's recent decision in *Howard*, 968 F.3d 717, defendant seeks to withdraw his guilty plea to charges of production and possession of child pornography. Set forth below are relevant facts regarding the offenses and proceedings in the district court:

### *Offense Conduct*

Between 2015 and 2018, defendant lived with his girlfriend and her four minor children, including Victims A and B. PSR 5, 16; G.V. 1.[1] During that time, defendant took sexually explicit photographs and videos involving

---

[1] This brief employs the following citation conventions: Original Electronic Record as "R." followed by the district court document number; change of plea transcript (R. 72) as "COP Tr."; sentencing transcript (R. 74) as "S. Tr."; Presentence Investigation Report as "PSR"; supplemental PSR as "Supp. PSR"; second supplemental PSR as "2dSupp. PSR"; Government's Version of the Offense as "G.V."; and defendant's brief as "Br."

Victims A and B while they slept, including one of his naked erect penis next to Victim A's face, and ones of him masturbating on Victim B and touching her clothed vagina and buttocks. R. 38 at 2-3, 6-8; G.V. 4. Defendant also amassed a collection of over 1,000 images and videos depicting child pornography (in addition to the images and videos involving Victims A and B), including images of children, some as young as toddlers, being orally, anally, and vaginally raped. R. 38 at 3-6; *see also* R. 47 at 1, 22-24.

### Victim A

On March 21, 2015, defendant traveled from Illinois to a hotel in Wisconsin with his girlfriend and her children, including 14-year old Victim A. R. 38 at 3. Defendant knew Victim A's age. *Id*. While Victim A was under defendant's care and supervision in the hotel room, defendant used his phone to take about seven photographs of Victim A as she slept. *Id*. One such photograph depicted defendant's naked, erect penis next to Victim A's face; another depicted defendant's face, with his tongue sticking out, next to Victim A's clothed groin. *Id*. Defendant brought back with him to Illinois the phone that contained the images and stored them on a USB drive in his residence. *Id*.

### Victim B

On April 7, 2017—at a time when 13-year-old Victim B was in defendant's care, custody, or control in the home defendant shared with Victim B and her mother—defendant made videos of Victim B while she slept. R. 38

at 6-7. Defendant knew Victim B's age. *Id.* at 6. In one video, defendant pulled back the blanket covering Victim B, focused on her clothed buttocks and vagina, and masturbated (with his erect penis visible) over Victim B. *Id.* In another video, he made physical contact with Victim B's clothed vagina using his hand. *Id.* In a third video, he used his hand to touch Victim B's clothed vagina and buttocks. *Id.*; PSR 6; *see also* S. Tr. 13, 16. In the fourth video, defendant ejaculated onto Victim B's clothed buttocks. R. 38 at 6-7. Defendant then stored the four videos on a micro SD card that was manufactured in the Philippines. *Id.* at 7.

On or about November 14, 2017, defendant communicated with an individual who, unbeknownst to defendant, was an undercover law enforcement officer ("UC") over an application called Kik Messenger. R. 38 at 7. During that communication, defendant and the UC discussed defendant's conduct involving Victims A and B. *Id.* at 7-8; *see also* PSR 6-7. In response to the UC asking, "how far have you got with your two [i.e., his girlfriend's daughters] . . . or aren't you touchin them," defendant responded, "Just rubbed my cock on their face and hands while their sleeping[,]" and stated that he had ejaculated "on the bed or floor next to them." R. 38 at 8. Defendant later sent the UC, over Kik Messenger, the video in which he ejaculated onto Victim B's clothed buttocks. *Id.*

Defendant also had conversations with other Kik users in which he discussed drugging Victim B, touching her vaginal "lips," and masturbating upon her.[2] PSR 7; G.V. 6-9, Exs. A, B.

### *Possession of Additional Child Pornography*

On February 14, 2018, law enforcement officers searched defendant's home. PSR 5. In addition to the images defendant made of Victims A and B, described above, and a video of defendant masturbating over a minor identified as Victim C, officers found over 1,000 images and videos of child pornography stored on electronic devices manufactured outside the United States, including on a USB drive, micro SD card, and laptop computers. R. 38 at 3-5; PSR 5-6; G.V. 2-4.[3] These images and videos—which defendant possessed but did not produce—included children, some as young as toddlers, being forced to engage in oral, vaginal, and anal intercourse, and sadomasochistic images and lascivious exhibition of minors' genitals. R. 38 at 5-6; G.V. 4.

### *Indictment*

On July 5, 2018, a grand jury returned a four-count indictment against defendant. R. 19. It included two counts of production of child pornography, in

---

[2] These conversations were detailed only in the PSR and Government's Version, and were not disputed by defendant.

[3] With respect to Victim C, who was the 14-year old stepdaughter of defendant's friend, the video showed defendant masturbating over Victim C while she slept. R. 38 at 5; PSR 6. When defendant ejaculated, the friend pinched some of the ejaculate off of defendant and flicked it three times toward Victim C's face. R. 38 at 5.

violation of 18 U.S.C. § 2251(a): Count 1 charged production of child pornography with respect to Victim A; and Count 2 charged production with respect to Victim B. R. 19. Count 3 of the indictment charged transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1). R. 19. Count 4 charged possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). R. 19. The possession count alleged that the images of child pornography defendant possessed included an image that involved a prepubescent minor and a minor who had not yet obtained 12 years of age. *Id.*

### Guilty Plea

On February 15, 2019, defendant pled guilty to the production offense charged in Count 1 (involving Victim A) and the possession offense charged in Count 4, pursuant to a plea agreement with the government. R. 37, 38. Defendant also stipulated to the commission of the production offense charged in Count 2, which involved Victim B. R. 38 at 6-8. In the plea agreement, defendant admitted facts as summarized above. *Id.* at 2-8.

With respect to each production count, defendant admitted that he "used" Victims A and B "to engage in sexually explicit conduct." R. 38 at 2, 6. With respect to the possession count, defendant admitted that the child pornography he possessed included "images and videos of children, some as young as toddlers, being forced to engage in oral, vaginal, and anal intercourse, as well as sadomasochistic images and lascivious exhibition of minors'

genitals." *Id*. at 5-6. With respect to Guideline calculations, defendant admitted that his possession "offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence, or (B) sexual abuse or exploitation of an infant or toddler," warranting a four-level increase in offense level under Guideline § 2G2.2(b)(4). R. 38 at 11-12. Defendant preserved his right to "appeal the validity of [his] guilty plea and the sentence imposed." *Id*. at 22.

At the change of plea proceeding, the district court discussed at length the factual basis for defendant's guilty plea. *See* COP Tr. 29-34. The court confirmed that defendant had "very carefully" reviewed the factual basis set forth in the plea agreement, and that defendant was "completely satisfied that everything" in the factual bases was "completely 100 percent accurate[,]" in need of no changes, and subject to "no quibbles at all[.]" *Id*. at 30-31.

With respect to the facts underlying defendant's guilty plea to the production offense involving Victim A, charged in Count 1, the district court inquired of the government: "And just to be clear, the sexually explicit conduct was not of [V]ictim A but was of Mr. Sprenger, correct?" COP Tr. 32. The government responded, "That's correct, Your Honor." *Id*.

In setting forth the factual basis for the possession offense charged in Count 4, the government proffered that defendant possessed hundreds of images and videos of child pornography (without specific reference to the

6

videos defendant produced of Victims A, B and C). COP Tr. 32-33. The government added that "[t]he images and videos of child pornography that Mr. Sprenger possessed . . . included images and videos of children who were as young as toddlers and included sadomasochistic conduct." *Id*. at 33. Defendant told the court that he took "[n]o" issue with any of the prosecutor's statements. *Id*. at 34.

### Presentence Investigation Report ("PSR")

Prior to sentencing, the Probation Office prepared a PSR, which contained, in pertinent part, the information and determinations that follow:

### Guideline Calculations

The PSR calculated defendant's total offense level to be 43 and his Criminal History Category to be I. PSR 12, 14. This offense level calculation included the addition of:  four levels for the possession count, under Guideline § 2G2.2(b)(4), because the offense involved material that portrays "sadistic or masochistic conduct or other depictions of violence," or "sexual abuse or exploitation of an infant or toddler"; and two levels for the stipulated production offense involving Victim B, under Guideline § 2G2.1(b)(2)(A), because the offense "involved the commission of a sexual act or sexual contact." PSR 10.

While the resulting guideline range was life imprisonment, the cumulative statutory maximum was 50 years' imprisonment: Count 1—the

production count—carried a mandatory minimum sentence of 15 years' imprisonment and a maximum sentence of 30 years' imprisonment; and Count 4—the possession count—carried a maximum term of 20 years' imprisonment. PSR 24. Thus, under Guideline § 5G1.2(b), the advisory guideline sentence was 50 years' imprisonment. PSR 24.

### *Restitution*

Attached to the PSR and supplemental PSR were victim impact statements and restitution requests from defendant's victims—both those depicted in the images and videos that defendant made, as well as those depicted in images and videos that defendant possessed but did not produce. *See* PSR; Supp. PSR; 2dSupp. PSR. Pursuant to 18 U.S.C. §§ 2259 and 3663A, the government sought restitution for Victims A, B, and C, plus seven identified victims depicted in the possessed images and videos. R. 47 at 22-24; 51 at 5; G.V. 20. As to these seven victims, defendant possessed videos and images of them being raped and otherwise sexually abused and exploited; six of these victims were under the age of 12 at the time the videos or images were made. R. 47 at 22-24; PSR at Exs.; Supp. PSR ; S. Tr. 14; *see also* R. 38 at 5-6.

### *Sentencing*

The district court sentenced defendant on August 29, 2019. R. 52. At the proceeding, without objection from either party, the Court adopted the

calculations in the PSR, and found the advisory Guideline range to be 50 years' imprisonment. S. Tr. 4-6.

The government sought a 50-year sentence. S. Tr. 11. The government stressed defendant's possession of "over 1300 images and videos depicting child pornography[,]" including "the anal, vaginal and oral rape of children as young as toddlers." *Id*. at 10-11, 13-14. The government also emphasized defendant's production of child pornography, including the stipulated production offense. The government described the offense as involving defendant "fondl[ing]" Victim B's vagina and her buttocks, and maintained that the offense constituted a videotaped "sexual assault" of Victim B. *Id*. at 12-13; *see also* R. 47 at 1-2. In support, the government provided to the court, and the court reviewed, the four videos depicting defendant and Victim B. R. 47 at n. 2; S. Tr. 3, 16-17 (referencing Ex. Disk 1 and summarizing the videos as including one in which "defendant visibly fondl[ed] Victim B's vagina and buttocks").

In their remarks, which followed those of the government, neither defendant nor his counsel disputed the government's description of defendant's conduct as "fondling" Victim B's vagina and buttocks and as constituting a "sexual assault." *See* S. Tr. 22-27. Rather, in support of a 15-year prison sentence, defendant cited a psychosexual risk evaluation he procured, which found him to present a low-to-moderate risk potential of sexually victimizing others. *Id*. at 22-25; R. 49-1.

After considering the parties' arguments and the § 3553(a) factors, the court imposed a sentence of 30 years' imprisonment on Count 1 and 20 years on Count 4, to run concurrently, resulting in a total sentence of 30 years' imprisonment. S. Tr. 41; R. 53. The court characterized defendant's crimes as among the most serious, involving minors from defendant's household who trusted him, as well as victims depicted in the over 1,000 images of child pornography defendant possessed, which possession further injured and traumatized those victims. S. Tr. 28-30. Of particular note for purposes of this appeal, the court—after reviewing the videos submitted by the government (*id.* at 3, 30-31)—found that defendant had sexually abused Victim B:

> [T]his isn't just a crime that involves the creation of child pornography; this is a crime that involves sexual abuse. I think the government is absolutely right about that. It involves unwanted, uninvited, unlawful physical contact between Mr. Sprenger and at least one of the . . . children he victimized directly that we know of.

*Id.* at 30. The court also expressly found that defendant administered some sort of drug to facilitate the abuse of Victim B, which it found to be particularly disturbing. *Id.* at 31-32.

In mitigation, the court noted, among other things, defendant's lack of significant criminal history, mental health issues, and motivation to rehabilitate himself. S. Tr. 32-36. But the court found that the low-to-moderate threat assessment was not based on a complete picture of defendant because, "while . . . at least [at] one point it expressly acknowledges that there was some

contact [by defendant with Victim B]," the report assumed that defendant's "conduct [did] not involve sexual assault. And as I've already indicated, I disagree with that conclusion." *Id*. at 34-35.

In addition to the term of imprisonment, without any specific objection from defendant, the district court ordered $86,000 in restitution, as proposed by the government. S. Tr. 43.

## SUMMARY OF ARGUMENT

The government acknowledges that, under this Court's reasoning in *Howard*, 968 F.3d 717—issued after defendant's sentencing—defendant did not produce child pornography within the meaning of 18 U.S.C. § 2251(a) as charged in Count 1 with respect to Victim A. In *Howard*, this Court held that creating images of a defendant masturbating next to a sleeping child, without more, does not constitute the production of child pornography under § 2251(a), because the statute requires that the minor (not just the defendant) engage in sexually explicit conduct. Here, the conduct that was the basis of defendant's conviction in Count 1 involved defendant, but not the minor, engaged in sexually explicit conduct. The government therefore recognizes that defendant has established plain error as to Count 1, and his conviction on that count should be vacated.

However, the Court should leave intact the remainder of the plea agreement, including defendant's guilty plea to Count 4 for the possession of

11

child pornography. In his guilty plea, defendant admitted that he possessed over 1,000 images and videos of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). This conviction is unaffected by *Howard*. Similarly, the factual basis for the stipulated offense of production, as alleged in Count 2, is not undermined by *Howard*. Defendant admitted that he touched Victim B's vagina and buttocks, distinguishing this case from the facts of *Howard*. These parts of the plea agreement and defendant's guilty plea to these offenses stand independent of defendant's plea to Count 1 and should remain undisturbed.

## ARGUMENT

**This Court Should Reverse Defendant's Conviction on Count 1 But Leave the Remainder of the Plea Agreement Undisturbed.**

### A.    Standard of Review

In his plea agreement, defendant expressly reserved the right to appeal the validity of his guilty plea. R. 38 at 22. Thus, he did not waive the challenge raised on appeal. *See United States v. Dowthard*, 948 F.3d 814, 817 (7th Cir. 2020). However, because defendant did not challenge the validity of his guilty plea before the district court, this Court reviews his arguments for plain error only. *Id*. Under plain error review, defendant must show: "(1) an error (2) that is plain today, (3) that affected his substantial rights, and (4) seriously affected the fairness, integrity or public reputation of the proceedings." *Id*. at 818.

### B.    Analysis

Defendant challenges the validity of his guilty pleas to Counts 1 and 4 and his stipulation to the production offense charged in Count 2. He argues that, under *Howard*, 968 F.3d at 718-24, he did not use Victims A or B to "engage in" sexually explicit conduct, as required to sustain a conviction for the production of child pornography under 18 U.S.C. § 2251(a). He also challenges his guilty plea to the possession count because the over 1,000 images and videos of child pornography he possessed included a few he made of Victims A, B and C that purportedly do not constitute child pornography under *Howard*.

As discussed below, the district court's acceptance of defendant's guilty plea to Count 1 was plainly erroneous. There was no such error with respect to defendant's guilty plea to Count 4, however, or in accepting defendant's stipulation to the production offense charged in Count 2 involving Victim B. The appropriate remedy is to reverse the Count 1 conviction while leaving the remaining portions of the plea agreement undisturbed.

### 1.    The *Howard* decision

Section 2251(a) mandates a minimum 15-year prison term for

> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]

18 U.S.C. § 2251(a). After defendant's sentencing, this Court interpreted this statute in *Howard*, 968 F.3d at 721-24. The defendant in *Howard* had created

images of himself masturbating next to a clothed, sleeping child and was convicted of violating § 2251(a). On appeal, this Court reversed defendant's conviction, holding that § 2251(a) requires that the minor—not defendant alone—engage in sexually explicit conduct. *Id*. at 718-24.

While recognizing that the word "use" is "undoubtedly broad in the abstract[,]" the Court concluded that "under the venerable doctrine of *noscitur a sociis*, a word is known by the company it keeps, and we must avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words"—here, the other five verbs ("employs, . . . persuades, induces, entices, or coerces") in the statute. 968 F.3d at 722 (citations and quotations omitted). The Court construed the statute to "require some action by the offender to cause the *minor's* direct engagement in sexually explicit conduct," concluding that "[t]he most natural and contextual reading of the statutory language requires the government to prove that the offender took one of the listed actions to cause *the minor* to engage in sexually explicit conduct for the purpose of creating a visual image of that conduct." *Id*. at 721-22 (emphasis in original).

The conduct of the defendant in *Howard* did not meet this definition because he engaged in sexually explicit conduct (masturbating near a sleeping child) but did not involve the minor in his act. 968 F.3d at 718-23. However, as discussed below, the Court left open the possibility that even "momentarily"

14

touching a minor could constitute an attempt to engage the minor in sexually explicit conduct and thus support a § 2251(a) conviction. *Id.* at 723 n. 3.

### 2. The District Court Plainly Erred By Accepting Defendant's Guilty Plea To Count 1.

At the time of defendant's guilty plea and sentencing, the parties agreed on the facts underlying defendant's plea to the production offense charged in Count 1: that defendant created photographs of his naked, erect penis next to Victim A's face and of his tongue sticking out next to Victim A's clothed groin. R. 38 at 3. The parties and the district court agreed that these photographs, taken while Victim A was asleep, depicted sexually explicit conduct "not of victim A but of . . . [defendant] Sprenger," COP Tr. 31-32, 34; R. 38 at 2-3, and that defendant's conduct constituted the production of child pornography within the meaning of § 2251(a).

However, under *Howard*, 968 F.3d at 718-24—decided after defendant's sentencing—a defendant does not violate § 2251(a) if the image depicts a defendant (but not the minor) engaged in the sexually explicit conduct. Plain error is determined based on the law at the time of appellate review. *Henderson v. United States*, 568 U.S. 266, 269 (2013); *United States v. Williams*, 946 F.3d 968, 971 (7th Cir. 2020). Under current law, defendant's conduct no longer qualifies as a violation of § 2251(a), creating a more than reasonable probability that defendant would not have pled guilty to Count 1 had he known

15

of *Howard*. *Dowthard*, 948 F.3d at 818; *Williams*, 946 F.3d at 971-73. As a result, the government acknowledges that, as to Count 1, there is plain error that has affected defendant's substantial rights and seriously affected the fairness, integrity or public reputation of the proceedings. *See Dowthard*, 948 F.3d at 818; *Williams*, 946 F.3d at 971-73.

Thus, this Court should reverse defendant's Count 1 conviction.

\* \* \* \*

However, the Court should not disturb the remaining portions of the plea agreement, including defendant's guilty plea to Count 4 (possession of child pornography) and his stipulation to having produced the child pornography charged in Count 2.

### 3. Defendant's Conviction on Count 4 Is Unaffected By *Howard*.

This Court has upheld guilty pleas where the factual basis was sufficient without use of a legal theory later found to be defective or a statutory prong later held invalid. *See*, *e.g.*, *United States v. Novak*, 841 F.3d 721, 728-29 (7th Cir. 2016) (sufficient factual basis for guilty pleas to distribution of controlled substance analog and tax fraud without relying on "now-disfavored" inference of knowledge in Analogue Act cases); *United States v. Damico*, 99 F.3d 1431, 1433-35 (7th Cir. 1996) (upholding guilty plea to § 924(c) charge where, though factual basis insufficient to support guilt under "use" prong, factual basis

16

sufficient under "carry" prong); *see also United States v. Jones*, 408 F. App'x 949, 951 (6th Cir. 2011) ("The question in this setting is often . . . whether a sufficient factual basis . . . supports the defendant's plea agreement, even after the defective theory is removed").

Consistent with this case law, defendant's conviction for possession of child pornography under Count 4 is unaffected by *Howard*, and should remain undisturbed. Under the child pornography possession statute, 18 U.S.C. § 2252A(a)(5)(B), defendant's possession of a single image of a child engaging in intercourse or of the lascivious exhibition of a minor's genitals is sufficient to sustain his possession conviction. *See* 18 U.S.C. § 2252A(a)(5)(B) (criminalizing the "knowing[ ] possess[ion of] . . . an image of child pornography"). In the factual basis for his guilty plea to the possession count, defendant admitted possessing over 1,000 images and videos, *in addition* to those he made of Victims A, B, and C; *and* that these additional images and videos included depictions of "children, some as young as toddlers, being forced

to engage in oral, vaginal, and anal intercourse, as well as sadomasochistic images and lascivious exhibition of minors' genitals."[4] R. 38 at 4-6.

Contrary to defendant's argument that the possession count is somehow tainted by his now-invalid production count, these additional images and videos were unrelated to the images and videos he produced of Victims A, B, or C. Nothing in *Howard* taints or calls into question the sufficiency of his admissions that he possessed images and videos depicting the rape of minors and lascivious exhibitions of their genitals, or interprets or limits § 2252A(a)(5)(B) (the possession statute); and defendant has offered no reason to believe that his plea to Count 4 was anything but knowing and voluntary. *See also* COP Tr. 30-31 (defendant indicating under oath that he "carefully" reviewed the factual basis, was "completely satisfied" that "everything" in the basis was "100 percent accurate[,]" and had "no quibbles at all" with his admissions).

In sum, even after *Howard*, the record provides a substantial factual basis for defendant's guilty plea to the possession count. Defendant has

---

[4] Defendant also admitted (in the context of the Guideline calculations) that his "offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence or (B) sexual abuse or exploitation of an infant or toddler." R. 38 at 11-12. Further, the district court ordered restitution, not only for Victims A, B, and C, but for seven victims depicted in images and videos that defendant possessed but did not produce. S. Tr. 43; R. 47 at 16-24; 51 at 5. Defendant leveled only a vague objection to the amount of restitution ordered (*see* R. 49 at 13; S. Tr. 39); he did not deny that these seven were victims of his possession offense.

18

demonstrated no error—much less an obvious one. And, even if any error occurred, defendant cannot carry his burden of showing that the error affected his substantial rights. *See Williams*, 946 F.3d at 971-74. Defendant has not shown a reasonable probability that he would not have pleaded guilty to the possession count had he known of *Howard*. *Id.* Given the overwhelming evidence of defendant's possession of images and videos constituting child pornography under *Howard*, defendant had nothing to gain by going to trial, and would have lost the benefit of an acceptance-of-responsibility reduction in the guideline calculations.

### 4. Defendant's Stipulation To Count 2 Is Unaffected By *Howard*.

Relying on *Howard*, defendant also challenges the factual basis for his stipulation in the plea agreement to having produced videos involving Victim B, as alleged in Count 2. This challenge too lacks merit under plain error review. The conduct at issue in Count 2—videotaping himself making physical contact with the child—qualifies under *Howard* as production of child pornography.

In *Howard*, this Court distinguished the facts presented (masturbation near but not involving the sleeping child) from those presented in prior § 2251(a) cases "involv[ing] visual images clearly depicting minors engaged in sexually explicit conduct." *Howard*, 968 F.3d at 723. The Court noted that in

*United States v. Finley*, 726 F.3d 483, 488-89 (3d Cir. 2013), the defendant made "'explicit contact' . . . with [a] sleeping minor"; and that in *United States v. Vowell*, 516 F.3d 503, 507 (6th Cir. 2008), "'various sexual acts' [were] performed on the body of a sleeping and drugged minor." *Howard*, 968 F.3d at 723. The Court suggested that these examples constituted "sexually explicit conduct" involving the minor within the meaning of § 2251(a)).[5]

The stipulated offense constituted a violation of § 2251(a) even after *Howard*. The stipulated offense (as charged in Count 2) stemmed from defendant's production of four videos, including videos in which he touched Victim B's clothed vagina and buttocks as she slept and ejaculated directly upon her buttocks.

Contrary to defendant's argument (Br. 32), the videos show that defendant's physical contact with Victim B was more than a slight, momentary touch. The videos depicted defendant touching Victim B's vagina and buttocks for approximately 10 seconds, as well as him ejaculating upon her buttocks.[6]

---

[5] Defendant does not contest that a sleeping child can engage in sexually explicit conduct within the meaning of § 2251(a) and thus has waived such argument. Nor does *Howard* support it; in fact, *Howard* cites cases involving sleeping victims as examples of minors engaged in sexually explicit conduct. *See Howard*, 968 F.3d at 723; *see also Finley*, 726 F.3d at 494-95 (sleeping child can engage in sexually explicit conduct); *United States v. Nichols*, 527 F. App'x 344, 347 (6th Cir. 2013) (lasciviousness does not depend on a victim's state of consciousness).

[6] To protect the minors depicted, the government will supplement the record on appeal with the videos (provided to the district court in connection with the sentencing) only upon request.

S. Tr. 3, 16-17 (referencing Ex. Disk 1 submitted to court); R. 47 at n. 2. After the incident, defendant reported to a fellow Kik user, Just Me, that he had "touched" Victim B's "wonderful [vaginal] lips[,]" and that she was "not yet" wearing "thong[ ]" underwear, only "[f]ullbacks and trainers." G.V. 8, Ex. B. Defendant then sent Just Me the video of him masturbating upon Victim B's buttocks, and told Just Me that Victim B "[s]melled like a girl that was fucked for 10 hours in a closed room. Her little pussy was begging for it." PSR 7; G.V. 8-9, Ex. B. The video itself, and these communications, establish that defendant touched Victim B in far more than a passing or fleeting way—indeed, that he sexually abused Victim B.[7]

In sum, the record sufficiently establishes, particularly on plain error review, that the videos of defendant fondling Victim B's clothed genitals depicted Victim B *herself* engaged in sexually explicit conduct. "Sexually explicit conduct" is defined by 18 U.S.C. § 2256(2)(A) to include masturbation;

---

[7] While in his presentencing filing defendant vaguely suggested that his actions "did not involve acts more typically associated with 'contact' offenses[,]" R. 49 at 10, at the sentencing hearing defendant did not object to, or otherwise dispute, the government's description of defendant's touching of Victim B as "fondling" and "sexual assault." *See* S. Tr. 22-27; *see also United States v. Neal*, 907 F.3d 511, 516 (7th Cir. 2018) (adequate factual basis from government's proffer, where "despite generally denying participating in a conspiracy" at sentencing, defendant did not "say anything specifically calling the accuracy of the government's proffered evidence into question"). Moreover, the district court, upon review of the video itself, expressly found that "the government is absolutely right about" defendant's crime involving "sexual abuse" of Victim B, in the form of "unwanted, uninvited, unlawful physical contact . . . ." S. Tr. 30.

lascivious exhibition of the genitals or pubic area of any person; and/or simulation of these acts. While § 2256 does not define "masturbation," the term has been recognized as including "mutual masturbation," or the touching and fondling of another's genitals.[8] *United States v. Banks*, 556 F.3d 967, 978-79 (9th Cir. 2009) ("masturbation" under § 2256(2)(A) did not require that an orgasm by child victim be possible and included defendant's touching and rubbing two-year old child's penis, and  massaging child's scrotum and anus). Here, defendant's videos of Victim B included him touching—that is, masturbating—Victim B.

Likewise, while "lascivious exhibition" is not defined in the statute, a photograph of even covered genitals—under a commonsensical interpretation—can be lascivious in nature. *See United States v. Miller*, 829 F.3d 519, 524-26 (7th Cir. 2016) ("focus . . . must be on the genitals or the image must be otherwise sexually suggestive," but the video need not "zoom in" and the pubic area need not be the sole focus); *United States v. Price*, 775 F.3d 828,

---

[8] Indeed, it is inconceivable that Congress intended to exclude from the definition of "sexually explicit conduct" a defendant fondling (or attempting to manipulate) with his hand a child's vagina or penis for sexual stimulation. Congress enacted the statute based, in large part, on its finding that child pornography was harmful to the child victim and to society as a whole, and included as an example of particular concern "magazines depict[ing] children . . . in couplings with . . . adult men and women" and featuring activities "rang[ing] from lewd poses to intercourse, fellatio, cunnilingus, masturbation, rape, incest and sado-masochism." S. Rep. No. 95-438, 1978 U.S.C.C.A.N. 40, 42-43. Congress' inclusion of "masturbation" in the list of non-solo activities suggests Congress' intent to include "mutual masturbation."

837-38 (7th Cir. 2014) (nudity not required); *United States v. Grimes*, 244 F.3d 375, 379-82 (5th Cir. 2001) (photographs with pixel boxes covering minors' genitals constituted "lascivious exhibition"); *United States v. Knox*, 32 F.3d 733, 745-51 (3d Cir. 1994) (no requirement that minor's genitals or pubic area be exposed or discernable through opaque clothing). Here, defendant's videos of Victim B included him employing and using the minor's genitals, directly engaging the minor (albeit without her knowledge) in "sexually explicit conduct for the purpose of creating a visual image of that conduct." *Howard*, 968 F.3d at 721.

Further, even if the record did indicate that the physical contact was momentary, as defendant suggests, defendant's conduct constitutes an *attempt* to engage Victim B in sexually explicit conduct, in violation of § 2251(a). In *Howard*, the Court noted that one of the videos produced by the defendant showed him masturbating very close to his niece's face while she slept and "perhaps momentarily touching her lips with his penis." 968 F.3d at 723 n. 3. The Court opined that this "perhaps . . . could be characterized as an attempt at oral sex, which might qualify as engaging the child in sexually explicit

conduct" for purposes of § 2251(a).[9] *Howard*, 968 F.3d at 723 n. 3. Here, the facts are even stronger. Not only did defendant touch Victim B's vagina and buttocks sufficiently to determine the kind of underwear she wore but, during his same session with her, ejaculated onto her buttocks. PSR 7; G.V. 8-9, Ex. B. Defendant's intention was clearly to, at very least, attempt to engage Victim B in masturbation and lascivious display of genitals (or simulation thereof) when he—after drugging her—touched her vagina and buttocks.

For these reasons, the district court committed no error, much less an obvious one, with respect to defendant's stipulation to the production offense charged in Count 4. And even if error occurred, defendant has not shown a reasonable probability that he would have refused to stipulate to this production offense had he known of *Howard*. *See Williams*, 946 F.3d at 973. On an attempt theory, at minimum, the government's evidence amply established defendant's guilt, meaning that defendant had nothing "to gain by going to trial." *Id.* (citations and quotations omitted). To the contrary, by pleading guilty to the possession count and merely stipulating to the

---

[9] The Court in *Howard* declined to preserve defendant's § 2251(a) conviction on the attempt theory because the government did not frame its case in this way at the trial and did not raise it as a possible theory on appeal. *Howard*, 968 F.3d at 723 n. 3. In contrast, an attempt theory in the instant case is consistent with the facts admitted by defendant, the information contained in the PSR and Government's Version of the Offense, the government's position that defendant fondled Victim B and sexually abused her, and the court's findings at sentencing. Moreover, unlike in *Howard*, the government is raising the attempt theory on appeal.

production charge in Count 2, defendant avoided a 15-year mandatory minimum sentence on Count 2.

### 5. The Plain Error As To Count 1 Does Not Warrant Invalidation Of The Plea Agreement *In Toto*.

Plea agreements are interpreted pursuant to contract law while "tempered by concerns of equity and due process[.]" *United States v. Williams*, 198 F.3d 988, 993 (7th Cir. 1999); *see also United States v. Adkins*, 743 F.3d 176, 192-93 (7th Cir. 2014). When a defendant, as here, enters a guilty plea to multiple counts and one is subsequently invalidated, the Court must determine whether the defendant's plea to the remaining counts "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Applying that principle, courts have regularly concluded that a noncoerced defendant has "no basis to withdraw" from an "entire plea agreement" simply because a subsequent decision invalidated some, but not all, of counts to which the defendant pleaded guilty. *United States v. Morgan*, 958 F.3d 847, 849-50 (8th Cir. 1992); *see McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 85-89 (3d Cir. 2007) (plea agreement that contained drug counts was not voidable simply because certain corruption counts were invalidated by a subsequent change in the law); *United States v. Barron,* 172 F.3d 1153, 1158-60 (9th Cir. 1999) (en banc) ("the guilty plea to criminal acts can remain in force even as the sentence

imposed upon an innocent act is set aside . . . [A] collateral challenge to the legality of a particular count of conviction does not constitute a breach of or withdrawal from a plea agreement, and . . . the remainder of the plea agreement remains in effect"); *United States v. Watkins,* 147 F.3d 1294, 1298 (11th Cir. 1998) (no due process violation where court vacated one count of conviction under a plea agreement but resentenced defendant on the remaining counts); *cf. Brady v. United States*, 397 U.S. 742, 750 (1970) (refusing to vacate plea agreement where change in law informed defendant's bargaining position but did not make the plea involuntary).

The same straightforward analysis applies here. The plea agreement entitled defendant to dismissal of Count 2 and 3 in exchange for pleading guilty to Counts 1 and 4, where conviction on Count 1 carried a 15-year mandatory minimum and a thirty-year maximum. Count 1's invalidation under the reasoning in *Howard* in no way renders defendant's guilty plea to Count 4 coerced or involuntary. Nor does defendant point to any mutual mistake that

prejudices him. Quite the contrary: the invalidation of Count 1 significantly benefits defendant.[10]

Contrary to defendant's argument (Br. 34-35), *United States v. Bradley*, 381 F.3d 641 (7th Cir. 2004), does not require invalidation of the aspects of the plea agreement unaffected by *Howard*. There were two interconnected counts in *Bradley*: possession of cocaine base with intent to deliver, in violation of 21 U.S.C. § 841(a)(1), and use and carrying of a firearm during and in relation to a drug trafficking crime, namely, possession of cocaine base with intent to deliver, in violation of 18 U.S.C. § 924(c). As this Court has since remarked in summarizing *Bradley*, at the time of the guilty plea, "the district court, the government and the defendant [in *Bradley*] all seem[ed] to be confused about the necessary elements" for the § 924(c) offense. *United States v. Franklin*, 547 F.3d 726, 732 (7th Cir. 2008). The *Bradley* indictment identified the § 924(c) predicate as the possession with intent to deliver cocaine base, but the plea

---

[10] If anything, Count 1's invalidation and the ensuing loss of the 15-year mandatory minimum and thirty-year maximum harmed the government and therefore rendered the plea agreement voidable under the frustration of purpose doctrine. *See United States v. Bunner*, 134 F.3d 1000, 1004 (10th Cir. 1998) (party may seek vacatur of a plea agreement where (1) the frustrated purpose was so "completely the basis of the contract" that "without it the transaction would make little sense"; (2) the frustration results from an "intervening event that cannot fairly be regarded as within the risks the frustrated party assumed under the contract"; and (3) non-occurrence of the frustrating event was "basic assumption on which the contract was made") (citations and quotations omitted). Although the government retains the discretion under that doctrine to void the plea agreement and return to the pre-plea stage, it chooses not to do so here.

agreement and guilty plea colloquy identified the predicate as possession of marijuana, which is not drug trafficking. *Bradley*, 381 F.3d at 646. On appeal, therefore, the government conceded and this Court held that the § 924(c) conviction was invalid due to ambiguity as to "the specific drug trafficking predicate offense." *Id*. at 647. This ambiguity, in turn, invalidated the plea agreement as a whole because the § 924(c) charge was an essential term of the agreement: the drug trafficking and § 924(c) offenses were factually and legally interdependent. *Id*. at 648.

By contrast, here, the two counts to which defendant pled guilty—production and possession—were not interconnected or dependent. They involved different victims, images, and conduct, *see* R. 19, 38 at 3-8, and the punishment was not consecutive in nature. In addition, unlike in *Bradley*, there was no confusion regarding the charge and factual basis. Both parties and the court correctly understood the allegations in the indictment and the facts underlying the guilty plea. It was only as a result of a subsequent decision of this Court that the factual basis became insufficient to sustain the

production charge in Count 1. In this context, the remaining unaffected portions of the plea agreement can stand. *See McKeever*, 486 F.3d at 83-89.[11]

In sum, the parties understanding of the law and the facts as to the possession offense and the stipulated offense were clear and correct at the time of the guilty plea and remain so post-*Howard*. Further, the possession offense and stipulated production offense were not interrelated with, or dependent upon, the Count 1 production offense as to call into question their legal or factual sufficiency under *Howard*—much less to establish error that is plain. Nor has defendant demonstrated that he would not have entered these guilty pleas absent the plain error on Count 1. Under these circumstances, and in the context of plain error review, this Court should uphold defendant's guilty plea to the possession count and stipulated offense.

---

[11] Defendant's citation to *United States v. Barnes*, 83 F.3d 934, 941 (7th Cir. 1996), is equally misplaced. In *Barnes*, the defendant entered into a plea agreement under Fed. R. Crim. P. 11(e)(1)(C) (now recodified as Rule 11(c)(1)(C)), which provides that "the plea agreement may specify that . . . a specific sentence . . . is the appropriate disposition of the case" and "such a recommendation . . . binds the court once the court accepts the plea agreement[.]" The district court accepted the plea and imposed the agreed-upon sentence. *Barnes*, 83 F.3d at 937-38, 941. On appeal, defendant argued the district court should not have imposed the agreed sentence. *Id*. This Court rejected the argument, holding that under Fed. R. Crim. Pro. 11(e)(1)(c), a district court does not have the power to accept the guilty plea but disregard the agreed sentence. *Barnes*, 83 F.3d at 941. It was in this Rule 11(e)(1)(C) (now Rule 11(c)(1)(C)) context that the Court made the following statement upon which defendant Sprenger now relies: "[i]f we rule that some provision of the plea agreement is invalid, we must disregard the entire agreement and require her [i.e., defendant Barnes] and the government to begin their bargaining all over again." 83 F.3d at 941; *see* Br. 35. This statement in *Barnes* is not controlling here because defendant's guilty plea is not governed by Rule 11(c)(1)(C).

**CONCLUSION**

For the foregoing reasons, the government respectfully request that this Court: vacate defendant's conviction on Count 1; affirm defendant's conviction on Count 4 and leave the remaining parts of defendant's plea intact; and remand for resentencing.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

ANDRIANNA KASTANEK
Assistant United States Attorney
Chief of Appeals, Criminal Division

/s/ *Helene B. Greenwald*
HELENE B. GREENWALD
Assistant United States Attorney

## RULE 32 CERTIFICATION

I hereby certify that:

    1.  This brief complies with the type volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 7,198 words.

    2.  This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the Microsoft Office Word proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

    Respectfully submitted.

    JOHN R. LAUSCH, JR.
    United States Attorney

By:    /s/ *Helene B. Greenwald*
    HELENE B. GREENWALD
    Assistant United States Attorney
    219 South Dearborn Street, 5th Floor
    Chicago, Illinois

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2021, I electronically filed the foregoing Brief of the United States with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted.

By:      /s/ *Helene B. Greenwald*
         HELENE B. GREENWALD
         Assistant United States Attorney
         219 South Dearborn Street, 5th Floor
         Chicago, Illinois
         (312) 353-5300